IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ,<br><br>          Plaintiff,<br><br>     vs.<br><br>KAZU CONSTRUCTION, LLC, a corporation; and VERNON LOWRY, an individual;<br><br>          Defendants. | CIVIL NO. 16-00077 ACK-KSC<br><br>**MEMORANDUM IN SUPPORT OF MOTION** |

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ............................................................... 1

II.    BACKGROUND ................................................................ 4

    A.    2012-2014:  No Overtime Was Worked at Kazu ................................ 4

    B.    2014-2015:  The DOL's Investigation ................................. 7

    C.    2016:  DOL's Lawsuit ........................................................ 8

    D.    Kazu's Discovery Requests and the DOL's Inadequate
        Responses ................................................................ 10

III.    LEGAL STANDARD ................................................................ 14

IV.    DISCUSSION ................................................................ 14

    A.    Kazu's RFP:  The DOL Should Be Compelled To
        Produce Responsive Documents ...................................... 14

        1.    The DOL Has Failed To Timely Assert, and
            Therefore Has Waived, All Privileges .................................. 18

        2.    The DOL Fails To Properly Invoke Privileges ....................... 19

        3.    Witness Statements: The Claimed Privileges Do
            Not Justify Withholding .................................................. 21

            a.    Government Informant Privilege ............................ 21

            b.    Attorney Client/Common Interest Privilege ............ 23

        4.    Memoranda:  The Claimed Privileges Do Not
            Justify Withholding ...................................................... 25

            a.    Deliberative Process ........................................... 25

            b.    Investigative Files ............................................. 26

            c.    Government Informant ....................................... 27

i

              d.     Attorney-Client/Common Interest ................................ 27

     5.     Notes: The Claimed Privileges Do Not Justify Withholding ................................................................ 28

              a.     Deliberative Process ...................................... 28

              b.     Investigative Files ......................................... 28

              c.     Attorney-Client/Common Interest ................................ 29

              d.     Work Product ................................................. 29

     6.     Documents Relating to the DOL's Determination that Napierala Was Exempt ...................................... 29

     7.     Communications with Witnesses ........................................... 30

     8.     Records of Calls with Tadio .................................. 30

     9.     Documents Relating to Claimants' Non-Work Activities while Supposedly Working Overtime at Kazu ................................................................ 31

  B.     Kazu's Interrogatories:  The DOL Should Be Compelled To Provide Adequate Responses ...................................... 32

V.     CONCLUSION ........................................................................... 33

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Black v. Sheraton Corp. of Am.*,
  564 F.2d 531 (D.C. Cir. 1977)..................................................................26

*Chao v. Westside Drywall, Inc.*,
  254 F.R.D. 651 (D. Or. 2009)............................................17, 19, 20

*Columbia Riverkeeper v. United States Army Corps of Eng'rs*,
  38 F. Supp. 3d 1207 (D. Or. 2014) ....................................................29

*EEOC v. BNSF Ry. Co.*,
  Case No. 12-02634-JWL-KGG, 2014 U.S. Dist. LEXIS 78432 (D.
  Kan. June 10, 2014) ..........................................................................23

*EPA v. Mink*,
  410 U.S. 73 (U.S. 1973)......................................................................25

*Fowler v. State Farm Mut. Auto. Ins. Co.*,
  No. 07-00071 .......................................................................................18

*Ralls v. United States*,
  52 F.3d 223 (9th Cir. 1995) ..............................................................17

*Roviaro v. United States*,
  353 U.S. 53 (1957)..........................................................................21, 22

*Solis v. Seafood Peddler of San Rafael*,
  No. C 12-0116 PHJ, 2012 U.S. Dist. LEXIS 172137 (N.D. Cal.
  Dec. 4, 2012)........................................................................................22

*United States v. Educ. Mgmt. LLC*,
  No. 2:07-cv-00461, 2014 U.S. Dist. LEXIS 50514 (W.D. Pa. Feb.
  7, 2014) ........................................................................19, 25, 26, 27

*United States v. Nobles*,
  422 U.S. 225 (U.S. 1975)....................................................................29

*United States v. Tadio*,
   No. 1:07-cr-00486-HG (D. Haw.) ........................................................................6

**Statutes**

Fair Labor Standards Act ..................................................................1, 7, 10, 23, 24

**Other Authorities**

Federal Rule of Civil Procedure 26(b)(1) .........................................................14, 16

Fed. R. Civ. P. 26(b)(5).............................................................................................17

Fed. R. Civ. P. 26(b)(3).............................................................................................29

Fed. R. Civ. P. 34(b)(2)(A) .......................................................................................18

## MEMORANDUM IN SUPPORT OF MOTION

## I.    INTRODUCTION

Plaintiff Secretary of Labor, United States Department of Labor, Thomas Perez ("DOL") has filed a lawsuit under the Fair Labor Standards Act against Defendants Kazu Construction, LLC ("Kazu") and Vernon Lowry ("Lowry") (collectively, "Defendants"), alleging that Kazu employees are owed unpaid overtime and that Lowry told employees he would "bank" their overtime hours.

Despite the fact that no overtime was actually worked at Kazu and that there was no discussion about banking overtime hours (as firmly attested by a significant portion of Kazu's employees whose declarations are submitted herewith), the DOL has created enormous stakes for Defendants:  The DOL is seeking more than $1 million in damages, based upon the brazenly false allegation that employees worked 60 or 70 hours virtually every week between 2012 and 2014, and even went on Hawaii News Now to besmirch Defendants' reputation and injure their livelihood.  Moreover, the DOL has relied on a disgruntled former employee, Dennis Tadio, not only for his allegation that he worked 70 hours every week but also to solicit other employees to claim overtime and get money.  However, Tadio has a federal conviction for witness tampering, has separately admitted that there were "plenty times" when he worked less than 40 hours, and has furtively sought a

$25,000 payout from Kazu in exchange for having his witnesses drop their allegations "100% guarantee."

The DOL is now refusing to provide basic <u>factual</u> information supporting or undermining its case.  Particularly in light of the stakes created by the DOL and the ease with which the DOL can produce the information, Defendants request an order compelling the DOL to provide the following (subject to the Court's prior *in camera* inspection, as the Court deems appropriate):

<u>Documents (these documents are responsive to numerous requests in Kazu's Request for Production)</u>

- The DOL's 16 witness statements and the DOL's communications with the witnesses, in unredacted form.

    *To the extent that redactions are allowed on any documents based upon the informant's privilege, Defendant request the Court to identify a reasonable point at which the DOL must provide unredacted versions.*

- Six internal memoranda written to "File" by the DOL Investigator. These memoranda presumably contain factual content and should be unredacted (or alternatively they may have limited redactions only to the extent this Court determines that any privilege has been properly invoked and is applicable).

- The Investigator's notes.  These notes presumably contain factual content and should be unredacted (or alternatively they may have limited redactions only to the extent this Court determines that any privilege has been properly invoked and is applicable).

- As a subset of the witness statements, memoranda, and/or notes, Defendants specifically seek documents supporting or relating to the DOL's initial determination that employee Richard Napierala was exempt.  (The DOL has since changed its position and is now seeking over $350,000 on behalf of Napierala.)

2

- The DOL's record of phone calls with Tadio. The DOL's heavy reliance upon Tadio (a highly compromised individual) calls into question the integrity of the DOL's investigation and of the witnesses whom Tadio has induced to participate.

- Documents relating to Claimants, including records showing appointments, travel, purchases and other non-work activities during each individual's specific period of employment with Kazu. (The DOL has taken inconsistent positions as to whether it does or does not have access to Claimants' records, but most recently appears to state that it does have access.)

Interrogatory Answers

- Request #2(b)(ii):  The factual bases for the DOL's overtime allegations.

- Request #3:  The factual bases for the DOL's claim that Defendants banked hours, including when and to whom Lowry allegedly stated that he banked hours.

- Request #8:  The knowledge (and, if not confidential, identities) of the DOL's Contractor witnesses.

- Request #10:  The dates, nature, and substance of the DOL's communications with Tadio.

- Request #12-14:  Information as to Claimants, including their side jobs while working for Kazu, and their phone and financial account numbers which would yield objective evidence of their non-work activities while allegedly working overtime.  (Such documents are highly probative:  It is already clear from one Claimant's financial records that there were at least 25 separate weeks when he did not work the alleged hours that the DOL claims.)

These issues are discussed in greater detail below.

## II.   BACKGROUND

### A.   2012-2014:  No Overtime Was Worked at Kazu

Kazu is a small business engaged in residential and commercial construction.  *See* Vernon Lowry Decl. ¶ 2.  Lowry is its member.

From 2012 through 2014, Kazu was the contractor on the residential development at Makaha Oceanview Estates ("MOE").  *See id.* ¶ 3.

Kazu employees did <u>not</u> work any overtime, much less 70 hours every week as the DOL alleges.  To the contrary, on weekdays there were many instances when the employees separately or collectively missed work for various reasons (*e.g.,* rainouts, golfing, fishing, personal appointments, other jobs, sickness, *etc.*), and any weekend work was just to make up missed hours.  This has already been attested to by seven Kazu current and former employees (approximately 40% of the total group of claimants identified by the DOL).[1]  These individuals are Frank Aguinaldo,[2] James Dela Cuesta,[3] Kahikapu Hendricksen,[4] Jaime Magallanes,[5] Wesley Mericle,[6] Bruce Petree,[7] and James Teixeira.[8]

---

[1]    These employees' declarations, attached to this Motion, were previously submitted along with Defendants' Concise Statement of Facts [Doc 44] in support of their Motion for Partial Summary Judgment, filed November 16, 2016 [Doc 43-1].

[2]    *See* Frank Aguinaldo Decl. ¶¶ 7-9 (did not work overtime; had absences due to, *e.g.,* rainout, mudout, sickness, personal time off, working other carpentry jobs, recreational activities with other employees; and weekend work was just to make up hours).

The accounts of these individuals are further supported by documents.  For instance, Aguinaldo's financial records show at least 25 weeks when he did not work the hours that the DOL claims he did.  As stated in his declaration:  "There are many dates that the Department of Labor claims I was working for Kazu that I in fact was not working for Kazu.  On many of those dates, I made purchases," including for golfing, purchases and cash withdrawals in Honolulu far away from Kazu's MOE jobsite, and purchases for off-island travel and overnight getaways.  *See* Aguinaldo Decl. ¶ 8; Exhibit A (Aguinaldo's financial records).

---

[3]      *See* James Dela Cuesta Decl. ¶ 3 (did not work overtime; had absences due to, *e.g.,* rainouts, meetings with probation officer, urinalysis testing, attending court-ordered classes, working another job with a union; and worked weekends only to make up hours).

[4]      *See* Kahikapu Hendricksen Decl. ¶ 3 (did not work overtime or weekends and went to church on Sundays).

[5]      *See* Jaime Magallanes Decl. ¶ 3 (did not work overtime; had absences due to, *e.g.,* rainouts, mudouts, time with children, health, social activities including with other Kazu employees; and usually did not work weekends).

[6]      *See* Wesley Mericle Decl. ¶ 3 (did not work overtime or weekends; usually went to church on Sundays; and spent weekends with his three young children).

[7]      *See* Bruce Petree Decl. ¶ 3 (did not work overtime; usually did not work weekends; and missed work due to car troubles, personal appointments, and sickness).

[8]      *See* James Texeira Decl. at ¶ 3 (did not work overtime; usually did not work weekends; and missed work due to rainouts and personal or family sickness).

Other employees also repeatedly missed periods of work.  Particularly notable is Richard Napierala (who the DOL is now claiming worked 60 or 70 hours every single week for two years).  Napierala was widely observed to be gone for long periods or whole days, often golfing, fishing, and engaged in other activities.[9]

Another Kazu employee who often missed work was Dennis Tadio, who was Lowry's longtime close friend.  Tadio had been in jail (most recently for federal witness tampering),[10] and Lowry gave him a job as Lowry's assistant to help him.  In the Fall of 2013, Tadio separated from Kazu.  *See* Lowry Decl. ¶ 14. In a subsequent deposition proceeding for a workers' compensation claim, Tadio testified that, during his employment at Kazu, there were "plenty times" when he worked less than 40 hours per week.  *See* Christopher S. Yeh Decl. ¶ 2; Exhibit E.

However, in the Summer of 2014, Tadio filed a complaint with the Hawaii Department of Labor and Industrial Relations, alleging (falsely) that he had

---

[9]    *See* Aguinaldo Decl. ¶ 10 (observed Napierala missing full or partial days of work, including golfing, fishing, and going into Honolulu for lunch with other Kazu employees including Aguinaldo himself); Dela Cuesta Decl. ¶ 3 (observed Napierala missing whole days of work or being gone in the middle of the day); Magallanes Decl. ¶ 3 (observed Napierala frequently taking long lunches, not returning from lunch, and missing full days and sometimes going fishing).

[10]    *See United States v. Tadio*, No. 1:07-cr-00486-HG (D. Haw.) at Docs 1 [Criminal Complaint], 39 [Acceptance of Plea of Guilty, Adjudication of Guilt and Notice of Sentencing], and 51 [Minutes referring to imprisonment and supervised release].

worked 70 hours per week every week for a certain period at Kazu. *See* Lowry

Decl. ¶ 14.

**B. 2014-2015: The DOL's Investigation**

In August 2014, the DOL (Investigator Jefferson Caparas) notified Kazu that

the DOL was conducting an investigation as to potential FLSA violations. *See*

Lowry Decl. ¶ 15.

Coinciding with the DOL's investigation, Tadio began calling Kazu

employees to encourage them to talk to the DOL about claiming overtime,

including sometimes saying that they could all get money and that a labor

department person would be calling them. Thus, it became clear that the DOL was

working closely with Tadio to build a case against Defendants. At least some

employees were honest and refused to claim overtime, since there was no actual

overtime. *See* Hendricksen Decl. ¶ 4; Magallanes Decl. ¶ 4; Mericle Decl. ¶ 4;

Teixeira Decl. ¶ 4.

In October 2014, the DOL issued a back wage calculation claiming that

Kazu employees (including Aguinaldo, Dela Cuesta, Hendricksen, Magallanes,

Mericle, Petree, and Teixeira) all worked 60 or 70 hours continuously every single

week over a two-year period and were owed over $752,250 in back wages and liquidated damages.[11]  *See* Lowry Decl. ¶ 16; Exhibit B.

In February 2015, the DOL issued an amended back wage calculation.  *See* Lowry Decl. ¶ 17; Exhibit C.

Also in February 2015, DOL Investigator Caparas informed Defendants that Tadio was indeed claiming to have worked 70 hours every week from around the start of his 2013 Kazu employment.  Caparas also represented that the DOL had found Richard Napierala to be exempt and was not claiming any back wages for him.  *See* Yeh Decl. ¶ 3.

In January 2016, Tadio – showing his venality and the fraudulence of the whole situation – sent a text message to an acquaintance of Lowry's.  In this text message, Tadio stated that he wanted $25,000 from Lowry and that Tadio would then get the witnesses to "quit . . . 100% guarantee[d]."  Lowry Decl. ¶ 18; Exhibit D.

## C.    2016:  DOL's Lawsuit

On February 22, 2016, the DOL filed the instant Complaint [Doc 1] alleging that Defendants failed to pay overtime and "banked" employees' overtime hours.

---

[11]    Specifically, the DOL asserted that (a) from August 2012 through February 28, 2014, employees worked 70 hours (*i.e.,* 30 hours of overtime) each week; and (b) from March 1, 2014 to September 2014, employees worked 60 hours (*i.e.,* 20 hours of overtime) each week.  *See*  Lowry Decl. ¶ 16; Exhibit B at D008868 & D008871, respectively.

The Complaint included the DOL's "Exhibit A" which listed by name the individuals who had allegedly worked 60 or 70 hours every week ("Claimants").

In March 2016, the DOL and Tadio joined forces to appear in a Hawaii News Now news segment, publicly vilifying Defendants for alleged overtime abuse.[12]  In this news story:

- Tadio was now claiming that he worked <u>90 hours</u> each week.  *See* Yeh Decl. ¶ 4; Exhibit F at 3 ("Former worker Dennis Tadio says it was common for them to work 90-hour workweeks but not get paid for it").

- Tadio appeared prominently on-camera as an interviewee and self-disclosed as an informant:  "I choose to be here and not to be – keep my identity a secret[.]"  *See* Exhibit F at 4.  He also urged others to come forward.  *See id.* at 2 ("a whistleblower talks to us exclusively to encourage others in the same situation to come forward").

- DOL personnel also appeared in the news story to support Tadio's position.  *See* Exhibit F at 3-4 ("The U.S. Department of Labor says this is just one example of employers breaking labor laws all over the country").

On April 8, 2016, the DOL issued its Initial Disclosures, listing as its witnesses all current and former Kazu employees including those specifically named in Exhibit A of the DOL's Complaint.  The DOL also explicitly listed six other individuals by name – *i.e.,* Melanie Abad, Mark Kramer, Suzanne Yen, Joe Nunuha, Loreta Dubin, and Andrew Davis.  *See* Yeh Decl. ¶ 5; Exhibit G at 2-4.

---

[12]     The news story is available on-line at http://www.hawaiinewsnow.com/story/31372772/whistleblower-speaks-out-against-nanakuli-company-triggers-federal-lawsuit.

On April 15, 2016, the DOL issued its Amended Initial Disclosures, now attempting to add Richard Napierala (whom the DOL had previously represented was exempt and not part of the damages calculation) and increasing its back wage calculation to a total of $1,048,868.88.[13] *See* Yeh Decl. ¶ 6; Exhibit H.

### D. Kazu's Discovery Requests and the DOL's Inadequate Responses

On August 30, 2016, Kazu served its First Request for Production of Documents ("RFP") seeking, among other things:

- witness statements and notes and communications with witnesses, (Requests #1-4);

- statements of persons upon whose testimony the DOL will rely, and notes and communications as to such persons (Requests #5-8);

- documents relating to Tadio, including statements, communications, notes, and records supporting the DOL's determination of Tadio's back wages (Request #13);

- similar documents (statements, communications, notes) as to six other individuals who were either waiving the informant's privilege or were already known as informants (Requests #14-19);[14]

- documents relating to the DOL's investigation (including records of calls with Tadio) and the facts relied upon by the DOL (Requests #20-31);

---

[13]     Under the FLSA statutory language, the DOL has failed to <u>properly</u> add Napierala because it never amended its Complaint to include him. Nevertheless, Defendants are still entitled to discovery as to the DOL's theory that Napierala is owed $350,000+ in back wages.

[14]     Four of those individuals – Aguinaldo, Hendricksen, Rachel Kiyabu, and Sean Dinnan – provided statements that they waived any informants' privilege. The two other individuals – Brian Sceppe and Kevin MacGregor – had previously acknowledged to Lowry that they had given statements to the DOL. *See* Exhibit I at 3-4 and Statements at the end of Exhibit I.

- documents relating to Claimants, including records showing non-work activities (*e.g.* appointments, travel, side jobs, purchases, calls) during each individual's specific period of employment with Kazu (Request #32); and

- documents supporting or relating to the DOL's initial representation that Napierala was an exempt employee (Request #55).

*See* Yeh Decl. ¶ 7; Exhibit I.

On the same date, Kazu served its First Request for Answers to

Interrogatories ("RFAI"), seeking among other things:

- the factual bases for the DOL's overtime allegations (Request #2(b)(ii));

- the factual basis for the DOL's claim that Defendants banked hours, specifically including when and to whom Lowry allegedly stated that he banked hours (Request #3);

- the relevant knowledge and identities of witnesses whom the DOL had only generally described as "Contractors" (Request #8);

- the DOL's communications with Tadio (Request #10);

- information as to Claimants, including their side employment while they were working for Kazu (request #12) and phone and financial account numbers (Requests #13-14).

*See* Yeh Decl. ¶ 8; Exhibit J.

On September 29, 2016, as to both of Kazu's requests, the DOL requested a

two-week "extension to respond/produce by Oct. 14." Kazu readily agreed. *See*

Yeh Decl ¶ 9.

On October 14, 2016 (the extended deadline), the DOL did not provide any

RFP Response or production. Instead, the DOL sent an e-mail unilaterally giving

itself an extension and stating that it would send the document response and production the next week.  *See* Yeh Decl. ¶ 10.

In this e-mail, the DOL transmitted its Interrogatory Response but omitted significant requested information.  *See id.* ¶ 11; Exhibit K.  Among other things, the DOL did not produce information in response to the specific interrogatories described above.  *See* Exhibit K.

On October 21, 2016 (a week after its extended deadline), the DOL transmitted its written RFP Response.  *See* Yeh Decl. ¶ 12; Exhibit L.

It was not until October 25, 2016 that Defendants received the DOL's actual document production.  The DOL's document production contains virtually no substance:  It consists mostly of Defendants' own documents previously provided to the DOL, and a set of blank pages.  The documents were accompanied by a Privilege Log which listed generic types of documents (*e.g.,* "internal memoranda," "witness statements") and a boilerplate recitation of privileges without explanation as to how the privileges applied.  *See* Yeh Decl. ¶ 13; Exhibit M.

On November 3, 2016, parties' counsel had a telephonic meet and confer on the DOL's discovery responses.  In this conference, the DOL (through its counsel), among other things, maintained its position that discovery into Claimants' non-work activities during the alleged overtime periods was inappropriate fishing, and

stated that, by November 7, 2016, it would advise Defendants as to whether it would be producing any additional documents or information.  The DOL also indicated that its administrative case was referred to counsel for litigation shortly before DOL's counsel contacted Defendants' counsel (which contact occurred on January 29, 2016).  *See* Yeh Decl. ¶ 14.

On November 7, 2016, the DOL did not provide the follow-up.  *See id.* ¶ 15.

On November 10, 2016, still not having heard from the DOL, Defendants' counsel sent a follow-up e-mail about Defendants' discovery requests.  *See id.* ¶ 16.  The DOL provided no substantive response until November 16.

On November 16, 2016, the DOL sent an e-mail stating that it could get unspecified documents (responsive to Defendants' subpoenas to Claimants) to Defendants sometime before depositions proposed for January 2017.  *See id.* ¶ 17.

On November 22, 2016, Defendants sent the DOL an e-mail, inquiring about what the DOL would specifically be producing and by when.  *See id.* ¶ 18.

On November 29, 2016, the DOL sent an e-mail, attaching Tadio's September 2014 unredacted statement and 9 witness statements with significant redactions.  *See id.* ¶ 19; Exhibits N and O.  In this e-mail, the DOL stated that:

- it would withhold Tadio's statements "that are after Kazu Construction's Position Letter (March 18, 2015)" based upon the common interest/attorney-client privilege;

- it would disclose witnesses and provided unredacted statements only "when the court requires in any pretrial disclosures";

13

- it would not produce any notes or internal memoranda to file, with or without redactions;

- although it would produce some subpoenaed documents on behalf of Claimants, it would not produce others (such as the phone and financial records which are also sought by Kazu's RFP); and

- it would not respond further to interrogatories except Interrogatory #12 (relating to entities that paid Claimants).

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

## IV.   DISCUSSION

### A.   Kazu's RFP:  The DOL Should Be Compelled To Produce Responsive Documents

Defendants seek the production of the following documents as identified in

the DOL's Privilege Log:

- Sixteen undated "witness statements" written by Investigator Jefferson Caparas, in unredacted form.  The DOL's claimed privileges are Government Informant and Attorney-Client/Common Interest.

14

- Six "internal memoranda" written by Caparas to "File," all undated (except two dated 2/25/15 and 11/25/15).  The DOL's claimed privileges are Deliberative Process, Investigative Files, Government Informant, and Attorney-Client/Common Interest.

- "WHI Caparas Notes" written by Caparas, undated.  The DOL's claimed privileges are Deliberative Process, Investigative Files, Attorney-Client/Common Interest, and Work Product.

Defendants also seek the factual basis for the DOL's initial determination that Napierala was exempt, which are presumably included within the above-described documents (and, if not, they should be separately produced).

In addition, Defendants seek additional documents that are responsive but that the DOL has not identified in its Privilege Log, including:

- the DOL's record of phone calls with Dennis Tadio; and

- the DOL's communications with witnesses.

**<u>Relevance</u>**.  These withheld documents are relevant for various reasons.

First, the documents contain the <u>factual</u> bases for the DOL's theories.  For instance, Claimants' statements and communications with the DOL, in unredacted form, will indicate which individuals worked overtime (either by their own allegations or by being observed doing so), or who allegedly heard Lowry say that Kazu banked hours.  This will then allow Defendants to evaluate those allegations, assess them against other sources (*e.g.,* other witnesses or records), and/or determine whom to depose.  In their currently redacted form (omitting identifiers,

co-workers, and other information that cannot be determined), the statements do not enable Defendants to prepare for depositions and rebut the allegations.

Second, with regard to Napierala, the DOL made the original determination that he was exempt but now is seeking $350,000+ in damages on his behalf. Defendants are entitled to know, and rely upon, the underlying facts and admissions for this initial determination.

Third, with regard to records of the DOL's calls with Tadio, the DOL has apparently relied heavily upon Tadio to generate witnesses for its case – *e.g.,* on behalf of the DOL, Tadio called multiple Kazu employees to encourage them to claim overtime. Yet Tadio is a highly compromised individual: He was previously convicted for federal witness tampering; he has given three different accounts of his hours worked at Kazu; and he furtively sought a $25,000 payout from Defendants in exchange for getting the DOL's witnesses to "quit . . . 100% guarantee." The phone logs showing the DOL's heavy reliance upon Tadio are probative as to the integrity of the DOL's investigation and of the witnesses whom Tadio did ultimately influence.

**Proportionality**: The discovery sought is proportional based upon the factors set forth in Rule 26(b)(1).

- Amount in controversy and stakes: The DOL is seeking a staggering $1,048,868.88 against Kazu (a small business) and its individual member, of which more than $350,000 is being sought for Napierala alone. Furthermore, the DOL and Tadio went on Hawaii News Now and

vilified Defendants, resulting in hostile comments on social media and in the community and threatening a loss of business to Defendants.  Thus, the stakes are significant, and Defendants have an enormous need for the DOL's documents in order to defend themselves and restore their reputation.

- <u>Access and resources</u>:  There is minimal burden in the DOL's production of the records.  The DOL has immediate access to most of the information, as it is already in their files.  In addition, the DOL has significant resources and has had no problem expending it in this case: For each of three separate trips to Hawaii (*i.e.,* one for the April 2016 scheduling conference, one for the June 2016 settlement conference, and one for September 2016 depositions), the DOL has sent two lawyers from the mainland.

- <u>Importance and benefit</u>:  As noted above, the information is important and of significant benefit, as it allows Defendants to evaluate and rebut the DOL's allegations, as well as the credibility of the DOL's witnesses.

Accordingly, the sought-after discovery, easily producible by the DOL, is proportional to the needs of this high-stakes case.

**<u>Privileges</u>**:  As a threshold matter, the DOL bears the burden of establishing the various privileges it is claiming.  *See*, *e.g.*, *Chao v. Westside Drywall, Inc.*, 254 F.R.D. 651, 656-57 (D. Or. 2009); *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995) ("a party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication"); Fed. R. Civ. P. 26(b)(5) (work product).

Here, the DOL's rote invocation of privileges is insufficient for the various reasons set forth below.

### 1.   The DOL Has Failed To Timely Assert, and Therefore Has Waived, All Privileges

A party responding to a document production request must respond within 30 days after being served.  *See* Fed. R. Civ. P. 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served").

Failure to make objections in a timely waiver constitutes a waiver of all objections.  *See Fowler v. State Farm Mut. Auto. Ins. Co.*, No. 07-00071 SPK-KSC, 2008 U.S. Dist. LEXIS 93263, at *6 (D. Haw. Nov. 14, 2008) ("By failing to object to request nos. 6-58 within 30 days after being served with the RPOD, Defendant has waived all objections to the same. . . .  It is well established that a failure to object to the discovery requests within the time required constitutes a waiver of any objection") (citation omitted).

In this instance, the DOL requested a two-week extension until October 14, 2016 to provide its response to Kazu's RFP, and Kazu agreed.  However, the DOL did not provide its response by the extended deadline of October 14, but instead arrogated to itself an additional one-week extension.

Accordingly, the DOL has waived its objections and should produce all responsive documents in unredacted form, including those identified in its Privilege Log.

### 2.   The DOL Fails To Properly Invoke Privileges

Even assuming *arguendo* that the DOL's objections/privileges were timely raised (which they in fact were not), the DOL has still failed to properly invoke them.

Government privileges are not to be lightly invoked and must be formally established by the head of the department after actual and personal consideration.

> Government privileges must satisfy specific, formal requirements for proper invocation. . . . There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.

*Westside Drywall*, 254 F.R.D. at 656-57 (quotation marks omitted); *see also United States v. Educ. Mgmt. LLC*, No. 2:07-cv-00461, 2014 U.S. Dist. LEXIS 50514, at *25-26 (W.D. Pa. Feb. 7, 2014) ("a claim asserting the law enforcement [i.e., investigative files] privilege must be made by the head of the agency making the privilege after that person has personally reviewed the material and served 'precise and certain reasons for preserving' the confidentiality of the communications . . . Broad invocations of a privilege are unacceptable") (citing *Groark v Timek*, 989 F. Supp. 2d 378, 390 (D.N.J. 2013)).

Thus, where the invocation of privilege is made only by the DOL's counsel and <u>not</u> by the Secretary of Labor him/herself (or a "high-ranking" delegate), the privilege does not apply.

Here, the Secretary filed no written assertion of the informant's privilege, submitted no written delegation to a high-ranking subordinate of the responsibility for asserting the privilege, and provided no affidavit or declaration that she or anyone on her behalf conducted a careful review of the documents at issue to determine whether the informant's privilege applies to some or all of the documents that Defendants seek. . . .

\* \* \*

[T]he Secretary in this case provided only the declarations of a wage and hour investigator and the attorney of record in this case, neither of which, by level of authority or content, satisfies the "strict requirements for formal invocation" of the informant's privilege. . . .

\* \* \*

In sum, the Secretary has not properly invoked the informant's privilege and, thus, the privilege does not apply to the documents that are the subject of Defendants' motion to compel and the Secretary's motion for protective order.

*Westside Drywall*, 254 F.R.D. at 657-58.

In this instance, the DOL only asserted privileges through a perfunctory Privilege Log.  There is no affidavit or declaration from the Secretary, much less one stating that the Secretary "conducted a careful review of the documents at issue to determine whether the [asserted privileges] appl[y] to some or all of the documents that Defendants seek." *Id.*

In sum, the DOL has failed to timely or otherwise properly invoke privileges.

### 3.     <u>Witness Statements: The Claimed Privileges Do Not Justify Withholding</u>

As to the witness statements, even assuming that the DOL has invoked privileges in a timely and procedurally appropriate manner (which it in fact has not done), the DOL still cannot met its burden of establishing the privileges under the particular facts.

### a.     <u>Government Informant Privilege</u>

The Government Informant privilege is intended to protect the identity of informants. However, there are at least three scenarios where the privilege ceases to be applicable and therefore <u>unredacted</u> witness statements should be provided.

- **First**, unredacted statements should be provided where the informant's identity has already been disclosed. *See Roviaro v. United States*, 353 U.S. 53, 60 (1957) ("once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable").

  One example of this is where individuals are identified by name in the DOL's Complaint. As stated by the District Court for the Northern District of California:

  > [P]laintiff's complaint specifically mentions 14 of defendants' former employees by name, and plaintiff seeks damages on their behalf. Accordingly, as their identities have already been disclosed, no privilege to withhold their identities applies. . . . And because the testimony of these 14 individuals will be needed at trial, defendants have a right to question them on all relevant topics in order to prepare their defense. Thus, as to the fourteen former employees named in Exhibit A of plaintiff's complaint, the confidential informant's privilege shall not shield any of their identifying information or their communications with DOL.

*Solis v. Seafood Peddler of San Rafael*, No. C 12-0116 PHJ, 2012 U.S. Dist. LEXIS 172137, at *6-7 (N.D. Cal. Dec. 4, 2012).

- **Second**, unredacted statements should be provided as to any individual (claimant or otherwise) upon whose testimony the government is relying. *See Seafood Peddler*, 2012 U.S. Dist. LEXIS 172137 at *8 ("if plaintiff intends to rely on testimony from any of these [non-disclosed] individuals, then defendants have a right to question them, and the privilege shall be overcome").

- **Third**, unredacted statements should be provided under a fairness/balancing test when the defendant' right to defend itself outweighs the confidentiality interest. *See Roviaro*, 353 U.S. at 60-61 ("Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of cause, the privilege must give way"); *Seafood Peddler*, 2012 U.S. Dist. LEXIS 172137, at *4 ("the confidential informant's privilege is a qualified one. Courts must take a balanced approach and in the end decide whether the party opposing the privilege has credible need for the information in order to defend itself in the action – a need greater than the important policy consideration underlying the privilege") (quotation marks omitted).

In this case, the informant's privilege does not apply – and thus <u>unredacted</u> statements should be produced – as to all Claimants already identified by name in the DOL's Complaint Exhibit A, and as to all witnesses already identified by name in the DOL's Initial Disclosures. These identities are already known to Defendants, and thus the rationale for the privilege is not applicable.[15]

---

[15]    At the very least, the informant's privilege does not apply to Tadio (who disclosed himself on the news) and the six individuals who have disavowed any confidentiality and/or whose informant identities were specifically confirmed (Aguinaldo, Hendricksen, Kiyabu, Dinnan, Sceppe, and MacGregor).

In the alternative, the DOL should be required, in a reasonably timely manner, to identify the witnesses upon whose testimony it will rely and to produce their unredacted statements forthwith.  The DOL should not be allowed to sandbag Defendants by withholding until the 11th hour the identities (and statements) as to its witnesses.

### b.    Attorney Client/Common Interest Privilege

It does not appear that the Ninth Circuit has recognized the Attorney Client/Common Interest Privilege in FLSA matters.

Nevertheless, even assuming it were applicable, this privilege at best would exist only at the point of litigation – *i.e.,* when there is an attorney to prosecute the case and represent the common interest of the DOL and the claimant.  *Cf. EEOC v. BNSF Ry. Co.*, Case No. 12-02634-JWL-KGG, 2014 U.S. Dist. LEXIS 78432, at *10 (D. Kan. June 10, 2014) (where defendant sought information as to the EEOC's communications with the charging party, the court overruled the EEOC's common interest privilege objection and stated that "the common interest between the EEOC and [charging party] did not exist until the conciliation efforts of the EEOC were unsuccessful and the agency decided to bring suit in its name, giving the EEOC and [charging party] an identical common interest").

In the present instance, there could not possibly have been an attorney-client/common interest relationship between the DOL and the Claimants until

23

February 22, 2016 (when the Complaint was filed) or alternatively January 2016 (when, as the DOL's counsel acknowledged, the administrative case was referred to them for litigation).[16]  Thus, the attorney-client/common interest privilege does not apply to any statements that fall under either of the following categories:

- Statements taken before February 22, 2016 or alternatively January 2016.

- Statements (whenever taken) of (a) any Claimants who are not claiming overtime; and (b) any third-party witnesses.  By definition, such persons do not have a common interest with the DOL or a *de facto* attorney-client relationship with DOL's counsel.

In sum, regarding the DOL's witness statements:  The <u>informants' privilege</u> does not apply to (a) any of the witnesses whom the DOL has already identified in its Complaint Exhibit A or Initial Disclosures; (b) any witnesses upon whom the DOL will rely; (c) Tadio who went on Hawaii News Now to disclose his identity; and (d) Aguinaldo, Dinnan, Hendricksen, Kiyabu, Sceppe, and MacGregor.  The <u>common-interest/attorney-client privilege</u> does not apply at all in the FLSA context, and at the very least it does not apply to (a) statements before February 22, 2016 or January 2016; (b) statements by third-party witnesses, whenever taken; and (c) statements by Claimants not seeking back wages, whenever taken.

---

[16]    Although the DOL's November 29, 2016 e-mail asserts that the DOL is withholding any statements by Tadio after March 18, 2015 (the date of Defendants' position letter), that date does not denote the commencement of any common interest/attorney-client relationship with Claimants.

### 4.      Memoranda:  The Claimed Privileges Do Not Justify Withholding

With regard to its internal memoranda, the DOL asserts the privileges of

Deliberative Process; Investigative Files; Government Informant; and Attorney-

Client/Common Interest.  As a threshold matter, none of these privileges have been

timely or properly invoked, as discussed above.  But even assuming that any

privileges have been properly invoked (which is in fact not the case), the DOL still

cannot meets its burden of establishing the privileges under the particular facts.

### a.      Deliberative Process

The deliberative process narrowly protects pre-decisional

consultative/deliberative functions, but not factual material.  As stated by the

United States Supreme Court:

> [T]he privilege that has been held to attach to intragovernmental memoranda clearly has finite limits, even in civil litigation.  In each case, the question was whether production of the contested document would be 'injurious to the consultative functions of government that the privilege of nondisclosure protects.'  Thus, in the absence of a claim that disclosure would jeopardize state secrets, memoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context would generally be available for discovery by private parties in litigation with the Government.

*EPA v. Mink*, 410 U.S. 73, 87-88 (U.S. 1973) (citations omitted) (emphasis added);

*id.* at 91 (allowing "discovery of purely factual material appearing in those

documents in a form that is severable without compromising the private remainder

of the documents"); *Educ. Mgmt.*, 2014 U.S. Dist. LEXIS 50514 at *26-27 (the

deliberative process privilege "does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable . . . In addition, it does not protect communications made subsequent to an agency decision").

The deliberative process is not absolute and may be overcome in light of the needs of the case. *See Educ. Mgmt.*, 2014 U.S. Dist. LEXIS 50514 at *27.

In the present instance, the DOL has not established that the memoranda contain any deliberative process at all, and thus such privilege is inapplicable. Alternatively, to the extent the privilege is applicable (which the Court might determine based upon *in camera* review), the memoranda should still be produced with regard to at least their factual content.

### b.    <u>Investigative Files</u>

It does not appear that the Ninth Circuit has even recognized the investigative files privilege.  To the extent any such privilege is cognizable, it is a "law enforcement privilege" intended to prevent "harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files." *Black v. Sheraton Corp. of Am.*, 564 F.2d 531, 541 (D.C. Cir. 1977).  The privilege does not protect factual material. *See id.* at 544 (stating that "investigatory or <u>other factual reports</u> in the files of the Renegotiation Board were subject to discovery, but that policy recommendations were privileged") (citation omitted) (emphasis added).

26

In addition, the investigative files/law enforcement privilege is not absolute and can be overcome in light of the needs of the case.  *See Educ. Mgmt.*, 2014 U.S. Dist. LEXIS 50514 at *27.

In this instance, it is not even clear that the memoranda reflect any investigative techniques, much less that disclosure thereof would impose "harm to law enforcement efforts."  *Id.*  But even if the memoranda did reflect investigative techniques, the privilege gives way in light of Defendants' need for the information, given the stakes and the questions about the integrity of the DOL's investigation (*e.g.,* reliance upon Tadio to induce witnesses).  Alternatively, the memoranda can be produced at least as to factual content.

### c.      Government Informant

As is the case with the witness statements, the informant's privilege does not apply to the DOL's memoranda because the witnesses have already been disclosed, and alternatively, under the balancing test Defendants have a need for the information in light of the stakes and circumstances.

Even assuming the informant's privilege did apply, it still would not preclude disclosure of the memoranda's factual content.

### d.      Attorney-Client/Common Interest

There is no indication that the memoranda reflect attorney-client/common interest communications between Claimants and DOL's counsel or that they were

even written after January/February 2016 (when the DOL's counsel began pursuing litigation).

### 5.   Notes: The Claimed Privileges Do Not Justify Withholding

As a threshold matter, the DOL has not timely or properly invoked any privileges as to the Investigator's Notes, as discussed above.  But even assuming that any privileges have been properly invoked, the DOL still cannot meet its burden of establishing that the privileges apply under the particular facts.

#### a.   Deliberative Process

The DOL has not established that the notes contain deliberative process, as opposed to factual material, and thus such privilege is inapplicable.  Alternatively, to the extent the privilege is applicable (which the Court might determine based upon *in camera* review), the notes should still be produced at least as to factual content.

#### b.   Investigative Files

The DOL has not established that the notes reflect investigative techniques, and even if they did, the privilege gives way based upon Defendants' need for the information to defend themselves from the DOL's extreme demand and shifting positions (*e.g.,* Napierala's status).  Alternatively, the notes can be produced at least with regard to factual content.

### c.   Attorney-Client/Common Interest

The DOL has not established that the notes reflect attorney-client/common interest communications between Claimants and DOL's counsel.

### d.   Work Product

The DOL establishes no bases for work product privilege.  To qualify for protection under Rule 26(b)(3), the documents must be prepared in anticipation of litigation or for trial.  "At its core, the work product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."  *United States v. Nobles,* 422 U.S. 225, 238 (U.S. 1975).  "The burden of establishing protection of materials as work product is on the proponent, and it must be specifically raised and demonstrated rather than asserted in a blanket fashion."  *Columbia Riverkeeper v. United States Army Corps of Eng'rs*, 38 F. Supp. 3d 1207, 1216 (D. Or. 2014)

In this instance, the case was not referred to the Solicitors for litigation until January 2016, and there is no indication that the notes (which are undated) were generated in anticipation of such litigation.  Accordingly, the work product doctrine does not apply.

### 6.   Documents Relating to the DOL's Determination that Napierala Was Exempt

Such documents are presumably subsumed within the witness statements, memoranda, and notes described above and should be produced under the analysis

described above.  There is also the additional consideration that the need for these documents is heightened by the DOL's bait-and-switch position (*i.e.,* saying that Napierala is exempt and then changing its position) and the fact that the DOL presumably had some <u>factual</u> basis for its initial determination of exempt status. Defendants are entitled to review and rely upon such facts.

### 7. Communications with Witnesses

The DOL's communications with witnesses (*e.g.,* correspondences to or from witnesses) have not been identified in the DOL's privilege log, further demonstrating the absence of any governmental privilege.  In any event, any privileges would be inapplicable for the same reasons discussed above with regard to witness statements – *i.e.,* the witnesses are already identified, and there is no common interest/attorney-client privilege prior to the commencement of litigation (or even after commencement of litigation where the communications are with third-party witnesses or Claimants who do not share the common interest).

### 8. Records of Calls with Tadio

The DOL's records of calls with Tadio have not been identified in the DOL's privilege log, further demonstrating the absence of any governmental privilege.  At any rate, any privileges would be inapplicable for the same reasons discussed above with regard to witness statements – *i.e.,* Tadio has self-disclosed

himself as an informant, and there is no common interest privilege prior to the litigation.

### 9.   Documents Relating to Claimants' Non-Work Activities while Supposedly Working Overtime at Kazu

Such documents include calendars (showing non-work appointments), financial records (showing purchases and travel during the period of alleged overtime), records of wages from other entities, phone records (showing extended calls made while supposedly working), and other documentation of non-work activity, limited to the specific dates of alleged work at Kazu.

In its November 29, 2016 e-mail, the DOL indicates that it has access to Claimants' personal records (although it is unwilling to produce much of the requested records).  Without Defendants waiving their right to subpoena records from Claimants, the DOL should produce the responsive records, including phone and financial records for the Claimant's specific periods of employment.  As noted above, these records are objective and highly probative.  If the DOL's allegation of overtime were true (*e.g.,* 10 hours a day every day for many months), then Claimants' financial records and phone records (limited to their particular dates of employment) should reflect very little financial and phone activity during business hours, and no purchases for travel.  However, it is clear this is not the case:  For instance, Aguinaldo's financial records show at least 25 weeks when he did not work the hours that the DOL claims he did.  This directly thwarts the DOL's

theory that he worked 60 or 70 hours every single week continuously for two years and reduces the DOL's backwage calculation for Aguinaldo by at least 25% ($90,000).

Given the high stakes generated by the DOL, the evidence already presented that the DOL's overtime theory lacks merit, and the probative value demonstrated by the financial records already submitted, the documents should be produced.

### B.   Kazu's Interrogatories:  The DOL Should Be Compelled To Provide Adequate Responses

The DOL should be compelled to provide complete responses as to the following interrogatory requests:

- Request #2(b)(ii):  The factual bases for the DOL's central theory that employees worked 60 or 70 hours every week.[17]

- Request #3:  The factual bases for the DOL's central theory that Defendants banked hours, including when and to whom Lowry allegedly stated that he banked hours.

- Request #8:  The knowledge (and, if not confidential, identities) of the DOL's Contractor witnesses

- Request #10:  The dates, nature, and substance of the DOL's communications with Tadio.

- Requests #12-14:  Information as to Claimants, including their side jobs while working for Kazu, and their phone and financial account numbers.[18]

---

[17]   Similar to Defendants' request that DOL produce unredacted witness statements, Defendants seek an interrogatory response that includes which employees are alleging overtime, who was witnessed working overtime, and any other circumstances of overtime.

All such information is factual in nature and does not require the disclosure of deliberative process, investigative techniques, or attorney-client/common interest communications.  Furthermore, as noted above, the informant's privilege does not apply, either because it has not been properly invoked, because the DOL has already disclosed its witnesses or will be relying upon such witness' testimony, or because under the balancing test Defendants have a greater need for the information; alternatively, if the Court determines that the informant's privilege does apply, the DOL should still respond and remove only the identities of informants who are still confidential (at the very least, this would <u>not</u> include Tadio).

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that this motion be granted and the Court issue an order compelling the DOL to provide the unredacted documents and interrogatory answers as described above.  Alternatively, this production may be, as the Court determines appropriate, subject to *in camera* review and with or without redactions.

---

[18]    In its November 29, 2016 e-mail, the DOL for the first time indicated a willingness to produce information in response to Interrogatory #12 (entities that paid Claimants), indicating it would do so by December 16.  Nevertheless, given that the information has not yet been produced and the amount of time it has taken just to secure the DOL's representation, Defendants still request that the DOL be ordered to provide this information.

DATED:   Honolulu, Hawaii, November 30, 2016.


   */s/  Christopher S. Yeh*
CHRISTOPHER S. YEH
DARIN R. LEONG
KRISTI K. O'HERON

Attorneys for Defendants
KAZU CONSTRUCTION LLC and
VERNON LOWRY