**MARR JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

CHRISTOPHER S. YEH        6777-0
DARIN R. LEONG            8702-0
KRISTI K. O'HERON         9307-0
Pauahi Tower
1003 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700
cyeh@marrjones.com

Attorneys for Defendants
KAZU CONSTRUCTION LLC and
VERNON LOWRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ,<br><br>Plaintiff,<br><br>vs.<br><br>KAZU CONSTRUCTION, LLC, a corporation; and VERNON LOWRY, an individual;<br><br>Defendants. | CIVIL NO. 16-00077 ACK-KSC<br><br>DEFENDANTS KAZU CONSTRUCTION LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ<br><br>Trial Date: April 18, 2017 |

EXHIBIT I

**DEFENDANTS KAZU CONSTRUCTION LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ**

PLEASE TAKE NOTICE that, pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendant Kazu Construction LLC ("Kazu") hereby requests that Plaintiff Secretary of Labor, United States Department of Labor, Thomas Perez, produce the documents requested below for inspection and copying at the offices of Marr Jones & Wang, Pauahi Tower, 1003 Bishop Street, Suite 1500, Honolulu, Hawaii 96813 or at some other convenient location mutually agreed upon by the parties, within thirty (30) days of receipt of this request or at such earlier time as agreed upon by counsel.

PLEASE TAKE FURTHER NOTICE that Plaintiff is required by Rule 34 to file a written response hereto within thirty (30) days after service of this request.

DATED:   Honolulu, Hawaii, August 30, 2016.


CHRISTOPHER S. YEH
DARIN R. LEONG
KRISTI K. O'HERON

Attorneys for Defendants
KAZU CONSTRUCTION LLC and
VERNON LOWRY

2

# INSTRUCTIONS

The following instructions are to be considered applicable to all demands for production of documents contained herein:

1.     In producing the documents requested, please furnish all documents in your possession, custody, and/or control regardless of whether these documents are possessed directly by you or your agents, employees, representatives, investigators, or by your attorneys or their agents, employees, representatives or investigators.  This request also encompasses documents in the possession of any of your physicians or other medical providers.

2.     If the documents requested cannot be produced in full, please produce the documents(s) to the extent possible, specify your reasons for your inability to produce the remainder, and state whatever information, knowledge, or belief you do have concerning the unproduced portion(s).

3.     If the documents requested were at one time in existence, but are no longer in existence, please so state, specifying for each document or thing:

      a.     the type of document or thing;

      b.     the types of information contained thereon;

      c.     the date upon which it ceased to exist;

      d.     the circumstances under which it ceased to exist;

e.      the identity of all persons having knowledge of the circumstances under which it ceased to exist; and

f.      the identity of all persons having knowledge or who had knowledge of the contents thereof.

4.      If you claim a privilege against producing any of the documents requested, please provide a list / log describing such documents, including their originator, the persons to whom they were directed, their date, who has seen them, and the reason(s) why you will not produce them.

5.      Pursuant to Rule 26(e) of the Federal Rules of Civil Procedure, this Request is a continuing one.  If you obtain or become aware of any additional documents that may be responsive to this request after you have served your written response and/or have produced the documents requested, please supplement your written response and produce the additional documents within thirty (30) days after you obtain or become aware of the additional documents.

6.      Each of these instructions is hereby incorporated into each numbered request to which it pertains.

## DEFINITIONS

1.     As used in this request, the terms "Plaintiff," "you," "your," and "yourself" shall mean Plaintiff Secretary of Labor, United States Department of Labor, Thomas Perez, and any other representatives, agents, attorneys, or other persons acting or purporting to act on his behalf (to the extent that such a collective definition does not call for the production of privileged documents).

2.     The term "Defendant" or "Kazu" shall mean Defendant Kazu Construction LLC.  The term shall also mean the entity's respective predecessors, successors, agents, recruiters, employees, servants, representatives, or any other persons acting or purporting to act on its behalf.

3.     The term "Complaint" shall mean the Complaint for Violations of the Fair Labor Standards Act, filed in the United States District Court as Civil No. 16-00077 ACK-KSC on February 22, 2016.

4.     The term "Subject Matter" shall mean Kazu Construction LLC, Vernon Lowry, alleged FLSA violations by Kazu Construction LLC and/or Vernon Lowry, or any other allegations or subjects that are in the Complaint (or any amendment thereto) or part of Plaintiff's lawsuit.

5.     The term "Subject Employees" or "Subject Employee" shall mean any and all employees listed in the Complaint's Exhibit A (and/or any amendment or supplement thereto), Plaintiff's Initial Disclosures computation of

2

damages (and/or any amendment or supplement thereto, including but not limited to Plaintiff's Amended Initial Disclosures), and any and all other employees for whom Plaintiff is seeking any back wages or other damages.

6.     The term "statement" shall mean any allegation, representation, assertion, statement, or other communication by any person, whether in an interview or not, and including but not limited to any memorialization thereof by that person or any other person.

7.     The terms "person" and "entity" shall mean natural persons, firms, proprietorships, associations, partnerships, corporations and every other type of organization or entity.

8.     The term "claim" as used herein shall mean and include claims (including causes of action) or allegations set forth in the Complaint.

9.     The term "communication" shall mean any transmission of information (in whatever form), the information transmitted, and any process by which information is transmitted.  The term includes, but is not limited to, written communications (including as memorialized in any document, note, memoranda, correspondence, journal, or electronic mail, and including but not limited to letters, e-mails, and text messages) and oral communications.

10.     The term "writing" means any tangible thing upon which is recorded any form of communication or representation, including letters, words,

3

pictures, sounds or symbols, or any combination thereof, by means of handwriting, typewriting, word processing, printing, photographing, electronic mail or transmission, sound recording, or other method of recording. This definition includes, but is not limited to, records, reports, papers, documents, computer tapes or discs, photographs, books, letters, notes, memoranda, statements, tape recordings, photograph recordings, and microfilm, whether in your possession or under your control or not, relating to or pertaining in any manner to the subject in connection with which it is used and includes, without limitation, all file copies and all drafts prepared in connection with such writings, whether used or not.

11.     The term "document" or "documents" means and includes any and all:

a.     Tangible things or items, whether handwritten, typed, printed, tape recorded, electronically recorded, videotape recorded, visually reproduced, stenographically reproduced or reproduced in any other manner;

b.     Original and all copies of any and all communications;

c.     Writings of any kind or type whatsoever;

d.     Data compilations from which information can be obtained and translated, if necessary, by the respondent through detection devices into reasonable usable form as defined in Rule 34 of the Federal Rules of Civil Procedure;

4

e.      Books and pamphlets;

f.      Microtape, microfilm, photographs, movies, records, recordings, tape recordings, and videotape recordings, stenographically or otherwise reproduced;

g.      Diaries and appointment books;

h.      Cables, wires, memoranda, reports, notes, minutes and interoffice communications;

i.      Letters and correspondence;

j.      Contracts or agreements;

k.      Other legal instruments or official documents;

l.      Deeds, leases, mortgages, assignments or other instruments relating to real property or personal property;

m.      Published material of any kind;

n.      Financial statements, balance sheets, profit and loss statements, statements of financial condition, income tax returns, worksheets, reports, projections, schedules, ledgers, books, records and journals;

o.      Vouchers, expense accounts, receipts, invoices, bills, orders, billings and checks;

p.      Investigation or incident reports;

q.      Files and records;

   r. Notes or summaries of conferences, meetings, discussions, interviews, or telephone conversations or messages;

   s. Travel reports and vouchers;

   t. Electronic mail, blogs, website pages, or the like;

   u. Drafts or draft copies of any of the above.

  12. The term "relating to" means consisting of, referring to, describing, discussing, constituting, evidencing, containing, reflecting, mentioning, concerning, pertaining to, citing, summarizing, analyzing or bearing any logical or factual connection with the matter discussed.

  13. This Request encompasses all forms and manifestations of electronically stored and/or retrieved electronic information, in all electronic media (hard drive, diskette, tape and/or CD-ROM optical/data), including but not limited to electronic mail (e-mail).  Material responsive to this Request should be produced on formatted 3½-inch diskettes, double-sided, high-density in a DOS compatible format, or in CD-ROM optically readable DOS compatible format, clearly labeled as to the software product used to organize and manipulate the underlying data.

  14. "Any" shall also mean "all" and vice versa, for the maximum scope.

  15. "And" shall mean "or" and "or" shall mean "and" as necessary to call for the broadest possible answer.

16.     Each of these Definitions is hereby incorporated into each of the Requests to which it pertains.

## DOCUMENTS REQUESTED

**Reminder:  The following requests contain terms that have specialized and/or precise meanings.  Please refer to the foregoing definitions and instructions before answering the following requests.**

## PLEASE PRODUCE THE FOLLOWING:

1.     Any statements by any persons relating to the Subject Matter.  This includes, but is not limited to, any statements whether signed or unsigned, and drafts thereof.

2.     Any notes, communications, and other documents relating to any statements as described in request #1.  This includes, but is not limited to, any proposed or draft statements whether signed or unsigned.

3.     Any communications (including, but not limited to, e-mails, text messages, and letters), and any documents relating to communications, to or from any persons (including, but not limited to, Plaintiff) relating to the Subject Matter.

4.     Any documents provided to or received from any persons relating to the Subject Matter.

5.     As to any persons whom Plaintiff will call at trial or who has or will provide a statement (including any declaration or affidavit) that Plaintiff will submit to the Court:  Any statements by any such persons relating to the Subject Matter.  This includes, but is not limited to, any statements whether signed or unsigned, and drafts thereof.

6.     As to any persons whom Plaintiff will call at trial or who has or will provide a statement (including any declaration or affidavit) that Plaintiff will submit to the Court:  Any notes, communications, and other documents relating to any statements as described in request #5.  This includes, but is not limited to, any proposed or draft statements whether signed or unsigned.

7.     As to any persons whom Plaintiff will call at trial or who has or will provide a statement (including any declaration or affidavit) that Plaintiff will submit to the Court:  Any communications (including, but not limited to, e-mails, text messages, and letters), and any documents relating to communications,

to or from any such persons (including, but not limited to, Plaintiff) relating to the Subject Matter.

8.    <u>As to any persons whom Plaintiff will call at trial or who has or will provide a statement (including any declaration or affidavit) that Plaintiff will submit to the Court</u>: Any documents provided to or received from any such persons relating to the Subject Matter.

9.    <u>Allowing for informers' identifiers to be redacted</u>: Any statements by any persons relating to the Subject Matter. This includes, but is not limited to, any statements whether signed or unsigned, and drafts thereof.

10.   <u>Allowing for informers' identifiers to be redacted</u>: Any notes, communications, and other documents relating to any statements as described in request #9. This includes, but is not limited to, any proposed or draft statements whether signed or unsigned.

11.   <u>Allowing for informers' identifiers to be redacted</u>: Any communications (including, but not limited to, e-mails, text messages, and letters), and any documents relating to communications, to or from any persons (including, but not limited to, Plaintiff) relating to the Subject Matter.

12.   <u>Allowing for informers' identifiers to be redacted</u>: Any documents provided to or received from any persons relating to the Subject Matter.

13.   With regard to Dennis Tadio:

   a.  Any of Tadio's statements relating to the Subject Matter.
   b.  Any communications to or from him relating to the Subject Matter. This includes, but is not limited to, any e-mails, texts, or other communications between Tadio and Jefferson Caparas.
   c.  Any notes or other documents memorializing or otherwise relating to any such statements or communications.
   d.  Any documents provided to or received from Tadio.
   e.  Any documents memorializing or relating to any calls to or from Tadio.
   f.  Any documents upon which you base any allegation that Tadio worked overtime for Kazu, or is owed unpaid minimum wage.
   g.  Any documents about Tadio.

2

NOTE: Tadio has self-disclosed himself as an informer and is not subject to any informer's privilege. *See* Attachment A.

14.   With regard to Kahikapu Hendricksen:

    a. Any of Hendricksen's statements relating to the Subject Matter.
    b. Any communications to or from him relating to the Subject Matter.
    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.
    d. Any documents provided to or received from Hendricksen.
    e. Any documents memorializing or relating to any calls to or from Hendricksen.
    f. Any documents upon which you base any allegation that Hendricksen worked overtime for Kazu.
    g. Any documents about Hendricksen.

Note: There is no informer's privilege as Hendricksen denies that he was an informer. *See* Attachment B. In addition, Hendricksen disclosed his purported witness statement to Vernon Lowry. *See* Attachment F.

15.   With regard to Frank Aguinaldo:

    a. Any of Aguinaldo's statements relating to the Subject Matter.
    b. Any communications to or from him relating to the Subject Matter.
    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.
    d. Any documents provided to or received from Aguinaldo.
    e. Any documents memorializing or relating to any calls to or from Aguinaldo.
    f. Any documents upon which you base any allegation that Aguinaldo worked overtime for Kazu.
    g. Any documents about Aguinaldo.

Note: Aguinaldo waives any informer's privilege (to the extent otherwise applicable). *See* Attachment C.

16.   With regard to Rachel Kiyabu:

    a. Any of Kiyabu's statements relating to the Subject Matter.
    b. Any communications to or from her relating to the Subject Matter.

3

    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.
    d. Any documents provided to or received from Kiyabu.
    e. Any documents memorializing or relating to any calls to or from Kiyabu.
    f. Any documents about Kiyabu.

Note: Kiyabu waives any informer's privilege (to the extent otherwise applicable). *See* Attachment D.

17.    With regard to Sean Dinnan:

    a. Any of Dinnan's statements relating to the Subject Matter.
    b. Any communications to or from him relating to the Subject Matter.
    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.
    d. Any documents provided to or received from Dinnan.
    e. Any documents memorializing or relating to any calls to or from Dinnan.
    f. Any documents about Dinnan.

Note: Dinnan waives any informer's privilege (to the extent otherwise applicable). *See* Attachment E.

18.    With regard to Brian Sceppi:

    a. Any of Sceppi's statements relating to the Subject Matter.
    b. Any communications to or from him relating to the Subject Matter.
    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.
    d. Any documents provided to or received from Sceppi.
    e. Any documents memorializing or relating to any calls to or from Sceppi.
    f. Any documents about Sceppi.

NOTE: Any informer's privilege has been waived through disclosure. *See* Attachment F.

19.    With regard to Kevin MacGregor:

    a. Any of MacGregor's statements relating to the Subject Matter.
    b. Any communications to or from him relating to the Subject Matter.

    c. Any notes or other documents memorializing or otherwise relating to any such statements or communications.

    d. Any documents provided to or received from MacGregor.

    e. Any documents memorializing or relating to any calls to or from MacGregor.

    f. Any documents upon which you base any allegation that MacGregor worked overtime for Kazu.

    g. Any documents about MacGregor.

NOTE: Any informer's privilege has been waived through disclosure. *See* Attachment F.

20. Any documents relating to Plaintiff's investigation of Kazu Construction.

21. Any notes (including drafts thereof) relating to Plaintiff's investigation of Kazu Construction.

22. Any documents memorializing any facts relied upon by Plaintiff as part of its investigation of Kazu Construction.

23. Any documents obtained or reviewed by Plaintiff as part of its investigation of Kazu Construction.

24. Any phone records and other documents relating to any calls made or received by Plaintiff (including, but not limited to, any of its investigators and other agents) with any individuals relating to the Subject Matter.

25. Any cell, office, or other phone records of Jefferson Caparas for the period January 1, 2014 to present relating to the Subject Matter.

26. Any cell, office, or other phone records of Jefferson Caparas for the period January 1, 2014 to present reflecting calls with any Subject Employees whom Plaintiff intends to call at trial.

27. Any cell, office, or other phone records of Jefferson Caparas for the period January 1, 2014 to present reflecting calls with any Subject Employees whose statement (including, but not limited to, any declaration or affidavit) Plaintiff intends to submit to the Court.

28. Any cell, office, or other phone records reflecting any calls that Jefferson Caparas made or received on August 25, 2014.

29. Any cell, office, or other phone records reflecting any calls that Jefferson Caparas made to or received from Kahikapu Hendricksen.

30. Any cell, office, or other phone records reflecting any calls that Jefferson Caparas made to or received from Dennis Tadio.

31. Any communications (including, but not limited to, e-mails, texts, and other communications) between Jefferson Caparas and Dennis Tadio.

32. Any documents relating to any Subject Employees, including but not limited to, with regard to:

    a. employment or other work with any other entities,

    b. financial records (including, but not limited to, credit card statements, debit card statements, and bank statements) reflecting purchases of any goods or services and/or the identities of their financial institutions,

    c. parole and/or probation-related appointments,

    d. activities, meetings, or appointments not involving work for Kazu,

    e. phone calls (including date, time, and duration) and/or the identity of their phone carriers,

    f. e-mails and text messages,

    g. travel,

    h. stay at any paid lodging (whether on Oahu or otherwise), and

    i. social media posts showing or otherwise relating to any activities other than work for Kazu,

during each Subjective Employee's respective period of employment with Kazu.

33. Any documents relating to any communications between Dennis Tadio and any of the Subject Employees.

34. Any documents supporting or otherwise relating to Plaintiff's allegation that Defendants' violations were willful.

6

35.    Any documents supporting or otherwise relating to Plaintiff's claim for back wages or any other damages on behalf of each of the Subject Employees. This includes, but is not limited to:

     a. the dates of each Subject Employee's employment with Kazu
     b. the alleged hours worked, broken down by each week of employment
     c. the alleged minimum wage owed, broken down by each week of employment
     d. the alleged overtime owed, broken down by each week of employment

36.    Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants have willfully and repeatedly violated, and continue to violate, Sections 6 and 15(a)(2) of the FLSA, 29 U.S.C. §§206 and 215(a)(2), by failing to pay some employees at least the federal minimum wage of $7.25 per hour for all hours worked" (Complaint at ¶ 10).

37.    Any documents supporting or otherwise relating to Plaintiff's allegation that "One form of this violation occurred because the employer 'banked' hours worked over 40 in the workweek in an informal system to be claimed by workers in future weeks when the workers worked less than forty hours (such as for sick leave or other time off)" (Complaint at ¶ 10).

38.    Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants have willfully and repeatedly violated, and continue to violate, Sections 7 and 15(a)(2) of the FLSA, 29 U.S.C. §§207 and 215(a)(2), by failing to pay their employees at rates not less than one and one-half times the employees' regular rate of pay in workweeks when the employees worked more than forty hours" (Complaint at ¶ 11).

39.    Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants engaged in a practice of paying employees for only forty hours of work even though workers routinely worked in excess of forty hours" (Complaint at ¶ 11).

40.    Any documents supporting or otherwise relating to Plaintiff's allegation that "The employer 'banked' those excess unpaid hours in an informal system to be claimed by workers in future weeks when the workers worked less than forty hours (such as for sick leave or other time off)" (Complaint at ¶ 11).

41.   Any documents supporting or otherwise relating to Plaintiff's allegation that "The informal nature of the banked system means that the employer never maintained records of the banked hours" (Complaint at ¶ 11).

42.   Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants have willfully violated, and continue to violate, Sections 11 and 15(a)(5) of the FLSA, 29 U.S.C. §211 and 215(a)(5) by failing to maintain, keep, make available (to authorized agents of the Secretary for inspection, transcription, and/or copying, upon their written demand for such access), and preserve records of employees and of the wages, hours, and other conditions and practices of employment maintained, as required under 29 C.F.R. Part 516" (Complaint at ¶ 11 [sic])

43.   Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants failed to make, keep, and preserve accurate records of hours worked by employees" (Complaint at ¶ 11 [sic]).

44.   Any documents supporting or otherwise relating to Plaintiff's allegation that "employees regularly worked over 40 hours in a workweek" (Complaint at ¶ 11 [sic]).

45.   Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants maintained an informal practice of 'banking' hours worked over 40 hours each week" (Complaint at ¶ 11 [sic]).

46.   Any documents supporting or otherwise relating to Plaintiff's allegation that "During the investigatory period, beginning in August of 2012 through the present, Defendants repeatedly violated the above-described provisions of the FLSA" (Complaint at ¶ 12)

47.   Any documents supporting or otherwise relating to Plaintiff's allegation that "Defendants' violations of FLSA Sections 6, 7, 11, and 15 are willful in nature in that Defendants were aware that employees were required to be paid both minimum wage and overtime for hours worked over 40 in a workweek, but instead, Defendants only paid workers for 40 hours despite the fact that workers regularly and consistently worked more hours" (Complaint at ¶ 12).

48.   Any documents supporting or otherwise relating to Plaintiff's allegation that "As a result of the violations of the FLSA, there is unpaid minimum wage

and overtime compensation being withheld by the Defendants" (Complaint at ¶ 12).

49.   Any guidelines, memoranda, protocols, procedures and other documents relating to Plaintiff's process for investigation (including, but not limited to, as to the timing of investigations, the conducting of a closing conference, the opportunity for voluntary resolution, and/or the closing of investigations).

50.   Any guidelines, memoranda, protocols, procedures, seminar materials, outreach materials, communications with any employers, and other documents memorializing or relating to Plaintiff's position or communications that it seeks to educate, not penalize, employers with regard to the FLSA.

51.   Any documents identified or relied upon in responding to Defendant's First Request For Answers to Interrogatories To Plaintiff (dated August 30, 2016).

52.   Any documents that support or otherwise relate to your claim for "such other and further legal and equitable relief as may be necessary or appropriate."

53.   Any documents that support or otherwise relate to your claim for equitable tolling.

54.   Any documents that support or otherwise relate to your claim that Richard Napierala was a non-exempt employee.

55.   Any documents that support or otherwise relate to Jefferson Caparas' representation (in February 2015 or any other time) to Defendants that Richard Napierala was an exempt employee.

56.   Any documents that support or otherwise relate to your claim that Frank Aguinaldo was a non-exempt employee.

57.   Any documents that you intend to introduce as evidence at the time of trial in this case.

58.   Any documents which set forth the names and addresses of any expert witnesses who will testify on Plaintiff's behalf or whom Plaintiff will consult with regard to any claim in the Complaint.

59.   Any documents that reflect or otherwise relate to any opinion considered, reached, rejected or confirmed by any expert witness retained by Plaintiff to testify at trial in this case, and all documents on which each such expert is expected to rely for each such opinion, including all documents or reports (including any working or preliminary drafts thereof) prepared or generated by or at the direction of such expert in relation to the subject matter of this case.

60.   Any and all written reports prepared by any expert witness whom Plaintiff retained and who has or will provide consulting services and/or expert testimony in this case.

61.   The resume(s) and/or curriculum vitae(s) of any expert witness you retained who has or will provide consulting services and/or expert testimony in this case.

Job Link Now | HNN808 | Healthy You | Perfect Home | Tributes | Career Opportunities





**70°**
Few Clouds
Honolulu          **FULL FORECAST**

**Search**

# Whistleblower triggers federal lawsuit over unpaid overtime

*Published: Wednesday, March 2nd 2016, 7:50 pm HST*
*Updated: Friday, March 4th 2016, 6:53 pm HST*

**By Chelsea Davis** [CONNECT]

NANAKULI, OAHU (HawaiiNewsNow) - A man who blew the whistle on illegal work conditions at his former workplace is now getting help and protection from the federal government.

The U.S. Department of Labor is suing Kazu Construction and its owner, Vernon Lowry, for $500,000 to cover unpaid back wages and damages.

The lawsuit claims the Nanakuli-based company improperly had workers put in long days but didn't give them time-and-a-half overtime pay. Instead, in slower weeks, the extra hours that had been banked were paid out at straight time.

Whistleblower Dennis Tadio said he'd put in 12-14 hour days, leaving before his family woke up and coming home after his kids were in bed, and wasn't compensated appropriately.

"It's not right," he said.

Since Tadio came forward, 16 more workers have made similar allegations against the Nanakuli-based contractor.

Federal attorneys said the case should be a teachable moment for employers and employeelees.

They said many employees don't know their rights when it comes to pay and time-off rules and some bosses take advantage of that. That's why the federal government takes these cases seriously and goes after employers who break the law.

"All the employees and the employers get the opportunity to learn from each other," said Terence Trotter, district director of U.S. Department of Labor Wage and Hours Division. "If this is a practice that's going on now, maybe others employers can self-correct and take necessary steps if they're also banking hours."

Authorities also stress that workers like Tadio will be protected if they come forward.

"If the employer violates the courts order to stop retaliating or threatening or trying to coerce employees into signing false statements, if the employer violates that court order, we can go back to the judge and ask the judge to put the employer in jail," said Susan Seletsky, chief counsel for Fair Labor Standards Act Litigation.

Tadio said the experience has taught him a lot, too, and he wants to encourage others in the same situation to come forward.

"If you know something's wrong, you need to come forward," he said. "They keep it confidential, I chose to be here and not to keep my identity a secret, that's just me, that's how I am."

He added, "The majority of all workers are afraid. They're afraid they're either gonna get fired or the boss is going get mad or someone's gonna come after them. But people need to just step forward and do what is right."

Lowry did not respond to a request for comment.

*Copyright 2016 Hawaii News Now. All rights reserved.*

## RECOMMENDED STORIES

Recommended by



**EXCLUSIVE: FBI arrests decorated Kauai officer for stealing drug money [10pm report]**



**Homeowners Are in for a Big Surprise in 2016...**
*Promoted By Smart Life Weekly*



**EXCLUSIVE: Big Island man arrested for gruesome murder**



**When a top MIT Biologist Tackles Aging**
*Promoted By Fast Company*

ATTACHMENT A

To whom I may Concern:

I Never Spoken to Jefferson M. Caparas on phone or

I never did talk to any labor face to face

board and cent me a paper to

sign to turn in. They have a bunch

of question that I suppoest to answer

and wanted me to sign it. Also

Charles Dennis called me and want

me to say all of these thing

that wasnt true so I could

get some money. I work for kaza

cont. for about 3 month and never

worked over 40 hr in a Work week.

Kazu cont treated me more they

fare and dose not owe me

any money at all. If anything

I owe Vern couple hunched dollar

that I never paid him to help me with

pay my bills.

                    Kahikapu Hendrickson



The statements he has in this

letter in not true and is faluce

and was never said by me.

TO WHOM IT MAY Concern —

I FRANK AGUANALDO WAVE MY INFORMANT PRIVILEGE TO THE DEPARTMENT OF LABOR

MAHALO,

ATTACHMENT C

8/19/14

To Whom it may Concern
I Rachel Rivera have my Informant
written privlege to the department of Labor.

P.S. aka Rachel Kiyabu

ATTACHMENT D

8/19/16

To Whom it may concern
I Sean F. Dinnan
wave my Informeas
privelige to the Dept
of Labour

Sun FO

ATTACHMENT E

# DECLARATION OF VERNON LOWRY

Vernon Lowry declares the following:

1.      I am a Member of the limited liability company for Kazu Construction LLC.  All statements made in this Declaration are based on my personal knowledge unless otherwise expressly stated.  If called as a witness, I could testify competently under oath to these facts.

2.      In August 2014, Brian Sceppi told me that he was interviewed by the Department of Labor and was asked about various subjects, such as hours worked and whether there was weekend work.

3.      In or around October 2014, Kevin MacGregor told me that he gave a statement to the Department of Labor about his hours worked at Kazu Construction LLC.

4.      In or around October 2014, Kahikapu Hendricksen offered to and did give me the September 11, 2014 letter from the Department of Labor to him and the interview statement (attributed to him) enclosed with the letter.

Pursuant to 28 U.S. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed in Honolulu, Hawaii, on August 29, 2016.

VERNON LOWRY

ATTACHMENT F