**MARR JONES & WANG**
A LIMITED LIABILITY LAW PARTNERSHIP

CHRISTOPHER S. YEH          6777-0
DARIN R. LEONG              8702-0
KRISTI K. O'HERON           9307-0
Pauahi Tower
1003 Bishop Street, Suite 1500
Honolulu, Hawaii 96813
Tel. No. (808) 536-4900
Fax No. (808) 536-6700
cyeh@marrjones.com

Attorneys for Defendants
KAZU CONSTRUCTION LLC and
VERNON LOWRY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ,<br><br>           Plaintiff,<br><br>vs.<br><br>KAZU CONSTRUCTION, LLC, a corporation; and VERNON LOWRY, an individual;<br><br>           Defendants. | CIVIL NO. 16-00077 ACK-KSC<br><br>DEFENDANTS KAZU CONSTRUCTION LLC AND VERNON LOWRY'S **CONSOLIDATED MEMORANDUM IN OPPOSITION TO  SECRETARY OF LABOR'S MOTION TO QUASH, OR IN THE ALTERNATIVE, TO MODIFY SUBPOENA [DOC 46] AND SECOND MOTION TO QUASH SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER [DOC 62]**; CERTIFICATE OF SERVICE<br><br>*(Captioned continued on next page)* |

819797/1725.002

<u>Hearing</u>:

Date:   January 27, 2017
Time:   9:30 a.m.
Judge:  The Honorable Kevin S.C.
        Chang

Trial Date:   April 18. 2017

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................. 1

II.    FACTS ................................................................................. 2

III.    ARGUMENT:  DOL'S REQUEST TO QUASH OR
MODIFY SUBPOENAS .................................................... 5

    A.    The DOL's Request Is Untimely as to Dennis Tadio ....... 5

    B.    Under the General Rule, the DOL Lacks Standing............ 6

    C.    Alternatively, Any Exception Allowing Standing Does
Not Apply to These Facts .................................................. 8

        1.    The DOL Lacks Standing to Quash the Subpoenas
for Seeking Informants' Identities ........................... 9

        2.    The DOL Lacks Standing to Quash the Subpoenas
for Being Harassing ............................................... 10

    D.    The DOL's Motions Should Be Denied on the Merits ..... 13

    E.    The DOL's Additional Arguments Are Unavailing.......... 18

IV.    ARGUMENT:  DOL'S REQUEST FOR PROTECTIVE ORDER............ 19

    A.    The DOL's Motion Is Untimely as to Subpoenas Issued
in October and November 2016 ....................................... 19

    B.    The DOL Lacks Standing................................................. 20

    C.    The Request Should Be Denied on the Merits .................. 21

    D.    The Request Should Be Denied Because Prospective
Protective Orders Are Inappropriate ............................... 24

V.    CONCLUSION.............................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
  966 F.2d 470 (9th Cir. 1992) ....................................................22, 25

*Clayton Brokerage Co. v. Clement*,
  87 F.R.D. 569 (D. Md. 1980) ...........................................................11

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
  669 F.2d 620 (10th Cir. 1982) ...........................................................19

*Dorato v. Smith*,
  163 F. Supp. 3d (D.N.M. 2015) .........................................................20

*EEOC v. Michael Cetta, Inc.*,
  No. 09 Civ 10601 BSJ RLE, 2011 U.S. Dist. LEXIS 124488
  (S.D.N.Y. Oct. 27, 2011) .............................................................10, 11

*Foltz v. State Farm. Mut. Auto. Ins. Co.*
  331 F.3d 1122 (9th Cir. 2003) ..........................................................22

*Frias Holding Co. v. Greenberg Traurig, LLP*,
  No. 2:11-cv-160-GMN-VCF, 2015 U.S. Dist. LEXIS 101020 (D.
  Nev. Aug. 3, 2015)..................................................................21, 24

*Gulf Oil Co. v. Bernard*,
  452 U.S. 89 (1981)........................................................................22

*JAK Prods. v. Bayer*,
  No. 2:15-CV-00361, 2015 U.S. Dist. LEXIS 66935 (S.D. W. Va.
  May 22, 2015)..............................................................................5

*Kremen v. Cohen*,
  No. C11-05411 LHK (HRL), 2012 U.S. Dist. LEXIS 84328 (N.D.
  Cal. June 18, 2012) ......................................................................11

*Malmberg v. United States*,
No. 5:06-CV-1042, 2010 U.S. Dist. LEXIS 28784 (N.D.N.Y. Mar.
24, 2010) ..............................................................................................20

*Morrison v. Quest Diagnostics Inc.*,
No. 2:14-cv-01207-RFB-PAL, 2016 U.S. Dist. LEXIS 10167 (D.
Nev. Jan. 27, 2016) .............................................................................23

*Mount Hope Church v. Bash Back*,
705 F.3d 418 (9th Cir. 2012) ......................................................12, 13

*Phillips v. Gen. Motors Corp.*,
307 F.3d 1206 (9th Cir. 2002) ............................................................22

*Rhodes v. Litig. Trust of the Rhodes Cos., LLC*,
475 B.R. 733 (D. Nev. 2012) .......................................................6, 7, 8

*Salem Vegas, L.P. v. Guanci*,
No. 2:12-cv-01892-GMN-CWH, 2013 U.S. Dist. LEXIS 141619
(D. Nev. Sept. 30, 2013) .......................................................................7

*United States v. Int'l Bus. Machs. Corp.*,
70 F.R.D. 700 (S.D.N.Y. 1976) ..........................................................20

*United States v. Jenkins*,
895 F. Supp. 1389 (D. Haw. 1995) .....................................................11

*United States v. Miller*,
425 U.S. 435 (1975) ............................................................................10

*Wells Fargo Bank, N.A. v. Iny*,
No. 2:13-cv-01561-MMD-NJK, 2014 U.S. Dist. LEXIS 62381 (D.
Nev. May 6, 2014) .........................................................................6, 10

*Welsh v. City & County of San Francisco*,
887 F. Supp. 1293 (N.D. Cal. 1995) ...................................................23

## Other Authorities

Fed. R. Civ. P. 26(b)(1) .............................................................................24

Fed. R. Civ. P. 26(c) ...........................................................................*passim*

Fed. R. Civ. P. 26(c)(1) ..................................................................................21, 24

Fed. R. Civ. P. 45 .................................................................................................12

Fed. R. Civ. P. 45(c) ....................................................................................5, 7, 8

Fed. R. Civ. P. 45(c)(1) .......................................................................................13

Fed. R. Civ. P. 45(c)(3)(A)(iv) ...........................................................................13

Fed. R. Civ. P. 45(c)(3)(B) ....................................................................................7

Fed. R. Civ. P. 45(d) ........................................................................................7, 8

Fed. R. Civ. P. 45(d)(3)(A) .........................................................................5, 9, 12

Fed. R. Civ. P. 45(d)(3)(B) ...............................................................................7, 8

**DEFENDANTS KAZU CONSTRUCTION LLC AND VERNON LOWRY'S
CONSOLIDATED MEMORANDUM IN OPPOSITION TO PLAINTIFF
SECRETARY OF LABOR'S MOTION TO QUASH, OR IN THE
ALTERNATIVE, TO MODIFY SUBPOENA [DOC 46]
AND SECOND MOTION TO QUASH SUBPOENAS AND
FOR THE ENTRY OF A PROTECTIVE ORDER [DOC 62]**

## I.     INTRODUCTION

Defendants KAZU CONSTRUCTION LLC ("Kazu") and VERNON

LOWRY ("Lowry") (collectively, "Defendants") submit this consolidated

memorandum in opposition to (1) the DOL's Motion to Quash or in the Alternative

to Modify Subpoena ("First Motion to Quash") [Doc 46]; and (2) the DOL's

Second Motion to Quash Subpoenas and for the Entry of a Protective Order

("Second Motion to Quash") [Doc 62] (collectively "Motions").

The DOL essentially argues that the subpoenas (1) seek to uncover

informants' identities, and (2) are harassing/retaliatory due to being invasive.

These arguments are incorrect.  First, any informants' privilege has been waived

or should be deemed overcome under the circumstances.  In any event, the

informant's privilege would not affect most of the subpoenaed information

(*e.g.,* financial records, documents confirming non-Kazu employment, travel,

appointments, *etc.*).

Second, the subpoenas are not harassing/retaliatory but rather are carefully

tailored to defend against the DOL's own allegations.  The DOL asserts that each

Claimant worked 10 hours every day (between 7:00 a.m. to 6:00 p.m.) for months

and months.  Yet this allegation is patently false as evidenced by declarations from almost 40% of the Claimants, as well as Claimant Frank Aguinaldo's financial records showing at least 25 weeks when he did not work the hours that the DOL alleges.  Thus, Defendants are well-justified in subpoenaing financial and other records <u>that are limited specifically to dates and times claimed by the DOL</u>:  There is no information that could be more probative; the documents (such as Aguinaldo's financial records) provide <u>objective</u> proof that the DOL's claims are false; and the Claimants cannot have a privacy interest in activities they engaged in while they were, according to the DOL, on company time and entitled to payment. Furthermore, in a November 29, 2016 e-mail, the DOL has already conceded that at least some of the subpoenaed information is discoverable.

## II.   <u>FACTS</u>

In order to streamline the volume of briefing, Defendants incorporate by reference the entire "Background" section of their Motion to Compel and supporting Memorandum [Doc 55-1], and all declarations and exhibits submitted therewith [Doc 55-2 through 55-25].

In addition to such facts, Defendants note the following timeline relating to subpoenas:

Apr. 12     Several subpoenas are issued, but Defendants withdraw all of them in an effort to cooperate with DOL.  The only ones served – and then withdrawn – are on two Claimants (Kevin MacGregor and Daniel

Kawaahau) and a third-party relating to a Claimant's side employment while working for Kazu.

Aug. 30    Subpoenas are issued and then served on the following:
- Claimant Dennis Tadio who gave inconsistent accounts of his hours worked, including to Hawaii News Now.
- Hawaii News Now which ran the story featuring the DOL and Tadio accusing Defendants of violations.

Nov. 3    Subpoenas are issued for several Claimants.  However, Claimants are avoiding or unavailable for service, and at least one of the Claimants admits that he was told by the DOL's counsel to deny service.  *See* Neal Yoro Decl. ¶ 2 [Doc 49-5].  As a result, service is effected only on:
- Claimant Kevin MacGregor
- Claimant Stanley Napierala

Nov. 8    Subpoenas are issued for several Claimants and other entities.  Again, Claimants are avoiding or unavailable for service.  Service is effected only on:
- Claimant Arnold Leedy.
- Third parties Makaha Oceanview Estates, Nakamura Electric, Mark Kramer, and Suzanne Yen.

Nov. 17    The DOL files its First Motion to Quash.  The subpoenas listed above are addressed by this First Motion to Quash.

Nov. 29    The DOL (through its counsel) sends an e-mail, acknowledging that Tadio is not subject to the informant's privilege and that at least part of the subpoenas to Claimants (Requests #1 and #3(A)(B)(C) and (H)) is appropriate.  [Doc 55-24 at 2-3.]

Dec. 2    Subpoenas are issued for several Claimants and other entities, with service effected on:
- Claimant Preston Cummings
- Claimant Richard Napierala.
- Third parties Andrew Davis, Laretta Dubin, Joseph Nunuha, Melanie Abad, and T.J. Mahoney.

Dec. 16       The DOL files its Second Motion to Quash.  The subpoenas issued on December 2 (as listed above) are addressed by this Second Motion to Quash.

In light of the facts and the applicable law, the Court should deny the DOL's requests to quash or modify the subpoenas and request for a protective order.  The arguments are as follows:

### <u>DOL's request to quash subpoenas</u>

A.     As to Dennis Tadio, the DOL's request to quash is untimely.

B.     As a party, the DOL lacks standing to quash subpoenas served on any non-parties.

C.     Even assuming there is an exception that allows standing for a party to quash subpoenas, it would only apply where the party has a personal interest in the documents sought.  Here, although the DOL argues that it has an interest in protecting the informant's privilege, such privilege has been waived or overcome.  Although the DOL also argues that it has an interest in preventing harassment of witnesses:

    1.  This does not show that the DOL has <u>its own</u> personal/privacy interest in the Claimants' financial and other records.

    2.  In the civil context, courts have not recognized any government interest in protecting third-party witnesses from harassment.

    3.  Even if such interest were generally recognized, it does not exist here because the subpoenas are in fact not harassing.

D.     On the merits, the subpoenas are not harassing:  They seek relevant and proportional information, are specifically tailored to the DOL's allegations, and are strictly intended to defend against those allegations.  Defendants seek documents showing non-Kazu activities <u>limited specifically</u> to those dates and times that the DOL asserts that the Claimants were working.

**DOL's request for a protective order**

A.  The DOL's request for a protective order (set forth in its Second Motion to Quash, filed December 17) is untimely as to the subpoenas issued in October and November.

B.  As a party, the DOL lacks standing to seek a protective order for discovery on non-parties.

C.  On the merits, the DOL cannot meet its burden of showing that serious annoyance, embarrassment, *etc.* would arise from production of the subpoenaed documents.

D.  Rule 45(c) does not allow prospective protective orders.

## III.  ARGUMENT:  DOL'S REQUEST TO QUASH OR MODIFY SUBPOENAS

### A.  The DOL's Request Is Untimely as to Dennis Tadio

At least as to Claimant Dennis Tadio, the DOL's request should be denied on the grounds that it is untimely.

Under Rule 45(d)(3)(A), a motion to quash must be "timely" filed.  *See* Fed. R. Civ. P. 45(d)(3)(A).  This means filing before the subpoena's return date.  *See*, *e.g.*, *JAK Prods. v. Bayer*, No. 2:15-CV-00361, 2015 U.S. Dist. LEXIS 66935, *21-22 (S.D. W. Va. May 22, 2015) ("Rule 45(d)(3)(A) of the Federal Rules of Civil Procedure requires that a motion to quash be 'timely' filed and, although 'timely' is not defined in the Rule, courts have held that such a motion should be filed before the subpoena's return date") (citations omitted).

In this instance, the subpoena to Tadio had a return date of September 14, 2016.  *See* 8/30/16 Subpoena to Tadio [Doc 47-2 at 7].  No motion to quash or for protective order was filed by that deadline, or even within two months thereafter. Indeed, the DOL's First Motion to Quash (pertaining to Tadio) was not filed until November 17, 2016.

Accordingly, the subpoena to Tadio cannot be quashed or modified and should be deemed enforceable.

## B.   Under the General Rule, the DOL Lacks Standing

"As a general rule, a party has no standing to seek to quash a subpoena issued to a non-party to the action."  *Wells Fargo Bank, N.A. v. Iny*, No. 2:13-cv-01561-MMD-NJK, 2014 U.S. Dist. LEXIS 62381, *3 (D. Nev.  May 6, 2014).

In this instance, the subpoenas are issued to various non-parties.  Therefore, based upon the general rule, the DOL as a party lacks standing to quash or modify the subpoenas.

Although "some courts have found that a party has standing to move to quash subpoenas where the party has some personal right or privilege in the documents sought" (*id.*), the better approach is <u>not</u> to recognize this exception.

The Ninth Circuit has not recognized this exception, nor does it appear that the Hawaii courts have either.  Moreover, courts in the Ninth Circuit have expressly rejected the exception.  *See*, *e.g.*, *Rhodes v. Litig. Trust of the Rhodes*

*Cos., LLC*, 475 B.R. 733, 739-41 (D. Nev. 2012); *Salem Vegas, L.P. v. Guanci*,

No. 2:12-cv-01892-GMN-CWH, 2013 U.S. Dist. LEXIS 141619, *4-8 (D. Nev.

Sept. 30, 2013).

In rejecting the exception, the *Rhodes* court soundly explained why <u>only</u> the

subpoenaed witness – and not the party – has standing to quash the subpoena under

Rule 45(c) [subsequently re-lettered as Rule 45(d) but otherwise the same].

Specifically, the court noted that (1) the title of Rule 45(c) refers only to the

"person subject to a subpoena"; (2) although the rule does at one point refer to

protecting a person "affected by a subpoena," it does so only in a subsection of

narrow applicability;[1] and (3) the Advisory Committee notes make clear that the

Rule applies only to the rights of "witnesses."  As the court stated:

> Rule 45(c) is titled "Protecting a Person Subject to a Subpoena". . . .
> Rule 45(c)'s title is evidence that the primary purpose of Rule 45(c)
> is to protect the person subject to the subpoena, and unless explicitly
> stated, as in subsection (c)(3)(B), the Rule should be interpreted as
> applying to the person subject to the subpoena only.
>
> Additionally, the inclusion of protections for persons "affected by" a
> subpoena in subsection (c)(3)(B) and the exclusion of such
> protections in subsection (c)(3)(A) is evidence of the Advisory

---

[1]     The subsection referring to persons "affected by a subpoena" is Rule
45(c)(3)(B) [now Rule 45(d)(3)(B)].  That subsection only pertains to subpoenas
that require (i) disclosing trade secrets and other confidential research,
development, or commercial information; (ii) disclosing an unretained expert's
opinion under certain circumstances; and (iii) a person who is neither a party nor a
party's officer to incur substantial expense to travel more than 100 miles to trial.
None of those situations are applicable in the present case.

Committee's intent to distinguish between persons subject to and persons affected by a subpoena.  If the Advisory Committee had intended subsection (c)(3)(A) to apply to persons affected by a subpoena, then the Advisory Committee would have included the same language it included in subsection (c)(3)(B).

Lastly, the Advisory Committee Notes suggest that the Committee intended for subsection (c)(3)(A) to apply only to persons subject to the subpoena.  More specifically, the Committee added section (c) to Rule 45 in 1991.  Fed. R. Civ. P. 45 advisory committee's note to 1991 Amendment.  The 1991 Amendment was intended to "clarify and enlarge the protections afforded persons who are required to assist the court by giving information or evidence."  *Id.*  According to the Advisory Committee Notes, section (c) "states the rights of witnesses" (i.e., persons subject to the subpoena) and subsection (c)(3) "authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power."  *Id.*

*Rhodes*, 475 B.R. at 739-41.

Therefore, a sound reading of Rule 45(c) [now Rule 45(d)] and the corresponding Advisory Committee Notes precludes recognizing a party's right to quash a subpoena (except pursuant to Rule 45(d)(3)(B) relating to trade secrets, *etc.*).

## C. <u>Alternatively, Any Exception Allowing Standing Does Not Apply to These Facts</u>

Even assuming *arguendo* that a party could file a motion to quash where it has a "personal right or privilege in the documents sought," such exception would not apply to the present facts because the DOL lacks a personal right or privilege in the documents sought.

The DOL appears to argue that it has an interest in preventing discovery (1) that calls for the disclosure of informants' identities, and (2) that is harassing (*e.g.,* personally invasive) as to witnesses. However, this argument fails.

### 1. The DOL Lacks Standing to Quash the Subpoenas for Seeking Informants' Identities

Rule 45(d)(3)(A) defines the circumstances in which a subpoena may be quashed or modified. Although one subsection refers to privileged matter, this applies only "if no exception or waiver applies." *See* Fed. R. Civ. P. 45(d)(3)(A).

In this instance, there <u>are</u> multiple exceptions and waivers which have extinguished the informant's privilege. These exceptions and waivers are detailed in Defendants' Motion to Compel [Doc 55-1], and they include the following:

- Tadio has self-disclosed himself as an informant. [Doc 55-1 at 14.]

  NOTE: The DOL has conceded that Tadio is not subject to an informant's privilege. *See* 11/29/16 E-mail from DOL's counsel ("We will produce Mr. Tadio's statement made to WHD during the investigation") [Doc 55-24 at 2].

- In response to Defendants' Request for Production, the DOL failed to timely assert objections/privileges (including the informant's privilege) and therefore waived them. [Doc 55-1 at 18.]

- The DOL failed to meet the requirement of establishing the informant's privilege through an affidavit from the Secretary himself (or his high-ranking designee) attesting to his careful review of the underlying material. [*Id.* at 19-20.]

- Even if the privilege were timely and properly asserted, it does not apply because the DOL has already identified its witnesses by name in its Complaint and Initial Disclosures. [*Id.* at 21.]

- Even if the privilege might otherwise apply, it gives way under the fairness/balancing test in light of the stakes and Defendants' need to defend themselves.  [*Id.* at 22.]

Because there is no valid informants' privilege, the DOL lacks standing to

protect such privilege.

## 2.   The DOL Lacks Standing to Quash the Subpoenas for Being Harassing

There are numerous reasons why the DOL lacks standing to quash the

subpoenas for being allegedly harassing (*e.g.,* invasive of privacy rights).

**First**, on its face, the exception allowing for a party's standing must be

based upon the party's own "personal right or privilege <u>in the documents sought</u>."

*See*, *e.g.*, *Wells Fargo*, 2014 U.S. Dist. LEXIS 62381 at *3 (emphasis added).

But where the government seeks to prevent inquiry into the personal matters of

witnesses, the government does not have <u>its own</u> "personal" interest "<u>in the</u>

<u>documents sought</u>," such as the witnesses' financial or other personal records.

*See EEOC v. Michael Cetta, Inc.*, No. 09 Civ 10601 BSJ RLE, 2011 U.S. Dist.

LEXIS 124488, *5 (S.D.N.Y. Oct. 27, 2011) (government lacked standing to quash

subpoena where it did not have a sufficient interest in plaintiff-intervenor's

"personnel records, including job performance reviews and resumes").[2]

---

[2]     Indeed, courts have held that even the individual <u>himself</u> does not have a personal interest in his financial records (generated by his bank) or in his employment records (generated by his employer).  *See*, *e.g.*, *United States v.*

Here, the DOL does not – and as a matter of law cannot – identify any personal interest in the Claimants' financial and other documents, but rather is only asserting the Claimants' interests on their behalf.  *See* First Mot. to Quash at 13-18 (asserting witnesses' constitutional privacy and other interests) [Doc 46 at 18-23]. This does not constitute the DOL's own interest "in the documents sought." Furthermore, the witnesses themselves have not objected.[3]

**Second**, in the <u>civil</u> context, courts have not recognized a party's own interest in preventing harassment of a subpoenaed witness.  Rather, this has been recognized only in the <u>criminal</u> context.  *See United States v. Jenkins*, 895 F. Supp. 1389, 1393 (D. Haw. 1995) ("A party <u>to a criminal case</u> has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's

---

*Miller*, 425 U.S. 435, 440 (1975) (financial documents issued by third-party bank were not the defendant's "private papers" but rather "are the business records of the banks"); *Clayton Brokerage Co. v. Clement*, 87 F.R.D. 569, 571 (D. Md. 1980) ("the bank customer has no inherent right to assert either ownership, possession, or inferentially, control over the release of a bank's records of his transaction"); *id.* (these documents "are not confidential communications, but instruments of commercial transactions"); *Michael Cetta, Inc.*, 2011 U.S. Dist. LEXIS 124488 at *5 (along with government, plaintiff-intervenor himself lacked sufficient interest in plaintiff-intervenor's "personnel records, including job performance reviews and resumes").

[3]     *See*, *e.g.*, *Kremen v. Cohen*, No. C11-05411 LHK (HRL), 2012 U.S. Dist. LEXIS 84328, *8 (N.D. Cal. June 18, 2012) ("A party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object") (citations omitted).

legitimate interests," such as the government's interest in preventing undue harassment of its witnesses).

Furthermore, extending such interest (in preventing harassment) to the civil context would be inconsistent with Rule 45.  Rule 45(d)(3)(A) pertains to quashing or modification where the subpoena (i) fails to allow reasonable time to comply; (ii) requires a person to comply beyond geographical limits; (iii) requires disclosure of privileged or other protected matters, if no exception or waiver applies; or (iv) subjects a person to undue burden.  Nothing in this language covers a situation where the government believes a subpoena is harassing (invasive) as to a witness.

Indeed, as the Ninth Circuit has made clear, Rule 45's "undue burden" standard is met only when a subpoena imposes a <u>logistical</u> burden on production, not when it allegedly harasses a witness by seeking private documents.  *See Mount Hope Church v. Bash Back*, 705 F.3d 418 (9th Cir. 2012) ("undue burden" does not mean "the burdens associated with guarding protected information" but rather "the burdens of complying with the subpoena" such as "substantial travel burdens").[4]

---

[4]     In that case, the plaintiff issued subpoenas duces tecum to a third-party internet provider, seeking the names and other financial and personal information of certain e-mail account holders.  Although the Ninth Circuit quashed the subpoenas based upon a First Amendment analysis, it found that the subpoenas imposed no "undue burden."  The Ninth Circuit analyzed the "undue burden"

**Third**, even assuming there were an exception that gave a party standing to quash based upon harassment of the witness, the subpoenas in fact are not harassing.  To the contrary, and as detailed below, the subpoenas seek relevant and probative information and are proportional to the needs of the case.

### D.   The DOL's Motions Should Be Denied on the Merits

Even assuming *arguendo* that the DOL's Motions to Quash are procedurally appropriate (which they in fact are not), they still fail on the merits because the subpoenas are not harassing or retaliatory.

**First**, the subpoenas seek relevant information that is proportional to the needs of the case.  The DOL is seeking over $1 million in back pay and liquidated damages based upon a theory that the Claimants continuously worked 60 or 70

---

standard in both sections (c)(1) and (c)(3)(A)(iv) [now sections (d)(1) and (d)(3)(A)(iv)] and stated as follows:

> Appellees urge us to look beyond the face of the subpoena and to read the "undue burden" language in Rule 45(c)(1) as including the burdens associated with guarding protected information.  We decline, however, to adopt such a reading.  Our only Rule 45(c)(1) sanction-specific case interprets "undue burden" as the burden associated with compliance.
>
>       *       *       *
>
> In explaining the same language in section (c)(3)(A)(iv), the advisory committee stated that "it might be an undue burden to compel an adversary to attend trial as a witness if they are known to have no personal knowledge of matters in dispute, specifically if they would be required to incur substantial travel burdens."  Fed. R. Civ. P. 45(c)(3)(A)(iv) advisory committee's note.  Under this example, the burdens of complying with the subpoena are the ones that count.

*Id*. at 427-28

hours each week – that is, 10 hours each day (between 7:00 a.m. to 6:00 p.m.) for

six or seven days every week.  Furthermore, the DOL and Tadio teamed up by

appearing together on Hawaii News Now to vilify Defendants and damage their

reputation and livelihood.  With the DOL's approval, Tadio in his interview

accused Defendants of making him work from sun-up to sun-down and not being

able to see his family:

> We stay away from our families for almost the whole day.  I
> leave the house when they sleeping.  I come home, they sleeping,
> and then you never even getting compensated for that.

3/4/16 Hawaii News Now Tr. 3:7-11[Doc 55-16 at 3].

Under these circumstances, the subpoenas to the Claimants and other

witnesses are appropriate:

**<u>Claimants</u>**
<u>Request #1:  Documents (including any e-mails, communications, etc.)
relating to hours or overtime worked for Kazu</u>
This information is appropriate as it relates directly to the Claimants'
overtime allegations.  In fact, in a November 29, 2016 e-mail, DOL's
counsel stated that she could obtain such information (to the extent
Claimants kept a record) and provide it to Defendants.  [Doc 55-24 at 3.]

Such documents could also relate to credibility.  For instance, Tadio sent a
text message in which he furtively sought a $25,000 payout for himself in
exchange for getting his witnesses to drop their allegations "100%
guarantee."  Jan. 2016 Text Message from Tadio [Doc 55-9].  Tadio also
made phone calls soliciting false statements from other Claimants (*see* Mot.
to Compel at 7 [Doc 55-1 at 12]) and could have sent text messages to the
same effect.

Request #2:  Communications with the DOL
This information is appropriate as it goes directly to the Claimants'
allegations about overtime.  Furthermore, any informants' privilege has been
waived or overcome.

It is fundamentally fair for Defendants to know which Claimant made which
allegations to the DOL, and to know this before their depositions.
Defendants should be able to depose a Claimant about his prior statements
about overtime and to test credibility (for instance, is the Claimant now
deviating from his prior statement?).  This is practically impossible if
Defendants are not even allowed to confirm whether the Claimant gave a
prior statement about overtime, much less learn the details thereof.

Request #3:  For the "Subject Period" (*narrowly defined as each Claimant's
period of alleged overtime*) –
(A) W-2s and 1099s,
(B) documents referring to hours worked for Kazu,
(C) documents referring to non-Kazu employment,
(D) financial records showing purchases or withdrawals between 7:00 a.m.
and 6:00 p.m. (and account numbers),
(E) phone records showing dates and times of calls and texts (and duration
of calls) between 7:00 a.m. and 6:00 p.m., and carrier account numbers,
(F) documents showing travel,
(G) documents showing non-Kazu activity between 7:00 a.m. and 6:00 p.m.,
and
(H) documents showing non-Kazu appointments or meetings between 7:00
a.m. and 6:00 p.m.
This information is clearly relevant, as it goes directly to proving that
Claimants were not working the hours that the DOL claims.

The DOL has already conceded that categories (A), (B), (C), and (H) are
appropriate, as DOL's counsel has already offered to obtain those documents
and provide them to Defendants.  *See* 11/29/16 from DOL's counsel [Doc
55-24 at 3].

As to the remaining categories, the request is not "fishing," as there already
exists substantial evidence that Claimants did not work any overtime.  As
detailed in the Motion to Compel, seven of the Claimants (approximately
40% of the total) have already submitted Declarations that they did not work
overtime, and that there were many instances when they and the other

15

Claimants missed work for various reasons such as rainouts, golfing, fishing, personal appointments, other jobs, sickness, *etc. See* Mot. to Compel [Doc 55-1 at 9-10].

The probative value of financial records is further evidenced by Claimant Frank Aguinaldo's bank records which show at least 25 weeks when he did not work the hours that the DOL claims he did.[5]

Regarding Richard Napierala:  The need for his financial and other records is compounded by the fact that the DOL is now seeking $350,000+ damages on his behalf <u>alone</u> (after the DOL had lulled Defendants by stating that Napierala was found to be exempt).  Moreover, Napierala was particularly guilty of missing a lot of work.  *See* Frank Aguinaldo Decl. (Aguinaldo took time off with Napierala and other employees to golf, fish, have social gatherings, and drive into Honolulu for lunch) [Doc 55-2 at 4]; James Dela Cuesta Decl. (Napierala often came late, and "there were many times when [he] missed whole days of work or was gone in the middle of the day for longer than an hour") [Doc 55-4 at 2]; Jaime Magallanes Decl. ("Napierala and Cummings frequently took long lunches, two hours or longer, and sometimes did not return to work after lunch.  There were also repeated times when Napierala was entirely gone from work, sometimes he said he was going fishing") [Doc 55-10 at 2][6].

---

[5]     The DOL tries to minimize this by saying that there were "only" 27 weeks. However, this accounts for 25% of the total period of alleged overtime, equating to approximately $90,000 in damages.  Moreover, these represent only the weeks when his financial records, <u>on their face</u>, <u>indisputably</u> show he could not have been working for Kazu – *e.g.,* when he was off-island, golfing, or making a transaction in Honolulu far away from the Makaha jobsite.

The DOL also argues that the purchases could have been made by someone else, yet Aguinaldo expressly stated these were purchases that he personally made [Doc 55-2 at 4-6] including on weekday business hours.  Kazu employees were overpaid (*e.g.,* paid for business hours they did not actually work) and never underpaid.

[6]     The subpoena to Napierala also has requests about his fixed compensation and his supervisory duties, all of which relates to his exempt status.  This information is clearly relevant and not invasive.

**Other witnesses**

The subpoenas to other witnesses generally consist of three requests: (1) documents relating to Kazu employees' hours worked for the period of alleged overtime; (2) documents relating to whether the Kazu employees worked weekends or overtime; and (3) communications with the DOL concerning Kazu.

These documents are all relevant as they relate directly to the DOL's and Claimants' overtime allegations. There is not even any arguable privacy interest. And any informant's privilege has been waived or overcome.[7]

**Second**, the subpoenas are narrowly tailored. For instance, as to the Claimants, each subpoena is narrowly customized to the <u>dates</u> that he allegedly worked overtime. Furthermore, the requests are limited to the <u>hours</u> of 7:00 a.m. to 6:00 p.m. – *i.e.,* the timeframe when the Claimant was allegedly working 10 hours and entitled to payment. Therefore, based upon the DOL's own premise that the Claimants were constantly working (and Tadio's claim that they worked sun-up to sun-down), the subpoenas should be harmless: A Claimant should not have had any personal pursuits during those hours, should not have records of such pursuits, and should not have a privacy interest in such pursuits.

Put another way, the subpoenas conform directly to the DOL's own allegations. If there is any overreach, it is an overreach by the DOL in brazenly

---

[7]     The subpoenas to T.J. Mahoney and Melanie Abad are even narrower, seeking only documents relating to Claimant Jay Padayao's hours at or away from his halfway house, as well as his appointments and schedule, during the specific periods that he was supposedly working overtime at Kazu.

asserting that each Claimant continuously worked 60 or 70 hours every week for months and months (if not years).

**Third**, the Claimants are not innocent disinterested parties.  They are seeking a windfall from their false statements and are the beneficiaries of the DOL's litigation.  Indeed, the DOL has repeatedly claimed a common interest/attorney-client relationship with such individuals.  *See*, *e.g.*, DOL's Privilege Log [Doc 55-23].

**Fourth**, the DOL's reference to "five rounds" of subpoenas is misleading. Subpoenas have been served over a period of time, but to different recipients. Every witness who has been served has been served with only one subpoena (other than Kevin MacGregor and Daniel Kawaahau who were each served with an initial subpoena in April 2016 that was then promptly withdrawn, and then served later with a narrower subpoena).

Accordingly, the subpoenas are not harassing or retaliatory.

### E.   The DOL's Additional Arguments Are Unavailing

The DOL argues that the subpoenas failed to allow a reasonable time.  The DOL lacks standing to make this argument on behalf of the witnesses.  In addition, the DOL submits no specific evidence as to the time allowed or why such time was unreasonable.  Alternatively, in the interest of efficiency, if the Court were to find

that the time allowed was unreasonable, it could still find that the subpoena was substantively appropriate to avoid future motions.

The DOL argues that compliance would be burdensome.  Again, the DOL lacks standing to make this argument.  The DOL also submits no specific evidence as to such burden; to the contrary, and by the DOL's own account, since the Claimants were supposedly working during the periods in question, the volume of responsive documents should be minimal.  In any event, it is not burdensome for an individual to pull up financial or other records on-line, or to make a short written request to an institution, particularly when the individual is seeking a windfall through this litigation.

The DOL argues that the subpoenas on Kramer and MacGregor require production more than 100 miles away.  In fact, those subpoenas merely ask the witnesses to mail documents (which they can do from their own home), not personally deliver them to a location more than 100 miles away.

## IV.   ARGUMENT:  DOL'S REQUEST FOR PROTECTIVE ORDER

### A.   The DOL's Motion Is Untimely as to Subpoenas Issued in October and November 2016

Under Rule 26(c), a motion for protective order must be filed before the requested discovery is due.  *See In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 669 F.2d 620, 622 n. 2 (10th Cir. 1982) ("a motion under Fed. R. Civ. P. 26(c) for protection from a subpoena is timely filed if

made before the date set for production"); *Dorato v. Smith*, 163 F. Supp. 3d, 837, 870 (D.N.M. 2015) (*citing In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 669 F.2d at 622 n. 2); *United States v. Int'l Bus. Machs. Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976) (denying motion for protective order filed two months after subpoena return date and holding that "such motions under Rule 26(c) must be served before the date set for production").

In this instance, the DOL filed its request for protective order on December 17, 2016 (as part of its Second Motion to Quash). However, the following witnesses were served with subpoenas with return dates <u>prior to</u> December 17, 2016: Dennis Tadio (9/14/16 return date) [Doc 47-2], Kevin MacGregor (11/17/16 return date) [Doc 47-4], Stanley Napierala (11/17/16 return date) [Doc 47-3], Arnold Leedy (11/22/16 return date) [Doc 47-3], Mark Kramer (11/22/16 return date) [Doc 47-4], Makaha Oceanview Estates (11/22/16 return date) [Doc 47-4], Nakamura Electric (11/22/16 return date) [Doc 47-3], and Suzanne Yen (11/22/16 return date) [Doc 47-3].

Accordingly, the DOL's request for a protective order as to such entities is untimely.

## B.   <u>The DOL Lacks Standing</u>

Courts have held that a party lacks standing to seek a protective order to protect non-parties. *See, e.g.*, *Malmberg v. United States*, No. 5:06-CV-1042

(FJS/GHL), 2010 U.S. Dist. LEXIS 28784, *9-10 (N.D.N.Y. Mar. 24, 2010)

("Plaintiff lacks standing to move for a protective order.  By the very language of

Rule 26(c)(1), only 'a party or any person from whom the discovery is sought may

move for a protective order . . .'  Plaintiff is neither the person nor the party from

whom Defendant seeks this discovery") (citation omitted); *Frias Holding Co. v.*

*Greenberg Traurig, LLP*, No. 2:11-cv-160-GMN-VCF, 2015 U.S. Dist. LEXIS

101020, *12-13 (D. Nev. Aug. 3, 2015) ("[party] Greenberg Traurig lacks standing

to request relief on behalf of these Non-Parties.  Rule 26(c) provides that '[a] party

or any person from whom discovery is sought may move for a protective order.'

It does not authorize the relief Greenberg Traurig requests:  vicarious standing to

request a protective order on a Non-Party's behalf").

Accordingly, the DOL lacks standing to seek a protective order.

## C.    <u>The Request Should Be Denied on the Merits</u>

In the alternative, a protective order is unwarranted based on the merits.

Rule 26(c) states in part that "[t]he court may, for good cause, issue an order

to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense[.]"  As stated by the United States Supreme Court:  "To

establish 'good cause' for a protective order under Federal Rule of Civil Procedure

26(c), the courts have insisted on a particular and specific demonstration of fact, as

distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981).

The Ninth Circuit has repeatedly emphasized that "good cause" puts a burden on the movant to show particular harm as to the specific document(s) at issue.  For instance:

- "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." *Foltz v. State Farm. Mut. Auto. Ins. Co.* 331 F.3d 1122, 1130-31 (9th Cir. 2003); *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

- The moving party must make "particularized showing of good cause with respect to any individual document." *Phillips*, 307 F.3d at 1211 (citation omitted).

- A party requesting a protective order must provide "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm." *Foltz*, 331 F.3d at 1130-31 (citation omitted).

- "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Foltz*, 331 F.3d at 1130; *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

It has further been held that, in order to establish good cause, "the disclosure of the documents would cause a clearly defined and very serious injury"; "the harm must be significant, not a mere trifle"; "mere embarrassment by the release of information is insufficient to constitute serious harm"; "an application for a protective order whose chief concern is embarrassment must demonstrate that the

embarrassment will be particularly serious"; and "a claim that public disclosure of information will be harmful to a defendant's reputation is not good cause for a protective order." *Welsh v. City & County of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995) (citations omitted).

Furthermore, any burden of production must be weighed against "the value of the materials sought" and "society's interests in furthering the truth-seeking function." *Morrison v. Quest Diagnostics Inc.*, No. 2:14-cv-01207-RFB-PAL, 2016 U.S. Dist. LEXIS 10167, *11 (D. Nev. Jan. 27, 2016)

In this instance, the DOL has failed to provide any specific evidence that the subpoenas would cause cognizable annoyance, embarrassment, oppression, or undue burden. Although the DOL refers to the Claimants' privacy interests, this is only a generalized and conclusory assertion. Although the DOL cites to the informant's privilege, the informant's privilege has been waived or overcome.

The DOL also asserts that the subpoenas are intended to discourage workers from petitioning for redress. To the contrary, the subpoenas are intended to allow Defendants to defend themselves from the DOL's (and Claimants') sweeping and false allegations, and are narrowly tailored to that purpose. In addition, the DOL has submitted no specific evidence for this argument of "chilling." *See Welsh*, 887 F. Supp. at 1300 (rejecting as conclusory the government's argument that

23

"disclosure of [its investigative] material would have a chilling effect on disclosures by future witnesses").

Alternatively, even if the informant's privilege were still intact (which it should not be), it would at most justify a limited order protecting only (a) informants' identities, and (b) for a finite period until such privilege is overcome through disclosure, balancing test, *etc.*  Such limited protective order should not restrict disclosure of any of the other subpoenaed items (*e.g.,* financial records, records of travel and other income, etc.) that do not disclose informant status.

### D. <u>The Request Should Be Denied Because Prospective Protective Orders Are Inappropriate</u>

Insofar as the DOL is seeking a protective order that would prospectively limit Defendants' discovery rights going forward, such a protective order is not authorized under Rule 26(c).  *See Frias Holding Co.*, 2015 U.S. Dist. LEXIS 101020 at *13 ("Greenberg Traurig's requests for relief are general and prospective. . . .  If a specific discovery request violates Rule 26(b)(1)'s scope, the Rule 26(c)(1) permits a party to move for a protective order 'forbidding the disclosure or discovery' that is sought by a specific request.  However, the Rules do not permit a party to seek a general order that prospectively limits the scope of discovery").

24

Put another way, such a prospective order would be tantamount to a blanket protective order.  Yet blanket protective orders – which are typically generated by the parties' stipulation – are "by nature overinclusive" and not based on the "good cause" standard.  *Beckman Indus.*, 966 F.2d at 476.

In this instance, the DOL is apparently seeking a blanket protective order that would prejudice Defendants in all future discovery and without regard to the particular circumstances.  Such an order would unfairly eliminate application of any balancing tests to determine, for instance, when a privilege is overcome or when discovery is appropriate under particular circumstances.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that the Motions be denied and that the <u>subpoenas be deemed enforceable</u>.

Alternatively, to the extent that the Motions are granted in any part, the relief should be limited to <u>only</u> those specific requests that are quashed or modified, not to the entire subpoenas, with <u>the remaining requests being deemed enforceable</u>.

DATED:     Honolulu, Hawaii, January 6, 2017.

     _/s/  Christopher S. Yeh_
CHRISTOPHER S. YEH
DARIN R. LEONG
KRISTI K. O'HERON

Attorneys for Defendants
KAZU CONSTRUCTION LLC and
VERNON LOWRY