HON. KEVIN S. C. CHANG

JANET M. HEROLD, Regional Solicitor
BRUCE L. BROWN, Associate Regional Solicitor
ABIGAIL G. DAQUIZ, Senior Trial Attorney
WA Bar No. 35521
M. CRISTOPHER SANTOS, Trial Attorney
CA Bar No. 306346
OFFICE OF THE SOLICITOR
U.S. DEPARTMENT OF LABOR
300 Fifth Avenue, Suite 1120
Seattle, WA 98104
Telephone: (206) 757-6753
Facsimile: (206) 757-6761
daquiz.abigail@dol.gov
santos.martin.c@dol.gov
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ,<br><br>       Plaintiff,<br>v.<br><br>KAZU CONSTRUCTION, LLC, a corporation; and VERNON LOWRY, an individual,<br><br>       Defendants. | Case No. 1:16-cv-00077-ACK-KSC<br><br>SECRETARY OF LABOR'S REPLY IN SUPPORT OF THE MOTIONS TO QUASH AND FOR A PROTECTIVE ORDER (Dkt. 46 and 62)<br><br>Hearing Date: Jan. 27, 2017<br>Time: 9:30 AM<br><br>Trial Date: Oct. 18, 2017 |

1

**INTRODUCTION**..................................................................................................**6**

**ARGUMENT**........................................................................................................**6**

**I.   THE COURT SHOULD QUASH DEFENDANTS' OVERBROAD AND HARASSING SUBPOENAS**...................................................................**6**

   a.   The Secretary has standing to quash Defendants' subpoenas directed at nonparties who have or may petition the government. ......................................6

   b.   The Court should quash Defendants' overbroad and harassing subpoenas. .9

     i.   Defendants' need for the affected workers' communications with the DOL does not outweigh the government's interest in protecting the identity of informants and communications with them. .............................................10

     ii.   Defendants' subpoenas are overbroad, unduly burdensome, and unreasonable. ...............................................................................................11

**II.   A PROTECTIVE ORDER IS APPROPRIATE TO PROTECT THE SECRETARY'S AND NONPARTIES' INTERESTS** ...................................**14**

   a.   It is well-established that the Secretary, as a party to this litigation, has standing to move for a protective order............................................................14

   b.   The Secretary seeks a protective order to protect his and nonparties' interests against <u>future</u> oppressive and unduly burdensome discovery. ...........16

     **i.**   Part I of the Secretary's proposed protective order protects the identities of confidential informants. ............................................................................16

     **ii.**   Part II of the Secretary's proposed protective order protects nonparties from retaliation and overbroad discovery requests. ......................................19

   c.   The balance of public and private interests weighs heavily in favor of granting a protective order..............................................................................21

**CONCLUSION**...................................................................................................**22**

## CASES

Anderson v. Mt. Clemens Pottery Co.,

    328 U.S. 680 (1946)...................................................................................9

Bill Johnson's Rests., Inc. v. NLRB,

    461 U.S. 731 (1983)...................................................................................7

Brock v. On Shore Quality Control Specialists,

    811 F.2d 282 (5th Cir. 1987) ..................................................................10

Crispin v. Christian Audigier, Inc.,

    717 F. Supp. 2d 965 (S.D. Cal. 2010)...................................................8,9

Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.,

    649 F.2d 646 (9th Cir. 1980) ..............................................................9, 10

Donovan v. Forbes,

    614 F. Supp. 124 (D. Vt. 1985) .............................................................17

Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc.,

    365 U.S. 127 (1961)..................................................................................6

Frias Holding Co. v. Greenberg Traurig, LLP,

No. 2:11-cv-160, 2015 WL 4622591 (D. Nev. Aug. 3, 2015) ……………….......15

Harris v. Acme Universal, Inc.,

    No. 12-00008, 2014 WL 3907107  (D. Guam Aug. 11, 2014)...................... 16, 18

In re: MGM Mirage Secs. Litig.,

    No. 2:09-cv-1558, 2014 WL 6675732 (D. Nev. Nov. 25, 2014) ...........................8

Malmberg v. United States,

    No. 5:06-CV-1042, 2010 WL 1186573 (N.D.N.Y. Mar. 24, 2010)....................15

Morrison v. Quest Diagnostics Inc.,

    No. 2:14-cv-01207, 2016 WL 355120 (D. Nev. Jan. 27, 2016)................... 19, 20

No. 6:14-cv-956,

    2015 WL 4911086 (M.D. Fla. Aug. 17, 2015) ....................................................11

Passer v. Am. Chem. Soc.,

    935 F.2d 322 (D.C. Cir. 1991) ..............................................................................20

Rhodes v. Litig. Trust of the Rhodes Cos., LLC,

    475 B.R. 733 (D. Nev. 2012) ...........................................................................7, 8

Rovario v. United States,

    353 U.S. 53 (1957) ....................................................................................... 17, 22

Shukh v. Seagate Tech., LLC,

    295 F.R.D. 228 (D. Minn. 2013) ........................................................................15

Solis v. Best Miracle Corp.,

    No. SACV 08-0998-CJC (MLGx), 2009 WL 3709498 (C.D. Cal. Nov. 3, 2009)

    ................................................................................................................ 16, 19

Sosa v. DirectTV, Inc.,

    437 F.3d 923 (9th Cir. 2006) ..............................................................................6,7

Theofel v. Farey-Jones,

    359 F.3d 1066 (9th Cir. 2003) .........................................................................6, 13

Underwood v. Riverview of Ann Arbor,

    No. 08-CV-11024-DT, 2008 WL 5235992 (E.D. Mich. Dec. 15, 2008) .............15

United Mine Workers v. Pennington,

    381 U.S. 657 (1965).............................................................................................6

United States v. Gil,

    58 F.3d 1414 (9th Cir. 1995) ..............................................................................17

Welsh v. City & County of San Francisco,

    887 F. Supp. 1293 (N.D. Cal. 1995) ………………………………….....18

## RULES

Fed. R. Civ. P. 26(c)............................................................................ passim

Fed. R. Civ. P. 45(d) ..................................................................................7

Rule 26(b)(2)............................................................................................19

Rule 45 ..................................................................................................6, 7

## OTHER AUTHORITIES

Fed. Prac. & Proc. § 2035 (3d ed. 2016) ..................................................14

Fed. Prac. & Proc. § 2044.1 (3d ed. 2016) ..............................................21

Fed. Prac. & Proc. § 2459 (3d ed. 2016) ....................................................8

**INTRODUCTION**

The Court should quash Defendants' subpoenas and enter an appropriate protective order to facilitate a fair and effective discovery process. The subpoenas are harassing and intimidating; and they are unduly burdensome and unreasonable in their breadth and demand for documents protected by important privileges. The Court recently continued the trial date, so Defendants have sufficient time to gather relevant and probative evidence through other legitimate means.

**ARGUMENT**

**I.   THE COURT SHOULD QUASH DEFENDANTS' OVERBROAD AND HARASSING SUBPOENAS**

**a.   The Secretary has standing to quash Defendants' subpoenas directed at nonparties who have or may petition the government.**

The Secretary has standing to quash Defendants' overbroad subpoenas to prevent harassment of its witnesses and interference with his investigation and litigation.[1] If a statute is ambiguous, courts must construe it "so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." Sosa v. DirectTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006). "[T]he Noerr-Pennington[2] doctrine stands for a generic

_____

[1] Contrary to Defendants' argument in Part III.C.2 of their Opposition, Dkt. 70, they have a "grave responsibility to ensure [Rule 45] is not abused . . . [and must] exercise independent judgment about the subpoena's reasonableness." Theofel v. Farey-Jones, 359 F.3d 1066, 1074-75 (9th Cir. 2003).

[2] The Noerr-Pennington doctrine arose from two cases, Eastern Railroad Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961) and United Mine Workers

rule of statutory construction, applicable to <u>any</u> statutory interpretation that <u>could</u> implicate the rights protected by the Petition Clause." <u>Sosa</u>, 437 F.3d at 931 (emphasis added). Workers exercise their constitutional right to petition their government for redress of their grievances when they initiate or participate in a government investigation. <u>Id.</u> (citing <u>Bill Johnson's Rests., Inc. v. NLRB</u>, 461 U.S. 731, 741-44 (1983)).

Rule 45 is ambiguous as to who has standing to quash a subpoena. <u>Rhodes v. Litig. Trust of the Rhodes Cos., LLC</u>, 475 B.R. 733, 736 (D. Nev. 2012). However, an interpretation that denies the Secretary standing will allow Defendants' overbroad subpoenas to stand, burdening the nonparties' Petition rights. On the other hand, granting the Secretary standing to "protect[] a person subject to a subpoena," (<u>see</u> Fed. R. Civ. P. 45(d)), is "a plausible construction of [Rule 45] . . . that avoids the burden [on the right to Petition]." <u>Sosa</u>, 437 F.3d at 932. Of note, Defendants make absolutely no mention of—let alone argue against—the application of the <u>Noerr-Pennington</u> rule in their Opposition Memorandum.

Defendants cite <u>Rhodes</u> in support of their standing argument, but the facts of that case are distinguishable. <u>Rhodes</u> involved a dispute between two private

---

v. Pennington, 381 U.S. 657 (1965). <u>Noerr</u> dealt with the Sherman Act and the Supreme Court's attempt to reconcile alleged antitrust activities with the right to petition the government under the First Amendment. 365 U.S. 127, 129. <u>Pennington</u> extended this antitrust immunity to others engaging in lobbying activities, regardless of any anticompetitive intent or purpose. 381 U.S. 657, 670.

parties over subpoenas issued to nonparties, including law firms, financial institutions, title companies, and other professionals. Rhodes, 475 B.R. at 736. Unlike here, the subpoenas in Rhodes did not burden the Petition rights of any of the parties or nonparties. Thus, the Rhodes court's statutory interpretation did not consider the Ninth Circuit mandate on the Noerr-Pennington rule. In any event, Rhodes actually represents the minority view when it comes to standing under Rule 45.

The Court should, at a minimum, quash Defendants' subpoena requests for information protected by the government's informant privilege and the communications protected by the common interest rule.[3] The Secretary has not waived these privileges. See Dkt. 69, at 14-19. The Secretary has a personal right and privilege in that information, because it is protected by the government's informant privilege. Contrary to Defendants' arguments, the "personal right or privilege" exception actually represents the majority view nationwide. See 9 A. Wright & Miller, Fed. Prac. & Proc. § 2459 (3d ed. 2016) (citing a multitude of cases supporting the exception); see also, e.g., In re: MGM Mirage Secs. Litig., No. 2:09-cv-1558, 2014 WL 6675732, at *9 (D. Nev. Nov. 25, 2014) (recognizing the exception); Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 973-74

---

[3] See generally, Dkt. 69, at 19-30, Sec'y Resp. to Mot. to Compel.

(S.D. Cal. 2010) (citing multiple cases in support of the exception from California and nationwide).

Ultimately, Defendants' extreme position that a party <u>never</u> has standing to quash a subpoena issued to a nonparty would lead to absurd and highly prejudicial results. For example, a court could deny a party's motion to compel responses to Rule 34 requests for sensitive documents, such as financial and phone records. But, under the general rule supported by Defendants, the party could simply turn around and issue <u>incontestable</u> subpoenas for the <u>same</u> documents directed to the other party's bank and phone companies. The Secretary has standing to move this Court to stop Defendants' overbroad discovery campaign once and for all.

> **b. The Court should quash Defendants' overbroad and harassing subpoenas.**

Defendants want workers and other potential witnesses to bear the weight of the discovery burden in this litigation. Knowing that their own records are inaccurate and incomplete, Defendants argue that this is the only way to dispute the Secretary's reasonable calculation of damages. <u>But see</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 688 (1946) ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records . . . ."). Defendants' employees and former employees should not be harassed with the type of overbroad discovery that Defendants seek. <u>See</u> <u>Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.</u>, 649 F.2d

646, 649 (9th Cir. 1980) ("[R]estriction[s] [on discovery] may be broader when a nonparty is the target of discovery . . . to protect third parties from harassment, inconvenience, or disclosure of confidential documents.") (internal quotations omitted).

>    i. *Defendants' need for the affected workers' communications with the DOL does not outweigh the government's interest in protecting the identity of informants and communications with them.*

The Secretary's interest in protecting the government's informant privilege outweighs any speculative "need" the Defendants claim to have for the identity of the informants. Defendants' broad claim that "it is fundamentally fair for Defendants to know which Claimant made which allegations" is unsupported by countless cases that interpret the well-established government's informant privilege. See Dkt. 62, at 11-13 (2nd Mot. To Quash) (citing, e.g., Brock v. On Shore Quality Control Specialists, 811 F.2d 282, 284 (5th Cir. 1987) (holding that informants' identities were "utterly irrelevant" to the issues to be tried by the court). According to Defendants, "[they] should be able to depose a Claimant about his prior statements about overtime and to test credibility (for instance, is the Claimant now deviating from his prior statement?)." Defs.' Opp'n, Dkt. 70, at 15. Their question says it all; Defendants speculate that workers (who may have exercised their rights to seek redress from their government) may have made a statement, and that worker may say something that contradicts that previous

10

statement. This speculation is insufficient to overcome the government's informant privilege and the common interest rule protecting communications with DOL. <u>See, generally,</u> Dkt. 69, at 19-24, 28-30. For these reasons, the Court should quash their requests that reveal the identities of confidential informants and divulge communications with DOL.

    ii. *Defendants' subpoenas are overbroad, unduly burdensome, and unreasonable.*

Defendants' requests are not proportional and not narrowly tailored. Defendants' requests are essentially identical to those that courts have rejected as overbroad, with one exception; they want even more. For instance, in <u>Artt v. Orange Lake Country Club Realty, Inc.</u>, the court found Defendants' requests to be on their face "overbroad, unduly burdensome, and unreasonable" in asking for "every online profile, post, message, tweet, reply, retweet, status update, wall comment, group joined, activity stream, blog entry, photograph, video, online communication . . . ." No. 6:14-cv-956, 2015 WL 4911086, at *2 (M.D. Fla. Aug. 17, 2015). Here, Defendants ask for the same documents, plus phone, financial, and email records, receipts, and calendars. Arguing that their requests are reasonable, simply because they are "narrowly tailored" to the hours that the affected worker allegedly worked is unavailing. See <u>Artt</u>, 2015 WL 4911086, at *2 (requests for documents from "any time between 7:00 am and 7:00 pm on any date between June 19, 2011 and [the worker's] last day of employment" were

overbroad, unduly burdensome, and unreasonable).[4] Just as the court in <u>Artt</u>

rejected that argument, so should it be rejected here.

Defendants minimize the undue burden that affected nonparties will endure

if forced to comply with their overbroad subpoenas. Even assuming that nonparties

can easily "pull up financial or other records on-line, or to make a short written

request to an institution," nonparties—mostly legally-unsophisticated workers—

would also have to review hundreds or thousands of individual financial, phone,

social media, and other record entries to figure out which ones are responsive to

Defendants' subpoenas.

In the context of financial statements, for example, a nonparty will also have

to pay special attention to when a transaction was charged to the account as

opposed to when the purchase was made. Further complicating the analysis, not

every transaction shows a time stamp. <u>See</u> Dkt. 55-3, Aguinaldo Exs. Faced with

such burdensome requests, there is a real risk that some nonparties will decide to

produce unredacted copies of all transaction history, including entries outside of

---

[4] Defendants cite <u>Mount Hope Church v.</u> Bash Black for their proposition that Rule 45's undue burden standard only consider logistical burdens, not harassment. Dkt. 70, at 12. But the court's actual holding was that the undue burden determination considers the "subpoena process and not [] the adjudication of related follow-on issues," such as whether requested information is privileged. 705 F.3d 418, 428 (9th Cir. 2012). Defendants' broad reading ignores the court's recognition that in assessing undue burden in the "subpoena process," courts should indeed consider whether the discovery in question is inconsistent with existing law, in bad faith, and unreasonable (i.e., whether it is harassing). <u>Id</u>. at 425-26.

the scope of Defendants' subpoenas. See Theofel v. Farey-Jones, 359 F.3d 1066, 1074-75 (9th Cir. 2003) ("[M]any may be cowed into compliance with even overbroad subpoenas, especially if they are not represented by counsel . . . .").

Defendants offered the financial records of one of their employees, Mr. Frank Aguinaldo, as evidence that their requests will yield probative documents. Defendants overblow the importance of this purported evidence in multiple ways.

First, Defendants have continuously misled the Court as to the magnitude of their findings. Defendants' evidence speaks for itself: In approximately two-years-worth of bank statements—representing hundreds if not thousands of individual transactions—Defendants found only 27 instances in which purchases were made from Mr. Aguinaldo's bank account during working hours. Yet, Defendants have continuously asserted in filings with the Court that their evidence represents 25 entire weeks in which Mr. Aguinaldo did not work.[5] Further, even assuming arguendo that Mr. Aguinaldo did not work on those days, our reasonable estimates still leave five or six 10-hour workdays for those weeks, where 10 or 20 of those hours were wholly uncompensated.

---

[5] See Defs.' Mot. To Modify Scheduling Order, Dkt. 49-1 at 10 ("Aguinaldo's financial records cover[] approximately 25 weeks when he did not work . . . ."); Defs.' Mot. To Compel, Dkt. 55-1 at 31 ("Aguinaldo's financial records show at least 25 weeks when he did not work . . . and reduces the DOL's backwage calculation for Aguinaldo by at least 25% ($90,000)."); Dkt. 70 at 16, n. 5 (same).

Second, Defendants also inflate the probative value of these records. As fully explained in the Secretary's Response to Defendants' Motion to Compel, Dkt. 69, at 32-33, the evidence presented by Defendants creates more doubt, because the records cannot conclusively prove who actually made that transaction (due to joint accounts for example).[6] Defendants' other requests (i.e., for social media records, receipts, and photographs) will similarly yield evidence that is not concrete and even potentially misleading. Defendants have not shown how their intrusive requests will yield probative evidence. The Court should quash these requests as unduly burdensome, overbroad, and overly intrusive.

## II.    A PROTECTIVE ORDER IS APPROPRIATE TO PROTECT THE SECRETARY'S AND NONPARTIES' INTERESTS

### a.    It is well-established that the Secretary, as a party to this litigation, has standing to move for a protective order.

Defendants' position that the Secretary lacks standing under Rule 26(c) is incorrect. It is well-established that under Rule 26(c), a party <u>or</u> "any person from whom discovery is sought" may move for a protective order. <u>See</u> 8 A. Wright & Miller, Fed. Prac. & Proc. § 2035 (3d ed. 2016). The Secretary "is entitled, <u>as a</u>

---

[6] Defendants argue that Mr. Aguinaldo himself declared that he made those purchases. Defs.' Opp'n, Dkt. 70 at 16 & n.5. However, the credibility of all of Defendants' witnesses is compromised. Courts have recognized the strong risk of coercion in evaluating statements by current employees because they are financially-beholden to their employer. Moreover, it is unlikely that any individual, including Mr. Aguinaldo, would be able to conclusively recall exactly who made what past transaction, going back as far as 2012.

party to this litigation, to limit irrelevant and cumulative discovery" through a protective order. Shukh v. Seagate Tech., LLC, 295 F.R.D. 228, 236-37 (D. Minn. 2013) (emphasis added); see also, e.g., Underwood v. Riverview of Ann Arbor, No. 08-CV-11024-DT, 2008 WL 5235992, at *2 (E.D. Mich. Dec. 15, 2008) ("The explicit mention of "a party" in the rule has been interpreted to provide standing for a party to contest discovery sought from third-parties") (internal citations omitted).

In support of their argument, Defendants cite two cases where the courts incorrectly applied case law on Rule 45 standing to their determinations of whether the parties had standing under Rule 26(c). In concluding that the plaintiff lacked standing to move for a protective order, the Malmberg court relied on two cases in which the parties were moving to quash not for a protective order. See Malmberg v. United States, No. 5:06-CV-1042, 2010 WL 1186573, at *1 (N.D.N.Y. Mar. 24, 2010). And in Frias Holding Co. v. Greenberg Traurig, LLP, the court similarly relied on authority discussing standing under Rule 45 not Rule 26. No. 2:11-cv-160, 2015 WL 4622591, at *5 (D. Nev. Aug. 3, 2015) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party . . . ."). The Court should find that the Secretary has standing to move for a protective order.

**b.  The Secretary seeks a protective order to protect his and nonparties' interests against <u>future</u> oppressive and unduly burdensome discovery.**

Defendants' argument that the Secretary's request for a protective order as to the subpoenas it has served with return dates that have passed is untimely misses the point. The Secretary seeks an order to guard against <u>future</u> attempts by Defendants to harass and oppress workers or potential witnesses to his enforcement action. <u>See</u> Dkt. 70, Part IV.A. Courts frequently grant such protective orders, as Rule 26(c) explicitly permits "forbidding inquiry into certain manners, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c); <u>see, e.g.</u>, <u>Solis v. Best Miracle Corp</u>., No. SACV 08-0998-CJC (MLGx), 2009 WL 3709498 at *2 (C.D. Cal. Nov. 3, 2009) (protective order issued preventing inquiry into informer status of any employee during depositions); and <u>Harris v. Acme Universal, Inc.</u>, No. 12-00008, 2014 WL 3907107, *8-9  (D. Guam Aug. 11, 2014) (protective order issued to prohibit Defendants from inquiring into matters protected by the government informant privilege). Accordingly, the Secretary proposes the attached protective order to facilitate a fair and effective discovery process.

**i.  *Part I of the Secretary's proposed protective order protects the identities of confidential informants.***

The Secretary requests that Defendants be prohibited from seeking information and documents protected by the government's informant privilege. <u>See</u>

Santos Decl. Ex. A, ¶ I. Contrary to Defendants' assertion, the harm associated with disclosure of the identities of confidential informants is widely recognized. See, e.g., United States v. Gil, 58 F.3d 1414, 1421 (9th Cir. 1995) ("[H]arm of disclosure could be great."); Donovan v. Forbes, 614 F. Supp. 124, 127 (D. Vt. 1985). It is no secret, for example, that informants often suffer from physical and financial retaliation. In employment cases, current employees may face termination and other adverse work consequences. Even former employees can suffer from retaliation in the form of blacklisting, especially in small industries such as Waianae's small construction community. All of these harms derivatively impact the government's ability to conduct its ongoing investigation and litigation. See Rovario v. United States, 353 U.S. 53, 59 (1957) (holding that the informant's privilege encourages the public to participate in the prosecution of crimes).

Further, the Secretary has previously offered specific examples of facts that warrant the issuance of a protective order on the government's informant privilege. As discussed in the Secretary's Opposition to Defendants' Motion to Amend Scheduling Order, Dkt. 54 at 19, the Secretary has already lost the cooperation of at least one witness due to Defendants' retaliatory tactics.[7] See Harris v. Acme

---

[7] Mr. Hendricksen originally cooperated with the Secretary's investigation and even gave a statement confirming Defendants' violations. Santos Decl., Ex. B (Caparas Decl.). Mysteriously, after a subsequent interaction with Defendants, Mr. Hendricksen denied ever speaking to the Secretary's investigator, and signed a

Universal, Inc., No. 12-00008, 2014 WL 3907107, at *7 (D. Guam Aug. 11, 2014) (granting the Secretary's motion for protective order and injunction against retaliatory discovery tactics after Defendants' "coercive and threatening tactics . . . caused the [Secretary] to lose contact with at least one former employee, thus limiting the Plaintiff's ability to effectively prosecute this case.").

Defendants cite Welsh v. City & County of San Francisco to argue that there is no evidence that disclosing the identities of informants would chill future cooperation with law enforcement. But Welsh is not a case about confidential government informants; the case deals with police officer statements in internal investigations and citizens who complain about police misconduct. 887 F. Supp. 1293, 1301 (N.D. Cal. 1995). In fact, the Welsh court itself distinguished its facts from those involving confidential informants, calling the reasons to withhold the identities of confidential informants "obvious:"

> A citizen who complains about police misconduct simply is not in the same position as a confidential informant or a citizen who offers information that is potentially damaging to another citizen. The obvious reasons people in the latter categories have for wanting to protect their anonymity simply have no bearing on the behavior of citizens who file complaints against the police themselves.

Id. (internal citation omitted) (emphasis added).

---

declaration in support of Defendants' Motion for Summary Judgment. Santos Decl., ¶ 4; Dkt. 44-4, Declaration of Kahikapu Hendrickson.

Finally, Defendants have not cited a single case that has found evidentiary value in the identities of confidential informants; instead, courts support the opposite conclusion that such information is irrelevant. See Best Miracle Corp., 2009 WL 3709498, at *2. Disclosing the identities of confidential informants does nothing to advance "society's interests in furthering the truth-seeking function." See Morrison v. Quest Diagnostics Inc., No. 2:14-cv-01207, 2016 WL 355120, at *4 (D. Nev. Jan. 27, 2016). Thus, the Secretary has shown good cause for a protective order stopping Defendants' continued efforts to learn the identities of his confidential informants.

ii. *Part II of the Secretary's proposed protective order protects nonparties from retaliation and overbroad discovery requests.*

The Secretary requests that Defendants be prohibited from retaliating against current and former employees by:

- Contacting the other employers of current and former employees; or
- Issuing overbroad and harassing subpoenas, including requests for financial, phone, social media, email, and calendar records, receipts showing personal travel, and photographs. See Santos Decl., Ex. A, ¶ II.

Morrison, cited by Defendants, notes that "courts have a duty to pare down overbroad discovery requests under Rule 26(b)(2)." 2016 WL 355120, at *4 (internal citation omitted). Rule 26(c) provides a vehicle for the Court to fulfill this mandate. Id. at *5.

Contacting third party employers of current and former employees can have the harmful effect of blacklisting. See, e.g., Passer v. Am. Chem. Soc., 935 F.2d 322, 331 (D.C. Cir. 1991) (recognizing various forms of blacklisting that employers can inflict on current and former employees). The risk of blacklisting is greater here, because Defendants continue to assert that nonparty employees are "claimants" who are seeking a "windfall." Affected workers will suffer great harm if Defendants are able to contact their other employers and accuse them of these falsities.

With respect to Defendants' overbroad requests for sensitive personal information and documents, such requests will only annoy, embarrass, oppress, and unduly burden nonparties. Defendants are asking to see thousands of individual financial transactions, photos, emails, and phone records; it is not inconceivable that some of those documents may contain embarrassing content that nonparties meant to keep private. Further, the information and documents that Defendants seek have little to no evidentiary value as previously discussed.  Thus, the Court should issue a protective order to prevent Defendants from continuing to issue such annoying, embarrassing, oppressive, and unduly burdensome discovery requests that only create more doubt and unanswered questions.

### c. The balance of public and private interests weighs heavily in favor of granting a protective order.

The Secretary's proposed protective order seeks to encourage workers to come forward and report potential violations of law. These protections are important to the Secretary and the public—to promote participation and effective enforcement of the FLSA.

The proposed order will not prejudice the interests of Defendants. Defendants argue that a protective order would eliminate their right to seek information about the government's informants entirely. If new circumstances arise, they can move the Court to modify its order and allow future discovery. See 8 A. Wright & Miller, Fed. Prac. & Proc. § 2044.1 (3d ed. 2016) (calling protective orders "flexible devices" that district courts have substantial latitude to modify). Further, Defendants want the Court to err on the side of allowing them to conduct discovery without restrictions. But they have already shown that they cannot be trusted to obey the limitations on overbroad discovery and discovery that seeks privileged information.

On the other hand, the interests of the Secretary, nonparties, and the public will be significantly prejudiced without a protective order. First, Defendants will continue to ask nonparties to disclose information protected by the government's informant privilege. If an unsuspecting employee accidentally discloses that he has spoken to the Secretary, Defendants will surely waste no time to argue that the

21

informant's privilege has been waived as to that informant. Second, without a protective order, Defendants will continue to harass, oppress, and unduly burden nonparties with irrelevant requests for sensitive documents. Both of these harms will interfere with the Secretary's investigation and litigation and prejudice the "public interest in effective law enforcement." Rovario, 353 U.S. at 59.

Accordingly, the balance of public and private interests weighs heavily in favor of approving the Secretary's proposed protective order.

**CONCLUSION**

For the foregoing reasons, the Court should grant the Secretary's Motions to Quash and enter the appropriate protective order.

Respectfully submitted this 13th day of January, 2017.

M. PATRICIA SMITH
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

BRUCE L. BROWN
Associate Regional Solicitor

By :_____/s/ Abigail G. Daquiz_____
ABIGAIL G. DAQUIZ
Senior Trial Attorney

M. CRISTOPHER SANTOS
Trial Attorney

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff