IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, THOMAS PEREZ, | ) ) ) ) | CIVIL NO. 16-00077 ACK-KSC |
| Plaintiff, | ) ) ) | ORDER GRANTING IN PART AND DENYING IN PART: (1) PLAINTIFF'S MOTION TO QUASH, OR IN THE |
| vs. | ) ) | ALTERNATIVE, TO MODIFY SUBPOENA; (2) PLAINTIFF'S |
| KAZU CONSTRUCTION, LLC, a corporation; and VERNON LOWRY, an individual, | ) ) ) ) | SECOND MOTION TO QUASH SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER; AND (3) DEFENDANTS' |
| Defendants. | ) ) | MOTION TO COMPEL DISCOVERY |

ORDER GRANTING IN PART AND DENYING IN PART:
(1) PLAINTIFF'S MOTION TO QUASH, OR IN THE ALTERNATIVE,
TO MODIFY SUBPOENA; (2) PLAINTIFF'S SECOND MOTION TO
QUASH SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER;
AND (3) DEFENDANTS' MOTION TO COMPEL DISCOVERY

Before the Court are: (1) Plaintiff Secretary

of Labor, U.S. Department of Labor, Thomas Perez's

("Plaintiff") Motion to Quash, or in the Alternative, to

Modify Subpoena, filed November 17, 2016;

(2) Plaintiff's Second Motion to Quash Subpoenas and for

the Entry of a Protective Order, filed December 16,

2016; and (3) Defendants Kazu Construction, LLC ("Kazu")

and Vernon Lowry's ("Lowry") (collectively "Defendants")

Motion to Compel Discovery, filed November 30, 2016. These matters came on for hearing on January 27, 2017. Senior Trial Attorney Abigail Daquiz and Trial Attorney Cristopher Santos appeared by phone on behalf of Plaintiff. Christopher Yeh, Esq. and Darin Leong, Esq. appeared on behalf of Defendants. After careful consideration of the parties' submissions, the applicable law, and the arguments of counsel, the Court HEREBY GRANTS IN PART AND DENIES IN PART the Motions for the reason set forth below.

<u>BACKGROUND</u>

This case involves allegations that Defendants violated the minimum wage, overtime, and record keeping requirements of the Fair Labor Standards Act of 1938 ("FLSA").

A.   <u>Motion to Compel</u>

On August 30, 2016, Kazu served its First Request for Production of Documents ("RPOD") and First Request for Answers to Interrogatories ("RAI"). On September 29, 2016, Plaintiff requested an extension of

time to respond to the discovery requests by October 14, 2016.  Kazu agreed to the requested extension.  On October 14, 2016, Plaintiff provided responses to the RAI, but indicated that he would provide responses and responsive documents to the RPOD the next week. Plaintiff provided written responses to the RPOD on October 21, 2016, and responsive documents on October 25, 2016.

Counsel for the parties communicated throughout November concerning outstanding discovery.  On November 29, 2016, Plaintiff produced additional documents and informed Defendants about what documents it would and would not produce.  Defendants then filed the Motion to Compel.

B.  <u>Motion to Quash</u>

On August 30, 2016, Defendants issued subpoenas to Dennis Tadio and Hawaii News Now.  On November 3, 2016, Defendants issued subpoenas for several Claimants, but were only able to effect service upon Kevin MacGregor and Stanley Napierala.  On November 8, 2016,

subpoenas were issued for multiple Claimants and entities, but service was only successfully effected on Arnold Leedy, Makaha Oceanview Estates, Nakamura Electric, Mark Kramer, and Suzanne Yen.

On November 17, 2016, Plaintiff filed his Motion to Quash, or in the Alternative, to Modify Subpoena.

On December 2, 2016, subpoenas were served on Preston Cummings, Richard Napierala, Andrew Davis, Laretta Dubin, Joseph Nunuha, Melanie Abad, and T.J. Mahoney.  Plaintiff's Second Motion to Quash Subpoenas and for the Entry of a Protective Order followed on December 16, 2016.

LEGAL STANDARDS

A.  <u>Motion to Compel</u>

Federal Rule of Civil Procedure ("FRCP") 26 provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in
controversy, the parties' relative access
to relevant information, the parties'
resources, the importance of the discovery
in resolving the issues, and whether the
burden or expense of the proposed discovery
outweighs its likely benefit. Information
within this scope of discovery need not be
admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Relevance "has been construed

broadly to encompass any matter that bears on, or that

reasonably could lead to other matter that could bear

on, any issue that is or may be in the case."

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351

(1978).  At the same time, it has its "ultimate and

necessary boundaries."  Id.  "District courts have broad

discretion in determining relevancy for discovery

purposes."  Surfvivor Media, Inc. v. Survivor Prods.,

406 F.3d 625, 635 (9th Cir. 2005) (citing Hallett v.

Morgan, 296 F.3d 732, 751 (9th Cir. 2002)).

        The 2015 amendment to FRCP 26 added

proportionality as a requirement for obtaining

discovery.  Thus, "relevancy alone is no longer

sufficient to obtain discovery, the discovery requested

must also be proportional to the needs of the case."
Centeno v. City of Fresno, Case No. 1:16-cv-00653-DAD-
SAB, 2016 WL 7491634, at *4 (E.D. Cal. Dec. 29, 2016)
(citing In re Bard IVC Filters Prod. Liab. Litig., 317
F.R.D. 562, 564 (D. Ariz. 2016)).  Addressing all
proportionality considerations does not rest solely with
the party seeking discovery.  Fed. R. Civ. P. 26(b)(1)
advisory committee's note to 2015 amendment.  Instead,
"[t]he parties and the court have a collective
responsibility to consider the proportionality of all
discovery and consider it in resolving discovery
disputes."  Id.

District courts have broad discretion to limit
discovery where the discovery sought is "unreasonably
cumulative or duplicative, or can be obtained from some
other source that is more convenient, less burdensome,
or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).
Limits also should be imposed where the requesting party
has had ample opportunity to obtain the information
through discovery in the action or the discovery is

6

outside the scope of permissible discovery under FRCP 26(b)(1).  Id.

In the event a party fails to respond to a discovery request, the party who served the discovery request may file a motion to compel.  Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv).  An incomplete or evasive answer or response is deemed a failure to answer or respond. Fed. R. Civ. P. 37(a)(4).  The motion to compel must include a certification that the "movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1); see also Local Rule 37.1(a), (b).

B.   Motion for Protective Order

FRCP 26(c) governs the granting of a protective order.  A protective order may be granted, for "good cause" to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  "If a court finds particularized harm will result from disclosure of

information to the public, then it balances the public and private interests to decide whether a protective order is necessary." <u>Rivera v. NIBCO, Inc.</u>, 384 F.3d 822, 827 (9th Cir. 2004) (citations omitted). Generally, the party seeking the protective order has the heavy burden of demonstrating that "good cause" exists for the protection of the materials. <u>Id.</u> (citation omitted). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" <u>Id.</u> (quoting <u>Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1211-12 (9th Cir. 2002)). This standard is not satisfied by "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning." <u>Id.</u> (citing <u>Phillips</u>, 307 F.3d at 1211-12). Rather, a party seeking to obtain a protective order must make a "particularized showing of good cause with respect to any individual document." <u>Phillips</u>, 307 F.3d at 1211 (quoting <u>San Jose Mercury News, Inc. v. U.S. Dist. Court--Northern Dist. (San Jose)</u>, 187 F.3d 1096,

1103 (9th Cir. 1999)).

If the Court denies the motion for protective order in whole or in part, "the court may, on just terms, order that any party or person provide or permit discovery."  Fed. R. Civ. P. 26(c)(2).

C.   Motion to Quash Subpoenas

When a party or attorney issues a subpoena, he or she "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  Any order compelling production or inspection following an objection to a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance."  Fed. R. Civ. P. 45(d)(2)(B).

A subpoenaed party may move to quash or modify subpoenas on various grounds.  On timely motion, a court *must* quash or modify a subpoena that:  "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits

specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). On the other hand, a court *may* quash or modify a subpoena if it requires: "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(I). "[A] court determining the propriety of a subpoena balances the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." Am. Broad. Cos., Inc. v. Aereo, Inc., No. CV-12-80300-RMW, 2013 WL 1508894, at *3 (N.D. Cal. Apr. 10, 2013).

<u>ANALYSIS</u>

A.  <u>Motion to Compel</u>

Defendants seek to compel the production of the following:

- documents identified in Plaintiff's privilege log: 1) 16 undated witness statements written by Investigator Jefferson Caparas; 2) 6 internal

memoranda written by Caparas to file; and 3) WHI Caparas notes written by Caparas, undated;

- the factual basis for Plaintiff's determination that Richard Napierala was exempt;

- Plaintiff's record of phone calls with Dennis Tadio;

- Plaintiff's communications with its witnesses; and

- documents relating to claimants, including records showing appointments, travel, purchases, and other non-work activities during each individual's specific period of employment with Kazu.

In addition, Defendants ask the Court to compel responses to interrogatory nos. 2(b)(ii), 3, 8, 10, and 12-14.

1. <u>Waiver</u>

As an initial matter, the Court addresses Defendants' contention that Plaintiff waived all objections by failing to assert them in a timely manner. Plaintiff counters that he did not waive objections by producing responses one week after the extended deadline agreed to by Defendants.

FRCP 34 provides that "[t]he party to whom the request is directed must respond in writing within 30

days after being served . . . . [a] shorter or longer time may be stipulated to under Rule 29 or be ordered by the court."  Fed. R. Civ. P. 34 (emphasis added).  "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection."  <u>Richmark Corp. v. Timber Falling Consultants</u>, 959 F.2d 1468, 1473 (9th Cir. 1992) (citing <u>Davis v. Fendler</u>, 650 F.2d 1154, 1160 (9th Cir. 1981)); <u>Pham v. Hartford Fire Ins. Co.</u>, 193 F.R.D. 659, 661-62 (D. Colo. 2000)) (same).  However, courts "retain discretion to relieve a late or non-responding party from the potentially harsh consequences associated with waiver."  <u>Liquori v. Hansen</u>, No. 2:11-CV-00492-GMN, 2012 WL 760747, at *11 (D. Nev. Mar. 6, 2012).

Although Plaintiff admittedly submitted untimely responses, the delay was minimal and did not unduly prejudice Defendants.  <u>Burlington Ins. Co. v. Okie Dokie, Inc.</u>, 368 F. Supp. 2d 83, 91 (D.D.C. 2005) (declining to bar the plaintiff from asserting objections, reasoning that the defendant would not

12

suffer prejudice by a nine-day delay and that the plaintiff had "not demonstrated a pattern of misconduct that would warrant the relatively harsh punishment sought at this stage").  Consequently, the Court finds that under the circumstances, Plaintiff did not waive his general objections to the discovery requests. Liquori, 2012 WL 760747, at *13 ("Certainly the Court may hold that untimely objections are not waived where delay in response is not substantial."); Blumenthal v. Drudge, 186 F.R.D. 236, 240 (D.D.C. 1999) (In the exercise of its broad discretion, finding that the plaintiffs did not waive their right to raise their objections even though their responses were provided approximately one week after they were due).

   2.   Governmental Privileges

      a.   Invocation of the Privileges

   Defendants alternatively argue that governmental privileges[1] were not properly invoked by

_____

   [1]  The two governmental privileges at issue are the government's informant privilege and the deliberative

13

Plaintiff himself (or a high ranking delegate), and the invocation was untimely.  Plaintiff submits that he delegates his authority to invoke claims of governmental privilege to Dr. David Weil, the Administrator of the Wage and Hour Division, U.S. Department of Labor, in FLSA cases, and that the privileges were timely and properly invoked given the submission of Dr. Weil's declaration with the Opposition.

To be properly raised, "[t]he governmental privilege must be formally asserted and delineated." Kerr v. U.S. Dist. Court for N. Dist. of Cal., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976) (citations omitted).  The governmental privilege belongs to the government, must be asserted by it, and should not be lightly invoked.  Id.  "There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal

_____

process privilege.

consideration by that officer." Id. (quoting United States v. Reynolds, 345 U.S. 1, 7-8 (1953)) (quotations omitted); Miller v. Pancucci, 141 F.R.D. 292, 300 (C.D. Cal. 1992) (Certain procedural requirements must be satisfied to invoke governmental privileges).

Here, the invocation of the governmental privileges appears to be untimely given that Dr. Weil did not submit an affidavit until the filing of the Opposition. Cf. Miller, 141 F.R.D. at 300 (as to the "official information" privilege, requiring submission of affidavit from the head of the department at the time responses to the discovery requests are served); Centeno, 2016 WL 7491634, at *13 (requiring that the declaration or affidavit from a responsible official within the agency be submitted at the time a party files and serves its response to a discovery request); Nehad v. Browder, No. 15-CV-1386 WQH NLS, 2016 WL 2745411, at *3 (S.D. Cal. May 10, 2016) (same). Because courts differ on the timing requirement, however, see e.g., Solis v. New China Buffet No. 8, Inc., No. 5:10-CV-78

15

CAR, 2011 WL 2610296, at *2 (M.D. Ga. July 1, 2011)
(holding that "[t]he formal invocation of the privilege
. . . need not come until the Government is faced with a
motion to compel"), and Defendants have been able to
assert their challenges to the invoked privileges, the
Court considers the applicability of the privileges.

    b.  <u>Informant Privilege</u>

    Plaintiff asserts the informant privilege with
respect to the following documents:  1) portions of
witness statements; 2) internal memoranda;
3) communications with witnesses; and 4) certain
interrogatories that may reveal the identities of
informants.

    The informer's or informant privilege is "the
Government's privilege to withhold from disclosure the
identity of persons who furnish information of
violations of law to officers charged with enforcement
of that law."  <u>Roviaro v. United States</u>, 353 U.S. 53, 59
(1957).  "The purpose of the privilege is the
furtherance and protection of the public interest in

effective law enforcement." Id.  The privilege may be invoked "to conceal the names of employees who precipitated the suit by filing complaints with the Department of Labor." Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1072 (9th Cir. 2000).  It applies whether statements were solicited from an employee by the Department of Labor or the employee complained to the Department of Labor, Martin v. New York City Transit Auth., 148 F.R.D. 56, 63 (E.D.N.Y. 1993) (citing Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL–CIO, 870 F.2d 368, 370–71 (7th Cir. 1989)), and it applies to both current and former employees of a company whose workers have communicated with the Department of Labor.  Hodgson v. Charles Martin Inspectors of Petroleum, Inc., 459 F.2d 303, 305–06 (5th Cir. 1972).

If "the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." Roviaro, 535 U.S. at 60.  The privilege is similarly inapplicable

17

"once the identity of the informer has been disclosed to those who would have cause to resent the communication." Id.

In addition, the privilege is not absolute and it must give way "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61.  Courts "refer to this exception as the 'balancing of interests' test, which, in the context of an FLSA action, requires a balancing of 'the public's interest in efficient enforcement of the Act, the informer's right to be protected against possible retaliation, and the defendant's need to prepare for trial.'" Chao v. Westside Drywall, Inc., 254 F.R.D. 651, 656 (D. Or. 2009) (quoting Brock v. On Shore Quality Control Specialists, Inc., 811 F.2d 282, 283 (5th Cir. 1987)) (internal quotations omitted) (citations omitted).

Once the government asserts the informant's privilege, the opposing party bears the burden of showing a compelling need for the information sufficient to overcome the privilege.  <u>United States v. Sanchez</u>, 908 F.2d 1443, 1451 (9th Cir. 1990).

i.  <u>Witness Statements</u>

Defendants contend that the witness statements should be produced unredacted because the privilege was waived as to the claimants and non-claimants identified in Exhibit A to the Complaint and Plaintiff's Initial Disclosures.  At a minimum, Defendants believe that the privilege does not apply to the witnesses who are already known to have had contact with the Department of Labor.[2]

"[A] statement given by any individual, whether claimant, employee, or witness, to the DOL during an investigation of an employer's pay practices is within

---

[2]  These individuals are Frank Aguinaldo, Sean Dinnan, Kahikapu Hendricksen, Rachel Kiyabu, Kevin MacGregor, and Brian Sceppe.

the scope of the informant's privilege." <u>Westside</u>
<u>Drywall</u>, 254 F.R.D. at 659.  Although it is true that
the informant privilege no longer applies once the
identity of the informer has been disclosed to those who
would resent the communication, "courts have
distinguished between the disclosure of *informer*
identities and the disclosure of *claimant* identities in
FLSA actions, holding that the former 'waives' the
privilege whereas the latter does not." <u>Perez v. KDP</u>
<u>Hospitality, LLC</u>, Case No. 2:15-cv-04293-MDH, 2016 WL
2746926, at *2 (W.D. Mo. May 6, 2016).  "Providing a
list of employees that may have knowledge pertinent to
the case . . . is not the same as identifying employees
that have provided information to the Department of
Labor." <u>New China Buffet</u>, 2011 WL 2610296, at *4.
Likewise, "[k]nowing the identity of persons who have
given statements to the Secretary is not equivalent to
knowledge of which of those persons were informers
within the context of the privilege." <u>Martin v. Albany</u>
<u>Bus. Journal, Inc.</u>, 780 F. Supp. 927, 941 (N.D.N.Y.

1992) (quoting <u>Charles Martin Inspectors</u>, 459 F.2d at 306).

Exhibit A to the Complaint and Plaintiff's Initial Disclosures identify current and former employees and non-employees.  While these individuals have been identified by Plaintiff and may have given statements to the Department of Labor, it does not necessarily follow that these individuals are also informants whose identification waives the informant privilege.  <u>KDP Hospitality</u>, 2016 WL 2746926, at *2 ("Although it is a sound assumption that some or all of the employees listed in Appendix A were informers, the term 'employees' is not synonymous with the term 'informer' and it is possible that either none, some, or all of the employees listed in Appendix A were informers."); <u>Westside Drywall</u>, 254 F.R.D. at 660 (finding that the Secretary's disclosure of the names of the defendants' employees who were not properly paid in violation of the FLSA did not waive the informant privilege because the Secretary did not identify the

21

employees as informants).  Therefore, Plaintiff's
identification of individuals in Exhibit A to the
Complaint and his Initial Disclosures does not
sufficiently identify those individuals as informers so
as to waive the privilege.  New China Buffet, 2011 WL
2610296 ("[L]isting a former employee in Appendix A does
not go nearly far enough in identifying them as an
informer to waive the privilege.").  That said, if any
of the aforementioned individuals have since been
identified as informants, or as soon as they are
revealed as such, their witness statements should be
produced unredacted.

Defendants assert that even if the privilege is
not waived, application of the balancing test weighs in
favor of disclosure because this case turns on
credibility and they should be permitted to review
unredacted statements prior to depositions.  Courts have
regularly rejected this argument during the discovery
phase of litigation.  KDP Hospitality, 2016 WL 2746926,
at *2 (citing collection of cases).

The Court agrees with Defendants' contention that Plaintiff should not be allowed to ambush them at trial by withholding the identities of informants. However, Defendants have not established a compelling need for the unredacted statements at this stage in the litigation. Solis v. Delta Oil Co., Inc., No. 1:11-cv-233, 2012 WL 1680101, at *6 (S.D. Ohio May 14, 2012) (ordering the Secretary to produce investigation file and copies of all statements taken by Department of Labor investigators with redactions made to identifying information of persons who provided protected information).  "The majority view is that the public interest in protecting informants from retaliation and encouraging just administration of the FLSA outweighs a litigant's need for unrestricted access to sensitive information during discovery." Chao v. Brumfield Const., No. C07-821RSL, 2008 WL 1928984, at *2 (W.D. Wash. Apr. 28, 2008) (quoting Brock v. R.J. Auto Parts and Serv., Inc., 864 F.2d 677, 678 (10th Cir. 1988) (holding that "the district court erred in requiring the

23

premature identification and designation of trial

witnesses" when defendants had not shown substantial

need for the information in the discovery stage)).

For the time being, Defendants may depose and

conduct other discovery with respect to the individuals

identified in Exhibit A to the Complaint and Plaintiff's

Initial Disclosures.  Id. (unprivileged areas of

discovery would likely provide information related to

the key issues identified by the defendants);  Westside

Drywall, 254 F.R.D. at 661 ("[A]s to those claimants

still available to Defendants for deposition, they will

be required to depose those claimants and work through

with those deponents the redacted statements the

Secretary already has provided, consistent with the case

decisions.").

As trial nears, however, "the need for

disclosure becomes more acute and the balance of

interests shifts."  Id. (citation omitted); Brennan v.

Engineered Prod., Inc., 506 F.2d 299, 303-04 (8th Cir.

1974) (recognizing the distinction between a defendant's

24

need for certain discovery during the discovery phase,
as opposed to the pretrial phase).  In anticipation of
Defendants' need to conduct discovery prior to the
expiration of the discovery deadline, the Court orders
Plaintiff to produce unredacted witness statements (for
those witnesses whose testimony will be relied upon at
trial) to Defendants by **May 19, 2017**.  Should delays in
the disclosure of witness identities preclude Defendants
from timely conducting discovery, they may seek relief
from the Court.

### ii. Internal Memoranda/Communications With Witnesses

Defendants extend the same arguments with
respect to internal memoranda and communications with
witnesses.  The Court applies the same analysis to these
documents.  To the extent any portions of the documents
"will not tend to reveal the identity of an informer,"
Roviaro, 535 U.S. at 60, they must be produced, as those
contents are not privileged.

25

Plaintiff represents that sections of the case narratives (Bates Nos. DOL 0005, 0045, and 0056) and internal analysis (Bates Nos. DOL 00132-00134) contain names or information that would reveal the identities of individuals who have cooperated with the government.  By Plaintiff's own representation, only portions of the documents at issue would reveal the identities of informants.  Accordingly, Plaintiff is directed to produce the foregoing documents with any identifying information redacted.  Plaintiff must also produce communications with witnesses with any identifying information redacted.  Production of these documents shall be made by **March 1, 2017**.[3]

iii.   Interrogatories

Plaintiff asks that the Motion be denied as to amended responses to interrogatories to the extent the

---

[3]  To the extent these documents are also being withheld on the basis of the deliberative process privilege, attorney-client privilege, or the common interest doctrine, they may need to be produced in camera to the Court instead of with redactions to Defendants.

information sought might reveal the identities of informants.  The informant privilege does not excuse Plaintiff from fully and completely responding to Kazu's RAI.  Indeed, the RAI at issue can be answered without revealing informants' identities.

### c. Deliberative Process Privilege

The following documents (or portions thereof) are being withheld pursuant to the deliberative process privilege:  1) 2/25/15 FLSA Case Narrative (page 003 of Bates DOL 0002-12); 2) 11/25/15 Case Cover Sheet (Bates DOL 0039-41); 3) 2/25/15 FLSA Case Narrative (page 0043 of Bates DOL 0042-52); 4) 2/25/15 Draft FLSA Case Narrative (Bates DOL 0053-62); and 5) Undated Spreadsheet (Bates DOL 0132-134).[4]  Defendants argue that the deliberative process privilege does not apply,

---

[4]  Plaintiff also invokes the attorney-client privilege as to certain of these documents and invokes the informant privilege as to one of the case narratives.  According to Plaintiff, a withheld case narrative (presumably Bates DOL 0002-12 or 0042-52) pertains to whether Richard Napierala was exempt, and it is the only document being withheld regarding Mr. Napierala's exempt status.

but if it does, it would only apply to the few pages identified in Dr. Weil's declaration, and the Court could conduct an in camera review to ensure that factual content is produced.

"[T]he deliberative process privilege permits the government to withhold documents that reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated." Hongsermeier v. C.I.R., 621 F.3d 890, 904 (9th Cir. 2010) (alteration omitted) (internal citation and quotations omitted); Nat'l Wildlife Fed'n v. United States Forest Serv., 861 F.2d 1114, 1118-19 (9th Cir. 1988) ("The deliberative process privilege covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.").

To determine whether the deliberative process privilege applies, the following factors are evaluated: "1) the relevance of the evidence; 2) the availability

28

of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." F.T.C. v. Warner Commc'ns Inc., 742 F.2d 1156, 1161 (9th Cir. 1984).

The Court grants Defendants' request for an in camera review of the above mentioned documents. Plaintiff shall produce unredacted versions of the documents at issue to the Court by **February 22, 2017.**

3. <u>Attorney-Client Privilege/Common Interest Doctrine</u>

Plaintiff has withheld multiple documents pursuant to the attorney-client privilege and/or common interest doctrine.  "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law . . . [and] [i]ts purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." <u>Upjohn Co. v. United</u>

States, 449 U.S. 383, 389 (1981).  All communications with a person who is a lawyer does not make privileged all communications with that person.  United States v. Martin, 278 F.3d 988, 999 (9th Cir. 2002) (citing United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)). The attorney-client privilege is strictly construed "[b]ecause it impedes full and free discovery of the truth."  Id. (citing Weil v. Inv./ Indicators, Research & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981)).  The elements of the privilege are as follows:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

Id. (citations omitted).  The party asserting the privilege bears the burden of establishing all of the elements of the privilege.  Id. at 999-1000 (citing United States v. Munoz, 233 F.3d 1117, 1128 (9th Cir. 2000)).  "Voluntary disclosure of the content of a

30

privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject." <u>Weil</u>, 647 F.2d at 24.  The asserting party must prove that it has not waived the privilege. <u>Id.</u> (citations omitted).

An exception to the waiver of the privilege exists.

> Participants in a joint or common defense or individuals with a community of interests "may communicate among themselves and with the separate attorneys on matters of common legal interest, for the purpose of preparing a joint strategy, and the attorney-client privilege will protect those communications to the same extent as it would communications between each client and his own attorney."

<u>Nidec Corp. v. Victor Co. of Japan</u>, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citation omitted).  The joint defense/common interest doctrine is an exception to the waiver when communications are disclosed to third parties, it is not a privilege in and of itself.  <u>Id.</u> It applies "where (1) the communication is made by separate parties in the course of a matter of common

interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." United States v. Bergonzi, 216 F.R.D. 487, 495 (N.D. Cal. 2003) (citation omitted).  The doctrine "does not require a complete unity of interests among the participants, and it may apply where the parties' interests are adverse in substantial respects."  Id. (citation omitted).

The Court directs Plaintiff to produce all documents being withheld on the basis of the attorney-client privilege or the common interest doctrine[5] for in camera review by **February 22, 2017**.

4.  Remaining Outstanding Discovery Requests

a.  Investigator's Notes

The Motion is denied as moot with respect to the investigator's notes because Plaintiff produced the same.

---

[5]  There is overlap between these documents and those withheld under the earlier discussed privileges.

   b.   <u>Non-Privileged Documents Relating to
        Richard Napierala</u>

   Plaintiff represents that he produced all
responsive, non-privileged documents.  Consequently, the
Motion is denied as moot as to the non-privileged
documents pertaining to Mr. Napierala's exempt status.

   c.   <u>Call logs With Dennis Tadio</u>

   Defendants seek Plaintiff's records of phone
calls with Mr. Tadio because Plaintiff's heavy reliance
on Mr. Tadio calls into question the integrity of the
investigation.  The Court finds that the call logs are
irrelevant.  Mr. Tadio's credibility may be at issue at
trial, but the frequency with which he communicated with
Plaintiff does not bear on, nor would it reasonably lead
to other matters that could bear on, the issues in this
case.  Consequently, the Court declines to order the
production of the call logs.

   d.   <u>Documents Relating to Claimants' Non-Work
        Activities</u>

   Defendants request documents relating to the
Claimants' work activities, including appointments,

travel, purchases, and other non-work activities during each individual's specific period of employment with Kazu.  The Court finds that with some limitations, this information is relevant and proportional to the needs of the case.

Although Plaintiff takes issue with the breadth, burden, and implication of privacy interests associated with the requests, the information speaks directly to the allegations against Defendants and claims of overtime.[6]  The Claimants may be non-parties, but Plaintiff's case rests upon their allegations, and the Claimants stand to gain if Plaintiff prevails, so they are not a typical non-party who has no interest in

---

[6]  Plaintiff repeatedly argues that Defendants have other means to obtain information from their former employees and other individuals.  Defendants have attempted to avail themselves of other discovery tools such as subpoenas yet Plaintiff has challenged those efforts to obtain information directly from third parties.  In the motions to quash subpoenas, Plaintiff represents that he has offered to serve as the conduit for the discovery requests served upon non-parties, but in actuality, he has attempted to block production from any source.  This obstructionism should not continue.

the outcome of the litigation.  Recognizing that the Claimants' personal and private information are at issue, the parties are directed to submit a stipulated protective order to protect such information.  At a minimum, the protective order should prohibit the parties or their counsel from using information obtained in this litigation for any purpose other than this litigation and from disclosing the same to anyone who is not an officer or agent of the Court or a party to the action.  The stipulated protective order should be submitted for the Court's consideration by **March 1, 2017.**

 Rather than compelling the production of the documents through Plaintiff, production shall be discussed in the context of the motions to quash subpoenas below.  The Court believes that it is more efficient and practical to obtain the subject discovery directly from the third parties.  If those means fail, Defendants would be entitled to obtain the discovery from Plaintiff.  In any event, the parties are directed

35

to coordinate their efforts given Defendants' offer to issue subpoenas to obtain some of the requested records and to bear the costs associated therewith.

e. <u>Interrogatories</u>

Finally, Defendants request an order compelling responses to RAI Nos. 2(b)(ii), 3, 8, 10, 12-14. Insofar as the requested information is relevant and proportional to the needs of the case, Plaintiff is directed to provide complete and detailed responses. To the extent privileges apply to the information sought by the RAI, Plaintiff's responses shall conform with the Court's discussions above concerning privilege. The responses are due by **March 1, 2017**.

For the reasons articulated above, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendants' Motion to Compel.

B. <u>Motions to Quash Subpoenas/for Protective Order</u>

1. <u>Quashing or Modifying the Subpoenas</u>

Plaintiff moves to quash or modify subpoenas issued to former employees and third parties, arguing

36

that the subpoenas are unreasonable, burdensome, and intrusive.  Plaintiff characterizes the issuance of the subpoenas as targeted harassment against select former employees and business associates versus general request.[7]

    a.  <u>Plaintiff Lacks Standing</u>

Before delving into an analysis of the propriety of the subpoenas, the Court must determine whether Plaintiff has standing to quash or modify the subpoenas.  Defendants contend that Plaintiff lacks standing and even if a party could move to quash when it has a personal right or privilege in the documents sought, Plaintiff lacks a personal right or privilege in the documents that are the subject of the subpoenas. Plaintiff argues that he has an interest in preventing

---

    [7]  Based on Plaintiff's strong opposition to the subpoenas that are the subject of these Motions, it is disingenuous for Plaintiff to suggest that discovery directed to <u>all</u> employees, current and former, would be less objectionable.  The fact that the subpoenas are directed to the employees who might testify demonstrates that the discovery is focused, at least with respect to the targets of the subpoenas.

the harassment of witnesses and interference with the government's investigation and this litigation.

　　　　"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action *unless the party claims some personal right or privilege with regard to the documents sought*."  9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2459 (2d ed. 2007) (emphasis added); <u>see</u>, <u>e.g.</u>, <u>Transcore, Inc. v. Furney Charters, Inc.</u>, 212 F.R.D. 588, 590–91 (D. Kan. 2003) (finding that the defendant has a "personal right with respect to its bank account records at the subpoenaed banks, and this right gives it standing to move to quash the subpoenas"); <u>but see</u> <u>Nova Prods., Inc. v. Kisma Video, Inc.</u>, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (recognizing exception to general rule regarding party's lack of standing but denying motion to quash where party did not include evidence that contested material was meant to be private or confidential).

> The Ninth Circuit has yet to address the question of whether a party has standing to bring a motion to quash since usually only the subpoenaed non-party may move to quash. The general rule, however, is that a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought.

Cal. Sportfishing Prot. All. v. Chico Scrap Metal, Inc., 299 F.R.D. 638, 643 (E.D. Cal. 2014) (citation omitted).[8]  "Conversely, '[a] party does not have standing to quash a subpoena on the basis that the non-party recipient of the subpoena would be subjected to an undue burden when the non-party has failed to object.'"  Chevron Corp. v. Donziger, No. 12-MC-80237 CRB (NC), 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013) (alteration in original).

---

[8]  In re Rhodes Cos., LLC, 475 B.R. 733, 738 (D. Nev. 2012) (citing Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979); Crispin v. Christian Audigier, Inc., 717 F. Supp. 2d 965, 973-74 (C.D. Cal. 2010); Platinum Air Charters, L.L.C. v. Aviation Ventures, Inc., No. 2:05-CV1451-RCJLRL, 2007 WL 121674, at *2 (D. Nev. Jan. 10, 2007)) ("Although this rule has not been applied by the United States Court of Appeals for the Ninth Circuit, other courts have applied it.").

The Court finds that Plaintiff lacks standing to seek to quash the subpoenas that are the subject of these two motions, as he does not have a personal right or privilege in the documents sought.[9]  Plaintiff asserts that he has a personal right and privilege in the information protected by the government's informant privilege and the communications protected by the common interest doctrine.  The government's informant privilege may be invoked to conceal the names of employees who precipitated the suit by filing complaints with the Department of Labor.  Being that the identities of the subpoenaed individuals are known, and the subpoenas request factual information concerning those

---

[9]  Plaintiff relies on the Noerr-Pennington doctrine of statutory construction as a basis for standing, but it does not compel the result put forth by Plaintiff. "Under the Noerr-Pennington rule of statutory construction, [courts] must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise."  Sosa v. DIRECTV, Inc., 437 F.3d 923, 931 (9th Cir. 2006).  Plaintiff has not sufficiently explained the doctrine's applicability to the issue of standing here.

individuals, the informant privilege is inapplicable and Plaintiff cannot assert standing on that basis. Neither does Plaintiff have a personal right or privilege in the claimants' personal records sought via the subpoenas. EEOC v. Michael Cetta, Inc., No. 09 CIV. 10601 BSJ, 2011 WL 5117020, at *2 (S.D.N.Y. Oct. 27, 2011) ("Because neither the EEOC nor the [Plaintiff-Intervenor] has demonstrated a sufficient proprietary interest or applicable privilege to the [Plaintiff-Intervenor's personnel records, including job performance reviews and resumes], the Court finds that they lack standing to challenge the subpoena."). As such, the Court declines to quash the subpoenas.

Nevertheless, notwithstanding Plaintiff's apparent lack of standing, the Court, exercising its discretion to manage discovery, and in the interest of promoting judicial economy and the just, speedy and inexpensive determination of this action, shall order compliance with the subpoenas with modifications. Before detailing the modifications, the Court addresses

some of the specific arguments raised by the parties.

   b.   <u>The Motion is Untimely as to Dennis Tadio</u>

      Defendants argue that the Motion should be

denied as to Mr. Tadio because it was untimely filed,

more than two months after the pertinent summons'

9/14/16 return date.  A motion to quash must be timely

filed.  Fed. R. Civ. P. 45(d)(3)(A).  "'Timely' is not

defined in the rule nor elaborated upon in the advisory

committee's notes."  <u>U.S. ex rel. Pogue v. Diabetes</u>

<u>Treatment Centers of Am., Inc.</u>, 238 F. Supp. 2d 270, 278

(D.D.C. 2002).  Court generally have interpreted

"'timely' to mean within the time set in the subpoena

for compliance."  <u>Id.</u> (citing <u>Innomed Labs, LLC v. Alza</u>

<u>Corp.</u>, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (noting that

in the absence of a definition of "timely" in Rule 45,

"it is reasonable to assume that the motion to quash

should be brought before the noticed date of the

scheduled deposition"); <u>In re Motorsports Merch.</u>

<u>Antitrust Litig.</u>, 186 F.R.D. 344, (W.D. Va. 1999) (a

motion to quash filed 36 days after corporate

42

representatives became aware of subpoena and two months after it was due is untimely)); Anderson v. Abercrombie and Fitch Stores, Inc., No. 06cv991-WQH (BLM), 2007 WL 1994059, at *8 (S.D. Cal. Jul. 2, 2007) (finding untimely a motion to quash filed after the date specified for document production).

Here, Mr. Tadio was served with the subpoena on August 30, 2016, the date for compliance was September 14, 2016, and Plaintiff did not file the relevant Motion to Quash until November 17, 2016.  Consequently, the Motion is untimely as to the summons served on Mr. Tadio.  HT S.R.L. v. Velasco, 125 F. Supp. 3d 211, 230 (D.D.C. 2015) (finding untimely the motion to quash, which was filed 21 days after compliance and 50 days after service); Allstate Ins. Co. v. Nassiri, No. 2:08-CV-369 JCM (GWF), 2011 WL 4905639, at *1 (D. Nev. Oct. 14, 2011) (it was not clear error for the magistrate judge to find the motion to quash or modify subpoena untimely where the non-party had 3-week notice of deposition but filed motion 3 days before the

43

deposition); <u>Moore v. City of St. Augustine, Fla.</u>, No. 3:12-cv-797-J-20MCR, 2013 WL 1156384, at *1 (M.D. Fla. Mar. 14, 2013) (motion to quash filed more than 40 days after date specified for compliance was untimely); <u>Marti v. Baires</u>, No. 1:08-CV- 00653-AWI, 2014 WL 1747018, at *2 (E.D. Cal. May 1, 2014) (finding untimely motions to modify subpoenas that were filed almost seven months after service of the subpoenas and almost five months after the production date).  Mr. Tadio must fully comply with the subpoena by **March 8, 2017.**

> c. <u>Defendants Did Not Violate FRCP 45's Geographical Requirement</u>

Plaintiff argues that as to Kevin MacGregor and Mark Kramer, Defendants failed to adhere to FRCP 45(c)(2)(A)'s requirement that a subpoena may command "production of documents, electronically stored information, or tangible things at a place *within 100 miles of where the person resides, is employed, or regularly transacts business in person*."  Fed. R. Civ. P. 45(c)(2)(A) (emphasis added).  However, "[t]he 100-

44

mile geographical limitation applies only to travel by a subpoenaed person, not to a situation where the subpoenaed records could be mailed or shipped." Sol v. Whiting, No. CV-10-01061-PHX-SRB, 2014 WL 12526314, at *2 (D. Ariz. Jul. 22, 2014).  This argument is therefore without merit and cannot serve as a basis to quash the subpoenas served upon Mr. Kramer and Mr. MacGregor.

> d.   Modification of the Subpoenas

To assuage concerns of overbreadth and undue burden, and to promote proportionality, the Court modifies the subpoenas as follows:

- Financial records – the subpoenaed individuals/entities need only identify financial institutions related to the requests.

- Phone records (cell or otherwise) – the subpoenaed individuals/entities need only produce provider information.

- Social media – the subpoenaed individuals need only produce posts that they generated or that originated from them.

- Documents showing or referring to engagement in any activity (other than employment with Kazu) between 7:00 a.m. and 6:00 p.m. – the subpoenaed individuals shall produce responsive documents from a consecutive three-month period within the range of

dates identified in the respective subpoenas.

The subpoenas must be responded to by **March 8, 2017**, subject to the above modifications, if applicable.[10]  The documents and other information produced in connection with the subpoenas shall be subject to the stipulated protective order to be submitted by the parties.

2.  Protective Order

Plaintiff requests a protective order to guard against future oppressive and unduly burdensome discovery.  The Court finds that Plaintiff has failed to demonstrate good cause for the issuance of a protective order.

Plaintiff attempts to preclude and/or limit third-party discovery to relevant and non-oppressive information and documents that Defendants cannot get directly from Plaintiff.  Given Plaintiff's stance on

---

[10]  Certain subpoenas do not request the categories of documents/information that are subject to modification.

producing documents relating to claimants and witnesses,[11] the protective order proposed by Plaintiff would in effect preclude a large majority of third-party discovery.

Because the Court finds that the discovery requested of the subpoenaed individuals/entities is relevant and proportional to the needs of the case, the entry of a protective order in the form proposed by Plaintiff would be inappropriate. The Court has already directed the parties to submit a stipulated protective order to guard the information produced by third parties, but the prospective relief requested by Plaintiff would arguably obstruct Defendants from obtaining information to which they are entitled, particularly because Plaintiff objects to producing the third-party information. As this litigation progress and trial nears, Defendants will be entitled to

---

[11] As earlier noted, Plaintiff objects to producing documents and in fact cites third-party discovery as a means of obtaining the requested information.

additional discovery.  The Court consequently declines to issue a protective order that will effectively impair the procurement of the same.

Based on the foregoing, the Motions to Quash are GRANTED IN PART AND DENIED IN PART and Plaintiff's request for the entry of his proposed protective order is DENIED.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY GRANTS IN PART AND DENIES IN PART (1) Plaintiff's Motion to Quash, or in the Alternative, to Modify Subpoena, filed November 17, 2016; (2) Plaintiff's Second Motion to Quash Subpoenas and for the Entry of a Protective Order, filed December 16, 2016; and (3) Defendants' Motion to Compel Discovery, filed November 30, 2016.

IT IS SO ORDERED.

DATED:   Honolulu, Hawaii, February 15, 2017.



_____
Kevin S.C. Chang
United States Magistrate Judge

CIVIL NO. 16-00077 ACK-KSC; <u>PEREZ V. KAZU CONSTRUCTION LLC, et al.</u>; ORDER GRANTING IN PART AND DENYING IN PART: (1) PLAINTIFF'S MOTION TO QUASH, OR IN THE ALTERNATIVE, TO MODIFY SUBPOENA; (2) PLAINTIFF'S SECOND MOTION TO QUASH SUBPOENAS AND FOR THE ENTRY OF A PROTECTIVE ORDER; AND (3) DEFENDANTS' MOTION TO COMPEL DISCOVERY