IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____ )
                                  )
SECRETARY OF LABOR, UNITED STATES )
DEPARTMENT OF LABOR, EDWARD HUGLER )
                                  )
            Plaintiff,            )
                                  )
v.                                )  Civ. No. 16-00077 ACK-KSC
                                  )
KAZU CONSTRUCTION, LLC,           )
a corporation; and VERNON LOWRY,  )
an individual,                    )
                                  )
            Defendants.           )
_____ )


## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

        For the reasons set forth below, the Court GRANTS IN

PART AND DENIES IN PART Defendants' Motion for Partial Summary

Judgment, ECF No. 43.

### BACKGROUND

        Defendant Kazu Construction, LLC ("Kazu Construction")

is a limited liability company whose sole member is Defendant

Vernon Lowry ("Mr. Lowry").  Defs. Concise Statement of Facts,

ECF No. 44, ¶ 1 ("Defs. CSF").  From 2012-2014, Kazu

Construction was the contractor for the development of the

Makaha Oceanview Estates ("MOE Project").  Id.; ECF No. 78 at

10.  At issue in this case are Defendants' employment and

recordkeeping practices under the Fair Labor Standards Act, 29

U.S.C. §§ 206, 207, 215(a)(2) and 215(a)(5) ("FLSA"). Compl. ¶ 1, ECF No. 1. The Secretary of Labor ("Secretary") alleges that Defendants failed to pay certain employees minimum wage and overtime compensation by engaging in a practice of banking hours in excess of 40 hours a week. Id. ¶¶ 10-11. In addition, Defendants failed to make, keep, and preserve accurate records of the hours worked by employees. Id. ¶ 12.

The Department of Labor learned about this allegedly unlawful scheme after a former Kazu Construction employee, Dennis Tadio, filed a complaint with the state labor agency on July 7, 2014 seeking unpaid wages. Opp. at 12; Lee Decl., Ex. 1, ECF No. 83 (Tadio complaint). The state agency specialist then referred Mr. Tadio to the U.S. Department of Labor, Wage and Hour Division to investigate a possible overtime violation. Opp. at 13; Tadio Decl. ¶ 7, ECF No. 84; Lee Decl. ¶ 3, ECF No. 83.

The Secretary filed his complaint on February 22, 2016. ECF No. 1. Defendants filed the instant Motion for Partial Summary Judgment on November 16, 2016. ECF No. 43 ("Motion" or "MSJ"). The Secretary filed his Opposition and accompanying Concise Statement of Disputed Facts on February 13, 2017. ECF Nos. 77-78 (ECF No. 78, "Opp."; ECF No. 77, "Pls. CSF"). Defendants filed their Reply on February 20, 2017. ECF No. 88 ("Reply").

This Court held a hearing on Defendants' Motion on April 10, 2017.

**STANDARD**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Federal Rule of Civil Procedure ("Rule") 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Broussard v. Univ. of Cal., at Berkeley, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a

- 3 -

genuine issue for trial." <u>Matsushita Elec. Indus. Co., Ltd. v.
Zenith Radio</u>, 475 U.S. 574, 586–87 (1986) (citation and internal
quotation marks omitted); <u>see also</u> <u>Anderson v. Liberty Lobby,
Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot
"rest upon the mere allegations or denials of his pleading" in
opposing summary judgment).

    "An issue is 'genuine' only if there is a sufficient
evidentiary basis on which a reasonable fact finder could find
for the nonmoving party, and a dispute is 'material' only if it
could affect the outcome of the suit under the governing law."
<u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (citing
<u>Anderson</u>, 477 U.S. at 248).  When considering the evidence on a
motion for summary judgment, the court must draw all reasonable
inferences on behalf of the nonmoving party.  <u>Matsushita Elec.
Indus. Co.</u>, 475 U.S. at 587; <u>see also</u> <u>Posey v. Lake Pend Oreille
Sch. Dist. No. 84</u>, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating
that "the evidence of [the nonmovant] is to be believed, and all
justifiable inferences are to be drawn in his favor").

<b><u>DISCUSSION</u></b>

**I.   Statute of Limitations**

    The parties first dispute whether the applicable
statute of limitations is two or three years, and regardless,
whether the Secretary is entitled to equitable tolling.  The
ordinary statute of limitations for an FLSA violation is two

years; however, "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).

## A. Willfulness

"A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]."  <u>Chao v. A-One Med. Servs., Inc.</u>, 346 F.3d 908, 918 (9th Cir. 2003) (quoting <u>McLaughlin v. Richland Shoe Co.</u>, 486 U.S. 128, 133 (1988)) (alteration in original); <u>Flores v. City of San Gabriel</u>, 824 F.3d 890, 906 (9th Cir. 2016) ("A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].") (internal quotation and citation omitted) (alteration in original).

The Ninth Circuit has found willfulness where the employer was "on notice of its FLSA requirements, yet took no affirmative action to assure compliance with them."  <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 909 (9th Cir. 2003).  "[T]he three-year term can apply where an employer disregarded the very possibility that it was violating the statute."  <u>Id.</u> at 908-09 (finding willfulness where the employer "could easily have inquired into the meaning of the relevant FLSA terms and the type of steps necessary to comply therewith" but instead "attempt[ed] to evade compliance, or to minimize the actions

necessary to achieve compliance therewith.") (internal citation and quotation omitted).

Defendants seem to imply that willfulness only arises "when an employer knows that its current position had previously been invalidated or questioned in a prior legal proceeding." MSJ at 10. However, while this is one way in which willfulness may be shown, the Court agrees with the Secretary that courts have found willfulness in variety of circumstances. See Opp. at 14 & n.41. A district court in Oregon found willfulness where experienced business people required employees to split their time between two companies in order to evade FLSA overtime requirements, of which they were aware. Perez v. Oak Grove Cinemas, Inc., 68 F. Supp. 3d 1234, 1245 (D. Or. 2014). A district court in Nevada also found willfulness where the defendant allegedly paid workers on a per job basis, regardless of the hours worked, and that workers were not paid for training time, among other issues. Cholette v. Installpro, Inc., No. 2:10-CV-02153-KJD, 2012 WL 2190844, at *2 (D. Nev. June 13, 2012). Because the pay structure disregarded the hours worked, the court found that the defendant was reckless in risking a violation of FLSA minimum wage and overtime requirements. Id.

In addition, several courts have found willfulness where the employers failed to make any real effort to keep records of the employee's hours. See, e.g., Thornton v. Crazy

Horse, Inc., No. 3:06-CV-00251-TMB, 2012 WL 2175753, at *11 (D. Alaska June 14, 2012) ("Record keeping was atrocious, management never seemed to make any sincere effort to determine when dancers were coming and going or working or not working."); Xuan v. Joo Yeon Corp., No. 1:12-CV-00032, 2015 WL 8483300, at *5 (D. N. Mar. I. Dec. 9, 2015) (despite employer's belief he was following the law, his failure to track employee's hours was willful because he "proceed[ed] as if the risk did not exist at all").

Here, Mr. Lowry has declared that he "stated in the presence of employees that [he] did not want employees working overtime" and that it "has never been [his] understanding or intent that Kazu employees were working overtime." Lowry Decl. ¶ 7, ECF No. 44-5. However, this is insufficient to merit summary judgment. In the first place, as a matter of law the regulations dictate that:

> [i]n all such cases it is the duty of the
> management to exercise its control and see
> that the work is not performed if it does
> not want it to be performed. It cannot sit
> back and accept the benefits without
> compensating for them. The mere
> promulgation of a rule against such work is
> not enough. Management has the power to
> enforce the rule and must make every effort
> to do so.

29 C.F.R. § 785.13. Thus, merely stating that Mr. Lowry did not want or intend for employees to work overtime is insufficient to

relieve Defendants of their burden to pay any overtime worked.
If Defendants were or should have been aware that overtime might
be accruing, they needed to "make every effort" to prevent it
from being performed.  See Forrester v. Roth's I.G.A. Foodliner,
Inc., 646 F.2d 413, 414 (9th Cir. 1981) ("[A]n employer who
knows or should have known that an employee is or was working
overtime must comply with the provisions of § 207" and may not
"stand idly by...even if the employee does not make a claim for
the overtime compensation.").  And while an employee's failure
to notify the employer regarding overtime worked or deliberately
preventing the employer from having such knowledge may impede an
FLSA overtime claim, there does not seem to be any evidence of
such issues here.  See id. ("[W]here an employer has no
knowledge that an employee is engaging in overtime work and that
employee fails to notify the employer or deliberately prevents
the employer from acquiring knowledge of the overtime work, the
employer's failure to pay for the overtime is not a violation of
§ 207.").

        In addition, the Secretary has submitted evidence
creating a genuine dispute of material fact regarding
Defendants' willfulness.  There is evidence that Defendants were
aware of their obligation to document and pay overtime.  See
Caparas Decl., Ex. B, ECF No. 80 (investigation statement by Mr.
Lowry that "[i]f an employee works overtime then overtime is

documented.  Employees are then paid overtime."); Santos Decl.,

Ex. B, ECF No. 79-2 (Desiree Lowry[1] Dep., 99:3-15, 197:5-198:9)

(describing how new employees are told that they will be paid at

time-and-a-half for overtime, and that the FLSA requires payment

for hours worked on a weekly basis and does not allow averaging

of hours over greater periods of time).  Defendants also do not

appear to dispute their awareness of FLSA requirements.

More importantly, the Secretary has shown evidence

sufficient for a reasonable jury to find that Defendants knew or

were reckless with respect to their duties to track and pay

overtime to Kazu Construction's employees.  The declarations of

several employees suggest that Mr. Lowry knew that his employees

were or likely would be working overtime and advised them that

overtime hours would be banked rather than paid.  See, e.g.,

Cummings Decl. ¶ 5, ECF No. 85 ("Mr. Vernon Lowry told me that

we would be working 70 hours per week, we would get paid for 40

hours of work and the extra hours we would bank."); Napierala

Decl. ¶¶ 4, 5, 7, ECF No. 81 (Napierala reported to Mr. Lowry

how long everyone worked, which was typically around 70 hours

per week, and Mr. Lowry told them hours worked in excess of 40

would be banked); Tadio Decl. ¶ 3, ECF No. 84 ("[Mr. Lowry] told

---

[1] Desiree Lowry is the wife of Defendant Vernon Lowry.  She is
the Director of Operations for Kazu Construction.  D. Lowry Dep.
at 30:13-17.

me that the extra hours we worked were being 'banked' for our later use when needed, and that was the reason our paychecks did not include compensation for them.").

The sole source for the time cards that Desiree Lowry created and then submitted for payment was the work logs that Mr. Lowry created. D. Lowry Dep. at 153:6-154:8 (in creating time cards, "I relied on the work log [Mr. Lowry sent]... if the work log is incorrect, then the time card would be incorrect."). Employees did not enter their own time or keep time cards. Tadio Decl. ¶ 2, ECF No. 84 ("I did not sign-in or enter hours into a timesheet"); K. Hendricksen interview statement, Caparas Decl., Ex. F, ECF No. 80 (Mr. Lowry tracked hours and Hendricksen never signed a time sheet). Rather, Mr. Lowry was aware of and kept records of the hours that his employees were working. Napierala Decl. ¶ 5, ECF No. 81 (stating that he reported to Mr. Lowry each day how long the employees worked, and "Mr. Lowry kept the records of the hours that I worked on his phone."). The time cards eventually submitted were inaccurate and included time for hours not worked. D. Lowry Dep. at 173:1-4, 175:10-25 (admitting that time cards for Napierala, Tadio, and Cummings show hours not in fact worked; time cards were used to track hours charged to different jobs). Finally, there is evidence that employees worked more hours than were recorded on their pay stubs. See Napierala Decl. ¶¶ 4-5,

ECF No. 81 (Mr. Lowry recorded time worked, and paystubs only showed 40 hours per week despite typically working 10 hours per day and around 70 hours per week); Tadio Decl. ¶¶ 3-5, ECF No. 84 (similar); Cummings Decl. ¶¶ 3-6, ECF No. 85 (similar).

In sum, viewed in the most favorable light, the Secretary's evidence shows that, even though Defendants were aware of the FLSA's overtime requirements, they paid employees according to time records that were inaccurate and undercounted the amount of hours their employees worked. The Court finds that there is a genuine dispute of material fact as to Defendants' willfulness and whether the three-year statute of limitations applies. Accordingly, the Court DENIES Defendants' Motion on this basis.

## B. Claims Prior to February 22, 2013

Defendants also argue that the Secretary is barred from seeking claims prior to February 22, 2013 as employees did not work any overtime prior to that date, and as any claims prior to that date would be barred by the three-year statute of limitations. Motion at 11-12. The Secretary asserts that there are disputed facts as to whether there were overtime violations prior to February 22, 2013 and argues that he may be entitled to equitable tolling. Opp. at 18-19. Defendants dispute whether equitable tolling is available in an FLSA action, and even if so, that the Secretary is entitled to it. Reply at 2-9.

The Court first turns to whether the Secretary has sufficiently controverted Defendants' assertion that claims prior to February 22, 2013 are time-barred because employees did not work overtime.  The Secretary asserts that even in 2012, most of Defendants' employees worked up to 70 hours per week, six to seven days a week, relying primarily on the declarations of Richard Napierala, Preston Cummings, and Dennis Tadio.  Pls. CSF ¶ 12.  However, the declarations of Mr. Cummings and Mr. Tadio do not speak to the relevant time period here, because they began work at Kazu Construction in March and February of 2013, respectively.  See Cummings Decl. ¶ 1, ECF No. 85; Tadio Decl. ¶ 1, ECF No. 84.  Nevertheless, Mr. Napierala began working at Kazu Construction in September 2012, and he stated that only 2-4 workers were employed in 2012, and that they usually worked 7 days a week for more than 8 hours a day.  See generally Napierala Decl., ECF No. 81; see also Kramer Decl. ¶ 5, ECF No. 82 (noting that certain employees appeared to work continuously six to seven days a week).  This evidence is sufficient to establish a dispute of fact as to whether employees worked overtime prior to February 22, 2013.

However, even if employees did work overtime prior to February 22, 2013, the Secretary's claims prior to that date

would be time-barred absent equitable tolling.[2]  In the Ninth

Circuit, the FLSA limitations period is subject to the doctrine

of equitable tolling.  See Partlow v. Jewish Orphans' Home of S.

Cal., Inc., 645 F.2d 757, 760 (9th Cir.1981), overruled on other

grounds by Hoffmann–La Roche, Inc. v. Sperling, 493 U.S. 165

(1989); see also Barba v. Seung Heun Lee, No. CV 09-1115, 2009

WL 8747368, at *28 (D. Ariz. Nov. 4, 2009) ("The FLSA

limitations period is subject to the doctrine of equitable

tolling."); Kellgren v. Petco Animal Supplies, Inc., No. 13-CV-

644, 2014 WL 2558688, at *4 (S.D. Cal. June 6, 2014) ("The

---

[2] Contrary to Defendants' assertion, the possibility that the
three-year statute of limitations may apply does not prevent the
possible application of equitable tolling.  See Reply at 8-9.
Defendants' citation to a case from the Court of Federal Claims
is not persuasive, particularly in light of the more recent
recognition by that jurisdiction that "the weight of authority
favors equitable tolling of FLSA claims."  Christofferson v.
United States, 64 Fed. Cl. 316, 326 (Fed. Cl. 2005) (rejecting
argument that equitable tolling was not permissible as Congress
had provided for a three-year statute of limitations for willful
violations; see also Moreno v. United States, 82 Fed. Cl. 387,
401-02 (Fed. Cl. 2008) (discussing the split in Federal Circuit
caselaw regarding the availability of equitable tolling).  The
Court also notes that numerous district courts in this circuit
have allowed plaintiffs to assert both willfulness and equitable
tolling arguments.  See, e.g., Dualan v. Jacob Transp. Servs.,
LLC, 172 F. Supp. 3d 1138 (D. Nev. 2016) (finding sufficient
showing of both willfulness and equitable tolling at conditional
class certification stage); Chastain v. Cam, No. 3:13-CV-01802-
SI, 2014 WL 3734368, at *8 (D. Or. July 28, 2014) (concluding
that both equitable tolling and the three-year statute of
limitations could apply); Morgovsky v. AdBrite, Inc., No. C 10-
05143 SBA, 2012 WL 1595105, at *7 (N.D. Cal. May 4, 2012)
(allowing amendment of complaint to allege facts supporting both
willfulness and equitable tolling).

statute of limitations for FLSA claims is subject to equitable tolling.").

"Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999). "[A] litigant seeking equitable tolling bears the burden of establishing [the] elements." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1052 (9th Cir. 2013).

Although the Secretary argues that Defendants have failed to rebut his equitable tolling theory, see Opp. at 18-19, it is not entirely apparent from the parties' papers what the theory of equitable tolling actually is. The Secretary's brief states that he informed Defendants' counsel that he would be pursuing equitable tolling, Opp. at 18 n.56, and appears to argue that he is entitled to pursue equitable tolling on the basis that there is a dispute of fact regarding whether employees worked overtime prior to February 22, 2013, Opp. at 19.

If this is in fact the Secretary's theory, it misses the mark. Equitable tolling focuses on the plaintiff's diligence or the defendant's wrongful conduct in preventing the

plaintiff from timely asserting his claim.  See Stoll, 165 F.3d at 1242; Kwai Fun Wong, 732 F.3d at 1052 (the party seeking equitable tolling must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way").  Here, the Secretary does not appear to have made an argument or provided evidence in support of either equitable factor.

The Court agrees with Defendants' assertion that the Secretary does not appear to have been diligent.  Reply at 3-4. It is undisputed that the Department of Labor first issued a back wage calculation extending back to 2012 in October 2014, and that the Secretary was unsuccessful in getting Defendants to sign a tolling agreement in February 2015.  Reply at 3-4. Although the Secretary seems to have been aware of the claims and statute of limitations issues at that time, he waited approximately one year to file the complaint.  See Compl., ECF No. 1.  The Secretary fails to explain this delay or his diligent pursuit of these claims, when the Department of Labor appears to have been well aware of the statute of limitations and the alleged overtime violations at least as early as February 2015.

Nor has the Secretary explained how Defendants wrongfully prevented him from discovering the alleged violations and timely filing a complaint.  Even if Defendants' record

keeping practices prevented the Department of Labor from
discovering the alleged overtime issues as they occurred, the
Secretary had the opportunity to investigate the overtime issues
in late 2014 and early 2015.  Had the Secretary filed his
complaint at that time, he would have been able to pursue
virtually all of the damages he now claims, assuming he can
prove a willful violation as discussed supra.

In addition, Defendants also question whether the
equitable tolling inquiry should focus on the conduct of the
Department of Labor or of the individual employees.  Reply at 2-
4.  Equitable tolling focuses on the litigant.  See Kwai Fun
Wong, 732 F.3d at 1052 (discussing the showings the "litigant"
must make); see also Chao v. Va. DOT, 291 F.3d 276, 283 (4th
Cir. 2002) (rejecting Secretary's argument that she had been
diligent because the individual employees had diligently pursued
private claims, as equitable tolling focuses on the plaintiff).
Here, the litigant is the Secretary of Labor, not the individual
employees.  The complaint clearly identifies the Secretary of
Labor as the plaintiff and distinguishes the employees to whom
the Defendants allegedly owe wage and overtime compensation.
See generally Compl.

Moreover, even if the circumstances of the individual
employees were relevant, the Secretary still bears the burden of
providing evidence showing how the employees' circumstances

entitle him to equitable tolling in suing on their behalf.

However, the Secretary has not provided facts sufficient to meet

that burden, as he merely states that the tolling "is essential

to fully compensate workers and to ensure that bad actors, such

as Defendants, do not benefit from their efforts to evade the

law." Opp. at 19. This conclusory statement does not evidence

how the employees have been diligent or explain how the

Defendants' allegedly wrongful conduct prevented the employees

from discovering their rights in time.[3]

---

[3] In addition, the evidence Defendants have submitted shows that
employees were aware they were entitled to overtime and that
their hours were being banked and failed to raise claims. <u>See</u>
Reply at 4-8. Even if the employees were not aware that the
informal banking system was illegal, they have not shown that
they were "excusably ignorant" of the FLSA limitations period.
<u>See</u> <u>Stallcop v. Kaiser Foundation Hosps.</u>, 820 F.2d 1044, 1050
(9th Cir. 1987) ("Equitable tolling requires that [the plaintiff
be] excusably ignorant of the limitations period."); <u>see also</u>
<u>Barba</u>, 2009 WL 8747368, at *29 (rejecting equitable tolling
where employees did not provide evidence that underpayment was
concealed and finding claims accrued on each payday). This is
particularly true where the Department of Labor investigated and
produced back wage violation calculations in October 2014 and
February 2015, Defs. CSF ¶ 13, and there is no evidence that the
employees have taken any steps to protect their rights since
then. The Secretary additionally asserted at the hearing that
Defendants affirmatively misled employees into believing that
the informal banking system was legal. However, while
Defendants allegedly engaged in an illegal banking system, there
does not appear to be evidence supporting that Defendants
additionally represented the legality of such practice to their
employees. <u>See</u> <u>Morales v. Laborer's Union Local 304</u>, No. C 11-
02278 WHA, 2012 WL 70578, at *5 (N.D. Cal. Jan. 9, 2012)
(allowing equitable tolling pursuant to a fraudulent concealment
theory where the defendant proclaimed the legality of its
conduct and expressly relied on its claimed expertise in
(Continued...)

The Court thus finds that even though there is a
dispute of fact regarding whether employees worked overtime
prior to February 22, 2013, the Secretary has not provided a
basis on which a reasonable factfinder could conclude he is
entitled to equitable tolling.  Accordingly, the Court finds
that claims prior to February 22, 2013 are time-barred and
GRANTS partial summary judgment to Defendants on this issue.

## II.  Claims Regarding Particular Employees

### A. Whether Claims on Behalf of Richard Napierala Must Be Dismissed for Failure to Name Him in the Complaint.

Defendants next move to dismiss claims for back wages
and liquidated damages on behalf of Richard Napierala because he
was not named as a claimant.  MSJ at 12-14.  The Secretary
counters that he was not required to name Mr. Napierala as a
"claimant" in the complaint.  Opp. at 20 n.62.  In his
complaint, the Secretary seeks back wages and liquidated damages
pursuant to 29 U.S.C. §§ 216(c) and 217.  Compl. ¶ 12.  Section
216(c) authorizes the Secretary to seek unpaid minimum wages,
unpaid overtime compensation, and liquidated damages on behalf
of employees.  29 U.S.C. § 216(c).  Section 217 provides
jurisdiction for federal courts to restrain the withholding of
minimum wages or overtime compensation due to employees, but

---

employment law to mislead plaintiffs into believing their rights
were not violated by the practice at issue).

does not allow for the recovery of liquidated damages.  See id.
§ 217.

As the Ninth Circuit has recognized, "[t]he authority
of the Secretary to seek back wages under § 17 of the FLSA
without specifically naming employees in the complaint is well-
established." Donovan v. Crisostomo, 689 F.2d 869, 875 (9th
Cir. 1982) (citing Donovan v. Univ. of Tex., 643 F.2d 1201 (5th
Cir. 1981) and EEOC v. Gilbarco, Inc., 615 F.2d 985 (4th Cir.
1980)).  There is thus no question that the Secretary may pursue
§ 17 claims on behalf of Mr. Napierala without naming him in the
complaint.  Defendants' Motion is thus denied to the extent it
seeks to bar recovery under § 217.

However, in order to recover under § 216, employees
must be named in the complaint.  See Ford v. Troyer, 156 F.3d
181 (5th Cir. 1998) (unpublished) ("Section 216 allows the
Secretary to recover back wages and liquidated damages on behalf
of employees specifically named in the complaint."); EEOC v.
Sperry-Univac Corp., No. C 81-0276J, 1982 WL 649, at *5 (D. Utah
Nov. 29, 1982) ("[O]nly if the EEOC seeks liquidated damages
pursuant to 29 U.S.C. § 216(c) need it name the aggrieved
persons as plaintiffs in order to recover on their behalf.").
The Ninth Circuit has held that an action for a claim under §
216(c) commences for statute of limitations purposes on the date
that the claimant was identified in the complaint.  See Donovan,

- 19 -

689 F.2d at 875; <u>Solis v. Wash. Dep't of Soc. & Health Servs.</u>,
Case No. C08-6579, 2016 WL 879166, at *6 (W.D. Wash. Mar. 8,
2016) ("[C]laims under section 216(c) are limited to two years
from the date of identifying the particular employee.").

Here, there is no question that Mr. Napierala was not
identified in the complaint filed on February 22, 2016. <u>See</u>
Compl., Ex. A.[4] However, in the Amended Exhibit A filed on
February 13, 2017, the Secretary added Richard Napierala's name
to the list. ECF No. 86. Assuming that listing Mr. Napierala
in the exhibit qualifies for purposes of § 216, the applicable
statute of limitations on his claims would be calculated based
on that date.

In their Reply, Defendants appear to assert that
listing employees in Exhibit A does not satisfy the naming
requirement of § 216 because it does not designate any of the
employees as "individual claimants" or "party plaintiffs."
Reply at 10. However, courts do not require the employees on
whose behalf the Secretary seeks to recover to be named as
plaintiffs. In <u>EEOC v. Hernando Bank</u>, the Fifth Circuit found
that naming three employees in the prayer for relief was
sufficient. 724 F.2d 1188, 1193 (5th Cir. 1984). And in <u>Reich
v. Great Lakes Collection Bureau, Inc.</u>, the district court found

---

[4] Exhibit A does list *Stanley* Napierala, but not *Richard*
Napierala.

that identifying individuals by way of an exhibit to the complaint was sufficient to name the employees involved under § 216(c).  176 F.R.D. 81, 84 (W.D.N.Y. 1997).  Similarly in U.S. EEOC v. Elrod, the district court found that the agency had sufficiently identified employees for purposes of § 216(c) by listing them in appendices.  No. 84 C 10886, 1986 WL 10374, at *3-4 (N.D. Ill. Sept. 12, 1986).  And in Donovan, the Ninth Circuit concluded that naming employees in a pre-trial order was sufficient to commence § 216(c) claims because the order bound the parties.  689 F.2d at 875.

        Defendants are correct in noting that the Secretary says that the individuals identified in Exhibit A here "are not individual claimants."  Reply at 10; Opp. at 20 n.62.  However, the Court is inclined to disagree with Defendants' conclusion that "the DOL admits that its complaint Exhibit A does not satisfy the naming requirement of 29 U.S.C. § 216(c)."  Reply at 10.  The Secretary clearly raised claims under § 216(c) seeking back wages and liquidated damages in his complaint and attached an exhibit identifying specific employees on whose behalf he was seeking those damages – which he was not required to do for the § 217 claims.  See Compl. & Prayer for Relief (b).  In addition, the Secretary amended that exhibit to update the list of

employees[5] and confirmed at the hearing that he is still pursuing claims under both §§ 216 and 217.  Given that identifying employees in an exhibit or appendix to the complaint has been found sufficient for § 216(c) claims, the Court finds that the Secretary has sufficiently identified Mr. Napierala and other Kazu Construction employees for purposes of claims under § 216(c) and rejects Defendant's contention that the Secretary admitted he has not sufficiently identified the employees by stating in passing in a footnote that they were "not individual claimants."[6]

Accordingly, the Court DENIES Defendants' Motion on the basis that the Secretary is not entitled to pursue recovery under § 216(c) on behalf of Mr. Napierala (or any other person listed in Exhibit A).  However, as Mr. Napierala was not identified until February 13, 2017 claims on his behalf did not commence until that date.  For those employees who were named in the original Exhibit A, claims on their behalf commenced on February 22, 2016 for statute of limitations purposes.  See Elrod, 1986 WL 10374, at *3-4 (distinguishing between the date §

---

[5] To the extent that updating this exhibit constitutes an amendment to the Secretary's pleading, the Court notes that leave to amend pleadings should be freely given and that there is no undue prejudice from allowing such amendment here.

[6] The Secretary also clarified at the hearing that his use of the term "individual claimant" was to indicate that the employees were not plaintiffs, but rather affected employees on whose behalf the Secretary was seeking damages.

216(c) actions commenced for employees named in appendix to the original complaint versus those named in the appendix to the amended complaint).

### B. Whether Mr. Napierala and Mr. Aguinaldo Qualify As Exempt Employees.

Defendants argue in the alternative that Mr. Napierala and Mr. Aguinaldo are not owed any back wages because they qualify as exempt employees who are not entitled to overtime. MSJ at 14-19.  Under 29 U.S.C. § 213, the FLSA's minimum wage and overtime provisions do not apply to "any employee employed in a bona fide executive administrative, or professional capacity...."  29 U.S.C. § 213(a)(1).  According to the regulations, an employee employed in a bona fide executive capacity is any employee who is: (1) "[c]ompensated on a salary basis at a rate of not less than $455 per week"; (2) "[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof"; (3) "[w]ho customarily and regularly directs the work of two or more other employees"; and (4) "[w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, promotion or any other change of status or of other employees are given particular weight."  29 C.F.R. § 541.100(a).

"An employer who claims an exemption from the FLSA bears the burden of demonstrating that the exemption applies." Klem v. Cty. of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000). The FLSA is intended to provide for the recovery of unpaid minimum wages and unpaid overtime compensation, and the Ninth Circuit has counseled that courts should be "mindful of the directive that [the statute] is to be liberally construed to apply the furthest reaches consistent with Congressional direction." Biggs v. Wilson, 1 F.3d 1537, 1539 (9th Cir. 1993). Thus, in order to ensure that employees are broadly protected consistent with Congress's direction, exemptions employers may claim from complying with the FLSA's requirements "are to be narrowly construed...against employers and are to be withheld except as to persons plainly and unmistakably within their terms and spirit.'" See Klem, 208 F.3d at 1089 (quoting Auer v. Robbins, 519 U.S. 452, 462 (1997)) (alteration in original).

The only element of the exemption that appears to be in dispute is the salary-basis. Defendants have submitted evidence, which the Secretary does not appear to contest, regarding the other elements. The duty of management includes, but is not limited to, "interviewing, selecting, and training employees; setting and adjusting their rates of pay and hours of work; directing the work of employees...determining the techniques to be used; [and] apportioning the work among

- 24 -

employees...."  29 C.F.R. § 541.102.  Here, Defendant has

submitted evidence showing that both Mr. Napierala and Mr.

Aguinaldo hired and fired employees, regularly trained and

monitored employees, and regularly directed and gave assignments

to other employees.  See Defs. CSF ¶¶ 3-4, 8, 10.  The Secretary

has not disputed these facts.  See Pls. CSF at 2 n.2 (explicitly

not disputing those particular paragraphs, among others, of

Defendants' Statement of Facts).  This same evidence also

demonstrates that Mr. Napierala and Mr. Aguinaldo meet the other

two elements of the exemption regarding the hiring and firing of

employees and regularly directing the work of at least two other

employees.

        Turning to the last element of the exemption,

        [a]n employee will be considered to be paid
        on a 'salary basis' within the meaning of
        the[] regulations if the employee regularly
        receives each pay period on a weekly, or
        less frequent basis, a predetermined amount
        constituting all or part of the employee's
        compensation, which is not subject to
        reduction because of variations in the
        quality or quantity of the work performed.

29 C.F.R. § 541.602(a).  In determining whether an employee is

salaried, "[t]he question is not whether an employer has the

subjective intention that its employees be exempt from the

FLSA's overtime provisions.  Rather, it is whether the employer

has evinced the objective intention to pay its employees on a

salaried basis as defined in the Secretary's regulations."
Klem, 208 F.3d at 1091.

Courts including the Ninth Circuit have held that a
payroll accounting system that calculates pay on an hourly basis
does not necessarily indicate that employees are not salaried.
In McGuire v. City of Portland, the Ninth Circuit affirmed the
district court's grant of summary judgment that employees were
exempt even where City's payroll accounting system tracked time,
including absences and hours worked beyond the standard shift,
on an hourly basis.  159 F.3d 460, 464 (9th Cir. 1998).  In
doing so, the court rejected the City's argument that this
demonstrated that the employees were not salaried, because it
found that the employees had the option of working either 40 or
53 hours per week, but were paid the same amount regardless of
which schedule they chose.  Id.  Although the hourly rates
differed, the City's practice was to start with the weekly
salary figure, and then work backwards from the schedule to
arrive at an hourly rate.  Id.  Similarly, although leave was
tracked on an hourly basis, the salary was not ordinarily
subject to reduction for absences from work.  Id.

Likewise, in Palazzolo-Robinson v. Sharis Management
Corp., the court relied on McGuire to conclude that "a payroll
accounting system which calculates an exempt employees [sic] pay
on an hourly basis does not indicate that the employee was not

salaried and, thus, is subject to the FLSA's minimum wage or overtime wage requirements." 68 F. Supp. 2d 1186, 1192 (W.D. Wash. 1999). There, the payroll accounting system calculated her salary on an hour-by-hour basis, but the court found that this did not indicate the employee was not salaried, especially where she acknowledged that she had been told that she would be paid a predetermined amount. Id.; see also, e.g., Wright v. Aargo Sec. Servs, Inc., No. 99 CIV. 9115 (CSH), 2001 WL 91705, at *7 (S.D.N.Y. Feb. 2, 2001) ("The label an employer or a time record furnishes an employee for internal purposes is not determinative of the employee's status under the FLSA.") (citing McGuire and Palazzolo). Cf. Brunnozi v. Cable Commc'ns, Inc., ----F.3d ----, 2017 WL 1055588, at *3 (9th Cir. Mar. 21, 2017) (in determining what constitutes an employee's regular rate of pay, the court must evaluate "what happens under the contract" and cannot rely on a declaration by the parties or "contract nomenclature").

However, courts have rejected attempts to mask hourly pay structures as salary guarantees. In Brock v. Claridge Hotel and Casino, the Third Circuit affirmed the district court's conclusions that the employee's wages were actually calculated on an hourly basis. 846 F.2d 180, 184 (3d Cir. 1988). The court rejected the employer's argument that the additional compensation the employee was claiming was a bonus to

incentivize better performance, finding that the bonus varied
with the number of hours worked, which encouraged the employee
to work more hours, not to perform better.  Id. at 185; see also
Hodgson v. Cactus Craft of Ariz., 481 F.2d 464, 466 (9th Cir.
1973) (affirming as not clearly erroneous trial court's findings
that employees were paid on an hourly basis, despite employer's
claims that they were salaried).

     Here, Defendants assert that both Mr. Napierala and
Mr. Aguinaldo were paid a predetermined weekly amount in excess
of the statutory minimum, and thus were salaried employees.  See
Defs. CSF ¶¶ 9, 11.  As to Mr. Aguinaldo, both he and Mr. Lowry
submitted declarations evidencing that they understood that Mr.
Aguinaldo would receive guaranteed pay that was not subject to
reduction.  Aguinaldo Decl. ¶ 3, ECF No. 44-1 ("I understood
that my pay was guaranteed and would not be subject to
reduction."); Lowry Decl. ¶ 10, ECF No. 44-5 ("Kazu provided
Aguinaldo with a predetermined weekly pay, which was not subject
to reduction based upon the quantity or quality of his work.").
As to Mr. Napierala, Defendants rely only on Mr. Lowry's
declaration stating that Mr. Napierala received a predetermined
weekly pay not subject to reduction.[7]  Lowry Decl. ¶ 11, ECF No.

---

[7] Defendants also state that the Department of Labor investigator
"expressly represented to Kazu that Napierala was exempt and
that the DOL was not seeking any back wages for him."  Motion at
(Continued...)

44-5 ("Kazu provided Napierala with a predetermined weekly pay, which was not subject to reduction based upon the quality or quantity of his work.").

In attempting to dispute these facts, the Secretary relies on paragraphs 5, 6, 9, and 11 of his Statement of Disputed Facts. See Opp. at 20 n.63. This evidence roughly falls into three categories. First, the Secretary points to the Payroll Register for Kazu Construction, which designates the pay type for Mr. and Mrs. Lowry as "Salary" and for Mr. Napierala and Mr. Aguinaldo as "Regular." See Santos Decl., Ex. F, ECF No. 79-6; see also Caparas Decl., Ex. A, ECF No. 80 (designating Mr. and Mrs. Lowry as "salary" and Mr. Napierala and Mr. Aguinaldo as receiving an hourly rate of $45/hour and $40/hour,

---

8 (citing Yeh Decl. ¶ 2, ECF No. 44-13). In the first place, Mr. Caparas has declared that he "did not represent that [his] findings constituted the Secretary's final determinations on what charges to bring." Caparas Decl. ¶ 5, ECF No. 80. In addition, Defendants do not rely on this fact to argue that the Secretary has waived or is equitably estopped from asserting a claim for back wages on behalf of Mr. Napierala. Especially in view of the Supreme Court's recognition that its "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act," Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728, 740 (1981), this Court will not rely on the investigator's apparent representation here, even assuming Defendants' characterization of the representation is accurate. See also Ruiz v. Fernandez, 949 F. Supp. 2d 1055, 1063 (E.D. Wash. 2013), order clarified, No. CV-11-3088, 2013 WL 12167930 (E.D. Wash. June 24, 2013) (noting that collateral estoppel could not bar claims even where the Department of Labor investigator found no violation because the Department did not act in an adjudicatory capacity during the investigation).

respectively).  In addition, Mr. and Mrs. Lowry asserted in an investigation statement that "[w]e have 2 salaried employees, Vernon and Desiree Lowry.  Everyone else is paid hourly." Caparas Decl., Ex. B, ECF No. 80.  Finally, the Secretary also relies on Mr. Lowry's deposition stating Mr. Napierala's rate was $40 per hour.  V. Lowry Dep. at 161:5-17.

The Secretary also argues that the promise of "guaranteed pay" was a fiction because it was made to all of Defendants' employees.  Opp. at 21-22 (relying on Mr. Napierala's declaration that "[a]ll of the workers were told" that "we would get paid for 40 hours of work," Napierala Decl. ¶ 7, ECF No. 81).[8]  Defendants dispute the relevance of how the other employees were paid.  Reply at 16-17.

---

[8] The Secretary additionally asserted for the first time at the hearing that the salary promise made to Mr. Napierala was only for the first 40 hours of work and did not encompass the extra hours actually worked.  The Secretary then attempted to infer that Mr. Napierala expected to be able to cash out or receive a bonus for any extra hours not used through the banking system at the end of the project, though Mr. Napierala's declaration does not explicitly state this expectation.  Defendants argue that this issue is not properly before the Court.  The regulations make clear that an exemption is not lost if an exempt employee paid on a salary basis also receives additional compensation for hours worked beyond the normal workweek and that such additional compensation may be paid on any basis, including bonus, straight-time hourly, or paid time off.  29 C.F.R. § 541.604(a); see also Opinion Letter, 1965 DOLWH LEXIS 171 (Sept. 22, 1965). Thus, even if this issue were before the Court, Mr. Napierala's entitlement to or expectation of additional compensation does not affect that Mr. Napierala was objectively paid on a salaried basis and therefore qualifies as an exempt employee, as (Continued...)

Defendants' assertion that the focus of the salary basis test is on the putative exempt employee, not on how the other employees are paid, appears to be correct. See 29 C.F.R. § 541.602. The salary-basis test contrasts with other parts of the exemption analysis, such as the definition of a "primary duty" which explicitly accounts for "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee," among other specified factors. See id. § 541.700. Rather the focus of the salary-basis regulation appears to be the circumstances in which deductions will not defeat the exemption. See 29 C.F.R. § 541.602.

Under the regulations, "[a]n actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603. However, in the absence of actual deductions, there must be "a clear and particularized policy — one which effectively communicates that deductions will be made in specified circumstances." Auer, 519 U.S. at 452. Here, the payroll records for Mr. Napierala and Mr. Aguinaldo show that

_____

discussed infra. See Anani v. CVS RX Servs., Inc., 788 F. Supp. 2d 55, 65 (E.D.N.Y. 2011) aff'd, 730 F.3d 146 (2d Cir. 2013)(employee's subjective and unsupported belief that he was an hourly employee held insufficient where there was no objective evidence that he would have received less than the guaranteed rate if he had worked fewer hours).

they were paid the same amount every week, and that no deductions were made.  See Napierala Decl., Ex. 1, ECF No. 81; Santos Decl., Ex. E, ECF No. 79-5.  This stands in contrast to other employees who did not receive consistent pay each week.  See D. Lowry Decl. ¶ 88-1, ECF No. 88-1 (identifying instances of employees being paid for less than 40 hours per week).  Thus, even though there is evidence that the allegedly hourly employees were subject to deductions for time not worked, there is no evidence showing a significant likelihood that Mr. Napierala or Mr. Aguinaldo's salary was subject to such deductions.  See McGuire, 159 F.3d at 463 (holding that there must objectively be a "significant likelihood that penalties inconsistent with salaried status would be made").

Nor has the Secretary provided evidence of a particularized policy which would clearly and effectively communicate to Mr. Napierala or Mr. Aguinaldo that they could be subject to deductions.[9]  Indeed the evidence points to the contrary.  Mr. and Mrs. Lowry stated that Mr. Napierala and Mr. Aguinaldo were paid at a guaranteed rate for 40 hours per week.

[9] Telling all employees as a group that excess hours would be banked rather than paid does not "clearly and effectively communicate" to Mr. Napierala and Mr. Aguinaldo in particular that this policy also applied to them.  And while the alleged practice of banking overtime hours may present possible FLSA violations as to hourly employees, it does not assist the Court in determining in the first place whether Mr. Napierala and Mr. Aguinaldo's pay was subject to deductions.

V. Lowry Dep. at 161:16-21 (Napierala given a guaranteed rate for 40 hours); 199:18-200:1 (Napierala and Aguinaldo were paid for 40 hours at their guaranteed rates); D. Lowry Dep. at 174:23-175:3 (Napierala paid set rate for 40 hours).  And in his deposition, Mr. Lowry drew a distinction between Mr. Aguinaldo and Mr. Napierala and other employees whose pay was sometimes docked when they did not work 8 hours.  V. Lowry Dep. 199:18-200:12.

        The Secretary is thus left with the labels that Defendants have used to describe the pay status of various employees, see, e.g., Caparas Decl., Ex. A, ECF No. 80 (providing an hourly rate for Mr. Napierala and Mr. Aguinaldo but labeling Mr. and Mrs. Lowry as salaried); Santos Decl., Ex. F (same).  The labels Defendants used are simply not determinative.  Just as a defendant's subjective belief that its employees are exempt is insufficient in light of evidence showing compensation varied, see Klem, 208 F.3d at 1093, so too are the descriptions of Mr. Napierala and Mr. Aguinaldo as hourly employees insufficient where the Secretary has pointed to no evidence supporting that there was a significant likelihood their pay could be reduced.  See Anani v. CVS RX Servs., Inc., 788 F. Supp. 2d 55, 65 (E.D.N.Y. 2011), aff'd, 730 F.3d 146 (2d Cir. 2013) (finding no genuine issue of fact as to the salary-basis test where "the payment records reflect[ed] a calculation

method that [was] not inconsistent with a salary basis of payment, and because there [was] no evidence that the Plaintiff was or would have been subject to improper deductions"); Aargo Sec. Servs., 2001 WL 91705, at *9 (finding no dispute regarding salary-basis where the employee's pay had never been reduced and there was no evidence supporting a significant likelihood it would have been reduced had the occasion arisen).

Accordingly, the Court finds that there is sufficient evidence for a reasonable jury to conclude that Mr. Napierala and Mr. Aguinaldo are salaried employees, and that the Secretary has not put forward evidence creating a genuine dispute of fact on this issue. The Court therefore GRANTS Defendants' Motion as to Mr. Napierala and Mr. Aguinaldo and DISMISSES claims the Secretary has brought on their behalf.

### C. Whether Mr. Aguinaldo is Owed Back Wages

Defendants have argued in the alternative that even if Mr. Aguinaldo was not an exempt employee, he is still not entitled to back wages because he did not work overtime. Motion at 19-20. The Court does not need to reach this issue since it has concluded that Mr. Aguinaldo is exempt; but if it were to do so, the Secretary has provided evidence that creates a dispute of material fact as to this issue. Opp. at 23-24; Pls. CSF ¶ 19. Specifically, other employees have provided evidence that Mr. Aguinaldo worked six to seven days a week for 10 hours a

day.  See Napierala Decl. ¶¶ 5-6, ECF No. 81 (Napierala worked with Aguinaldo, among others, and the schedule of working 10 hours a day 6-7 days a week was the same for everyone); Cummings Decl. ¶ 3, ECF No. 85 (Cummings worked with Aguinaldo, among others, and the schedule of working 10 hours a day was the same for everyone); Tadio Decl. ¶ 5, ECF No. 84 (Tadio worked with Aguinaldo, among others, 7 days per week and recalled seeing Aguinaldo work at least as many hours as Tadio did).  Taken as true, this evidence establishes a dispute of fact as to how many hours Mr. Aguinaldo worked and whether he ever worked overtime. However, in light of the Court's findings that Mr. Aguinaldo is exempt, this issue is moot.[10]

### D. Kahikapu Hendricksen

Defendants have moved for summary judgment as to back wages owed to Kahikapu Hendricksen on the basis that he did not work overtime because he regularly came to work late and did not work weekends.  Motion at 21; Hendricksen Decl. ¶ 3, ECF No. 44-4.  However, the Secretary has provided evidence that creates a dispute of material fact as to this issue.  Opp. at 23-24; Pls. CSF ¶ 21.  Most importantly, according to an interview statement from August 25, 2014, Mr. Hendricksen stated that he worked 10

---

[10] Although Defendants have argued in the alternative that Mr. Aguinaldo did not work overtime, the Court notes that Defendants do not appear to make the same alternative argument as to Mr. Napierala and that such issue would be moot regardless.

hours a day, seven days a week and that his paycheck did not show the overtime he had worked; instead those hours had been banked. Caparas Decl., Ex. F, ECF No. 80. The declarations of other employees provide additional evidence that Mr. Hendricksen worked six to seven days a week for 10 hours a day. See Napierala Decl. ¶¶ 5-6, ECF No. 81 (Napierala worked with Hendricksen, among others, and the schedule of working 10 hours a day 6-7 days a week was the same for everyone); Cummings Decl. ¶ 3, ECF No. 85 (Cummings worked with Hendricksen, among others, and the schedule of working 10 hours a day was the same for everyone). Taken as true, this evidence establishes a dispute of fact as to how many hours Mr. Hendricksen worked and whether he ever worked overtime. Defendants' Motion is accordingly DENIED as to Mr. Hendricksen.

### E. James Teixeira

Defendants have moved for summary judgment as to back wages owed to James Teixeira on the basis that he did not work overtime because he missed work on some days and did not work on weekends, except when he had missed work during the week. Motion at 24-25; Teixeira Decl. ¶ 3, ECF No. 44-12. However, the Secretary has provided evidence that creates a dispute of material fact as to this issue. Opp. at 24-26; Pls. CSF ¶ 25. Specifically, other employees have provided evidence that Mr. Teixeira worked six to seven days a week for 10 hours a day.

See Napierala Decl. ¶¶ 5-6. ECF No. 81 (Napierala worked with
Teixeira, among others, and the schedule of working 10 hours a
day 6-7 days a week was the same for everyone); Cummings Decl. ¶
3, ECF No. 85 (Cummings worked with Teixeira, among others, and
the schedule of working 10 hours a day was the same for
everyone).  Taken as true, this evidence establishes a dispute
of fact as to how many hours Mr. Teixeira worked and whether he
ever worked overtime.  Defendants' Motion is accordingly DENIED
as to Mr. Teixeira.

### F. James Dela Cuesta, Jaime Magallanes, Wesley Mericle, and Bruce Petree

Finally, the Secretary originally sought back wages on
behalf of James Dela Cuesta, Jaime Magallanes, Wesley Mericle,
and Bruce Petree.  Compl., Ex. A.  Defendants asserted that
these four employees were not owed back wages.  Motion at 20-24.
The Secretary has now withdrawn his claims for overtime as to
these employees, as he does not dispute that they did not work
overtime.  See Opp. at 7 n.2; Pls. CSF at 2 n.2 (not disputing
the paragraphs of Defendants' CSF asserting that these four
employees did not work overtime).  Accordingly, Defendants'
Motion is GRANTED as to Mr. Dela Cuesta, Mr. Magallanes, Mr.
Mericle, and Mr. Petree.  Claims on behalf of these four
employees are DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion for Summary Judgment. Defendants' Motion as to the statute of limitations issue is GRANTED as to equitable tolling but DENIED as to willfulness. The Defendants' Motion is GRANTED as to Richard Napierala, Frank Aguinaldo, James Dela Cuesta, Jaime Magallanes, Wesley Mericle, and Bruce Petree, and the Secretary's claims as to these employees are DISMISSED WITH PREJUDICE. Defendants' Motion is DENIED as to Kahikapu Hendricksen and James Teixeira.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 17, 2017.

Alan C. Kay
Sr. United States District Judge

Hugler v. Kazu Construction, et al., Civ. No. 16-00077 ACK-KSC, Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment.